United States District Court
Southern District of Texas
**ENTERED**
August 03, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SCOTT SULLIVAN, FRANK DELLACROCE, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-20-2236 |
| STEWART A. FELDMAN, THE FELDMAN LAW FIRM LLP, *et al.*, | § § § § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

Drs. Scott Sullivan and Frank DellaCroce—"the Doctors"—engaged Stewart Feldman, The Feldman Law Firm, LLP, and its affiliates, Capstone Associated Services (Wyoming), LP, and Capstone Associated Services, Ltd.— "the Lawyers"—to provide tax advice and tax shelters. (Docket Entry No. 1-1). After the United States Tax Court issued a ruling with negative consequences for the shelters, the Doctors tried to end the relationship with the Lawyers, who refused. (*Id.*). Both sides sought arbitration, but the Lawyers sought arbitration in Houston, Texas, and the Doctors in Houma, Louisiana. The Doctors also sued the Lawyers in Texas state court, alleging breach of contract, breach of fiduciary duty, tort, legal malpractice, and breach of professional obligations. (Docket Entry No. 1-1 at ¶ 17). The Lawyers timely removed and moved to compel the Doctors' business entities' participation in the Texas arbitration. (Docket Entry Nos. 1, 2). The Doctors responded with a cross-motion to compel the Feldman and The Feldman Law Firm to join in the Louisiana arbitration and to challenge the Texas arbitration. (Docket Entry No. 10). The Doctors also moved to stay the Texas arbitration pending a ruling on the motions, and for an expedited ruling. (Docket Entry Nos. 12, 13).

After careful consideration of the motions, briefs, and the oral argument of counsel, the court: (1) grants the Lawyers' motion to compel the participation of the Doctors' business entities in the Texas arbitration; (2) denies the Doctors' cross-motion to compel Stewart Feldman and The Feldman Law Firm's participation in the Louisiana arbitration; and (3) denies the motion to stay the Texas arbitration because a stay is not warranted now that these issues are resolved. The result is piecemeal presentations before three different arbitrators. It is not efficient, and certainly not pretty, but it results from the parties' own contracts and conduct.

The reasons for these rulings are explained below.

I.     **Background**

Drs. Scott Sullivan and Frank DellaCroce are surgeons at the Center for Restorative Breast Surgery in New Orleans, Louisiana. (Docket Entry No. 1-1 at ¶ 19). They perform restorative breast surgeries for women with breast cancer. (Docket Entry No. 1-1 at ¶ 19). St. Charles Surgical Hospital, L.L.C., St. Charles Holdings, L.L.C., and Sigma Delta Billing, LLC are entities owned and controlled by the individual doctors as part of their business.

The individual doctors also own three insurance "cell arrangements"—Cerberus Casualty Company, Janus Casualty Company, and Orion Casualty Company—"to protect [their] Clinic against a multitude of loss exposures beyond those economically covered by commercial insurance." (Docket Entry No. 7-2 at 1). Cerberus Casualty Company, Janus Casualty Company, and Orion Casualty Company are Bahamian entities.

The individual doctors contacted Stewart Feldman and the Feldman Law Firm, a law firm in Houston, about an alternative risk-planning program to protect them and their business entities "against a multitude of loss exposures and also provide tax benefits." (Docket Entry No. 1-1 at ¶ 20). The Feldman Law Firm, Capstone Associated Services, LP, and Capstone Associated Services, Ltd. agreed to provide "a wide range of services for an ongoing term for a fixed, quarterly

fee." (Docket Entry No. 2 at 2). This agreement was memorialized in a 2015 Engagement Letter and the Capstone Services Agreement. (Docket Entry No. 7-2). The Engagement Letter explained that The Feldman Law Firm and Capstone would perform work "on behalf of, as appropriate: (i) the owners of the captives insurer in connection with the formation of the captives; (ii) the Clinic and certain of its affiliates as the insureds; and (ii) the captives, Cerberus CC, Janus CC, and Orion CC, as the insurers." (Docket Entry No. 7-2 at 2).

The Engagement Letter included the following arbitration clause:

> With respect to any and all other controversies, disputes or claims whatsoever between (x) the Firm (including its lawyers) and/or its affiliates (including Capstone Associated Services, Ltd., Capstone Insurance Management (Anguilla), Ltd., and/or Export Assurance) . . . and (y) any client of the Firm and/or its affiliates related to or arising out of the Firm's or its affiliates' services or arising under or in connection with or related to any of the parties' agreements . . . either party may submit the dispute to any recognized, neutral (x) arbitral association or (y) arbitrator for final resolution in an arbitration proceeding to be concluded within four months . . . Submission of the dispute to arbitration under this agreement shall be the sole and exclusive forum for resolving any and all disputes between the parties . . .
>
> . . . [A]ll arbitrations – regardless of the arbitral organization or arbitrator actually hearing the dispute – shall be conducted in Houston, Texas applying Texas substantive law pursuant to the Commercial Arbitration Rules . . . of the American Arbitration Association (AAA) then in effect, whose Expedited Procedures shall apply regardless of the monetary size of the dispute or the number of parties to the proceeding, with only a single arbitrator hearing the dispute, again all regardless of the organization sponsoring the arbitration in question. All parties acknowledge and agree that this arbitration agreement modifies the AAA arbitration rules regarding, inter alia, the selection of the arbitrator and the administration of the arbitration in that: (1) either party may directly appoint the single arbitrator or the arbitral association who/which shall proceed to resolve the dispute, provided that the arbitrator is recognized and neutral; (2) the AAA is not required to administer and shall not administer the arbitration; and (3) any recognized and neutral arbitrator himself/herself or arbitral association may administer the arbitration. The arbitrator or arbitral association appointed to resolve the dispute shall have the sole and exclusive ability to rule on all aspects of the arbitrator's appointment, including, but not limited to, disputes or challenges of bias and neutrality. . .

(Docket Entry No. 7-2 at 15). The Capstone Services Agreement incorporated the Engagement Letter arbitration clause. (Docket Entry No. 7-2 at 27).

3

The individual doctors signed the Engagement Letter individually and signed the Capstone Services Agreement on behalf of themselves and Cerberus Casualty, Janus Casualty, Orion Casualty, and St. Charles Surgical Hospital, and "including all respective Affiliates." (*Id.* at 12, 29). "Affiliates" is defined in the Agreement as:

> any person directly or indirectly controlled by or under common control with another person (whether such be an individual or an entity of any sort) and, in the case of partnerships, shall specifically include all partners, owners and beneficial holders of a person, and additionally includes their signatories, agents, employees, independent contractors, transferees, assigns, officers, members, directors, those with an interest in and all those in privity therewith.

*Id.*

As part of their work, the Lawyers reorganized Cerberus Casualty, Janus Casualty, and Orion Casualty into three new Delaware entities—Cerberus Insurance Corp., Janus Insurance Corp., and Orion Insurance Corp. (*See* Docket Entry No. 7-2 at 5; Docket Entry No. 10-3). The agreements and plans of reorganization included a transfer of all of the Bahamian entities' assets and liabilities, including "all insurance policies, bank accounts, loans, investment accounts, ownership interests in other entities, books and records." (*See, e.g.*, Docket Entry No. 10-3 at 1–2). Each reorganization agreement stated that arbitration would be "conducted in Wilmington, Delaware, applying Delaware substantive law." (*See, e.g.*, Docket Entry No. 10-3 at 3).

According to the Doctors, the purpose of the arrangement was to participate in third-party insurance for risk pooling, but after the United States Tax Court issued an opinion about another Feldman and Capstone client that "could have very negative consequences for [the p]laintiffs," the Doctors asked the Lawyers to "liquidate and wind down Plaintiffs' program that the Defendants designed, implemented, and administered." (Docket Entry No. 1-1 at ¶¶ 25–30). The Lawyers allegedly neither responded, performed the wind down and liquidation, nor provided the relevant documents to a third party the Doctors hired to complete the wind down and liquidation. (*Id.* at 30–37). The Doctors and their related business entities sued in Harris County, Texas. They

asserted Texas-law claims for breach of contract, breach of fiduciary duty, tort, legal malpractice, and breach of professional obligations. (Docket Entry No. 1-1 at ¶ 17). The Lawyers timely removed and moved to compel arbitration in Texas. (Docket Entry Nos. 1, 2). The Lawyers explained that before this litigation started, both sides initiated competing arbitrations. (Docket Entry No. 2 at 9).

The Lawyers initiated arbitration before Conflict Resolution Solutions, PLLC in Houston on May 7, 2020, to "resolve disputes over dissolving, liquidating, and winding down the" insurance arrangement "by a certain date," as well as claims for "breach of contract, declaratory relief, attorney's fees" and misappropriation of intellectual property. (Docket Entry No. 16 at 4). The parties were assigned to former Harris County Judge Grant Dorfman as the arbitrator. (Docket Entry No. 2 at 9). The Doctors initiated arbitration in Houma, Louisiana on May 27, 2020, before retired U.S. District Court Judge Stanwood Duval as the arbitrator. (*Id.*).

The Doctors responded with a cross-motion to compel arbitration before Judge Duval, arguing that Judge Dorfman was improperly appointed, and that the Doctors' business entities had not agreed to arbitrate in Texas. (Docket Entry No. 10 at 1).[1] The Doctors also moved to stay the Texas arbitration while the court considered the motions, and for an expedited ruling on the motion to stay. (Docket Entry Nos. 12, 13).

The Lawyers' response argued that "because Judge Dorfman denied leave for the defendants to supplement their arbitration demands to include submission of the [business entities]' claims," they "initiated an arbitration with former Judge Caroline Baker on Monday, July

---

[1] The Louisiana arbitration is stayed until the resolution of the Texas arbitration. (*See* Docket Entry No. 10-2).

20, 2020, to submit for resolution the claims alleged by the [business entities] in this suit." (Docket Entry No. 16; Docket Entry No. 19 at 3).[2]

The parties' arguments are considered in detail below.

## II. The Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, permits a party to move to compel arbitration when an opposing party refuses to arbitrate issues covered by a valid arbitration agreement. *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)); 9 U.S.C. §§ 3, 4. To rule on a motion to compel, a court must first decide if the dispute is arbitrable. *See Papalote Creek II, L.L.C. v. Lower Colorado River Auth.*, 918 F.3d 450, 454 (5th Cir. 2019). This requires deciding whether "(1) there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 176 (5th Cir. 2016) (quoting *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006)).

The court has the authority to determine if a valid arbitration agreement exists. *See Bowles v. OneMain Fin. Grp., L.L.C.*, 954 F.3d 722, 725 (5th Cir. 2020) ("If the existence of an arbitration contract between parties is challenged, the challenge is always for the courts to decide."). The party moving to compel arbitration has the burden of showing the existence of an arbitration

---

[2] On July 30, the Lawyers filed a status report, informing the court that the St. Charles Surgical Hospital, L.L.C., St. Charles Holdings, L.L.C., Center for Restorative Breast Surgery, L.L.C., Sigma Delta Billing, L.L.C., Cerberus Insurance Corp., Janus Insurance Corp., and Orion Insurance Corp., joined by a new party, Sunrise Productions, L.L.C., had initiated a fourth arbitration proceeding before Arbitrator Robert A. Kutcher, of Metairie, Louisiana. (Docket Entry No. 24). The business entities rely on the Delaware arbitration clause from the Formation Documents for Cerberus Insurance Corp., Janus Insurance Corp., and Orion Insurance Corp. (Docket Entry No. 24-1 at 4-5). This fourth arbitration was filed after the current motions. The court does not address it here, except to note that as explained below, the Formation Documents do not apply to the disputes or claims arising from the Engagement Letter and Agreement. *See infra.* at 10.

agreement, as governed by ordinary principles of state contract law. *See Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019) ("Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate."); *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018) ("[T]he party moving to compel arbitration must show that the agreement meets all of the requisite contract elements."). Once a valid arbitration agreement is found, the court should "apply the federal policy and resolve ambiguities in favor of arbitration" when "determining the scope of a valid arbitration agreement." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 237 (5th Cir. 2013); *see also Huckaba*, 892 F.3d at 688.

If the court finds that there is an enforceable agreement to arbitrate the dispute, the court must then determine whether any federal statute or policy makes the claims nonarbitrable. *Janvey v. Alguire*, 847 F.3d 231, 240 (5th Cir. 2017). If not, the FAA requires district courts to order arbitration. *See Pacheco v. PCM Const. Servs., L.L.C.*, 602 F. App'x 945, 947 (5th Cir. 2015) ("A district court must compel arbitration if there is an agreement for arbitration and a party has failed to comply with that agreement.").

**III.   Analysis**

    **A.   The Lawyers' Motion to Compel Arbitration in Texas**

Arbitrability is "a gateway issue" that courts must address at the outset of the litigation. *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 376 (5th Cir. 2016); *see also Elgohary v. Herrera*, 405 S.W.3d 785, 790 (Tex. App. – Hous. [1st Dist.] 2013, no pet.) ("While non-signatories to an arbitration agreement can be bound to arbitrate under principles of contract and agency law, such issues—dealing as they do with non-signatories—are gateway 'issues of arbitrability' that the courts are primarily responsible for deciding—not the arbitrator.").

The Doctors argue that the Lawyers' motion to compel should be denied as to Janus Insurance Corp., Cerberus Insurance Corp, Orion Insurance Corp., and St. Charles Holdings, L.L.C., Center for Restorative Breast Surgery, LLC, Sunrise Productions, L.L.C.,[3] and Sigma Delta Billing, LLC, because they are nonsignatories to both the Engagement Letter and the Capstone Services Agreement. (Docket Entry No. 10 at 26–27). The Lawyers respond that the other entities may be compelled to arbitrate because they are either included within the definition of "Affiliates" in the Capstone Services Agreement or may be compelled under the theory of direct-benefits estoppel. (Docket Entry No. 16 at 18–23).

The Capstone Services Agreement includes the Doctors and St. Charles Surgical Hospital as parties as well as their "respective 'Affiliates' (as such term is defined herein)." (Docket Entry No. 7-2 at 18). "Affiliates" is defined as including "any person directly or indirectly controlled by or under common control with another person (whether such be an individual or an entity of any sort)." (*Id.*).

Because St. Charles Holding, L.L.C., Center for Restorative Breast Surgery, LLC, and Sigma Delta Billing, LLC are owned and controlled by the individual doctors or by the St. Charles Surgical Hospital, all signatories to the Capstone Services Agreement, they are "Affiliates" under the Agreement and the individual doctors signed on their behalf. These entities can be compelled to arbitrate their disputes relating to the Agreement in the Texas arbitration.

Janus Insurance Corp., Cerberus Insurance Corp, and Orion Insurance Corp. are also each owned and controlled by the individual doctors. (*See* Docket Entry No. 10-3 at 1, 16, 47). These entities fall within the definition of "Affiliates" in the Agreement and the individual doctors signed

---

[3] The Lawyers point out that Sunrise Productions, LLC was not listed as a party in the original petition and cross-motion to compel arbitration, but it was listed in the motion to stay arbitration. (*See* Docket Entry No. 1-1 at 1-3, Docket Entry No. 10 at 1 n.1, *with* Docket Entry No. 12 at 1 n.1). Because Sunrise Productions was not a party to the original suit and because the other plaintiffs have not moved to add Sunrise Productions, the court does not consider that entity here.

8

on their behalf. These entities can be compelled to arbitrate their disputes relating to the Agreement in the Texas arbitration.

The Doctors argue that the definition of "Affiliates" does not include these entities because "Feldman and Capstone were aware of each of these entities and could have easily included them by name if the Capstone Services Agreement was intended to apply to them." (Docket Entry No. 10 at 23). But there is no requirement that the definition include these entities by name. The Agreement defines "Affiliates" as entities "controlled by or under common control with" the doctors or other parties to the Agreement. (*See* Docket Entry No. 7-1 at 18). The contract terms do not also require specifically naming the entities, and the contract terms control. *See Star Elec., Inc. v. Northpark Office Tower, LP*, No. 01-17-00364-CV, 2020 WL 3969588, at *27 (Tex. App. – Hous. [1st Dist.] July 14, 2020) ("In interpreting the Settlement Agreement, we give common words their plain meaning.").

The Lawyers also argue that the doctrine of direct-benefits estoppel binds the nonsignatory entities to arbitrate. (Docket Entry No. 16 at 21). Texas recognizes several grounds for binding a nonsignatory to an arbitration agreement, including direct-benefits estoppel. *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530–1 (5th Cir. 2019); *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 637 (Tex. 2018). Direct-benefits estoppel applies "when a nonsignatory seeks to enforce an agreement against a signatory." *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 362 (5th Cir. 2003). "When a plaintiff sues to enforce a contract to which it was not a party, the Supreme Court of Texas has held, as have we, that the plaintiff subjects itself to the entirety of the contract terms." *Motis Energy, L.L.C. v. SWN Prod. Co., L.L.C.*, 802 F. App'x 848, 850 (5th Cir. 2020).

The Lawyers argue that because Janus Insurance Corp., Cerberus Insurance Corp, Orion Insurance Corp., St. Charles Holdings, L.L.C., Center for Restorative Breast Surgery, LLC, and

9

Sigma Delta Billing, LLC sued the Lawyers in Texas state court to enforce the Engagement Letter and Capstone Services Agreement, they are bound by the contracts' terms, including the arbitration clause. (Docket Entry No. 16 at 30). The original petition includes claims that the Lawyers "have breached the Agreement." (*See, e.g.,* Docket Entry No. 1-1 at ¶ 39). The Doctors attached the Engagement Letter and Capstone Services Agreement to their complaint. (*See* Docket Entry No. 1-1 at 19–57). Each of the nonsignatory entities is listed as a plaintiff in that suit. (*See* Docket Entry No. 1-1 at ¶¶ 3–10). Direct-benefits estoppel prevents the nonsignatory entities from avoiding the Engagement Letter and Capstone Services Agreement arbitration clause.

The Doctors also argue that Janus Insurance Corp., Cerberus Insurance Corp., and Orion Insurance Corp. cannot be compelled to arbitrate in Texas because their formation documents include a clause requiring arbitration in Wilmington, Delaware for "any dispute arising out of or relating to . . . any related or underlying documents or agreements of any nature whatsoever." (Docket Entry No. 10 at 21; *see also* Docket Entry No. 10-3). The Lawyers respond that "those contracts bound only the preexisting captive insurers domiciled in the Bahamas and the reconstituted Captive Insurers domiciled in Delaware, not the Capstone or Feldman Parties." (Docket Entry No. 16 at 8). The court agrees. Neither side asserts claims relating to the formation documents, but to the Engagement Letter and Agreement.

The Lawyers also argue that Janus Insurance Corp., Cerberus Insurance Corp., and Orion Insurance Corp. should be compelled to arbitrate under the Agreement under the doctrine of misnomer. (Docket Entry No. 21 at 2). That doctrine provides that a mistake in a name may be corrected "so long as no one was misled by the mistake." *AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319, 330 (Tex. App. – Dall. 2014, pet. denied). In *AmeriPath*, the court explained that "a departure from the strict name of a corporation will not avoid its contract if its identity substantially appears." *Id.* (quoting *Hou. Land & Loan Co. v. Danley*, 131 S.W. 1143, 1144 (Tex. Civ. App. – Galveston,

10

1910, no writ). The doctrine of misnomer has been applied to arbitration agreements to find that an unnamed party was intended to be included. *See Raya v. Rio Mgmt. Co., LLC*, No. 13-13-00711-CV, 2015 WL 4504696, at *3 (Tex. App. July 23, 2015). The Capstone Services Agreement mentions the Delaware entities, Cerberus Casualty Corp., Janus Casualty Corp., and Orion Casualty Corp., even though these entities were eventually named Cerberus Insurance Corp, Janus Insurance Corp., and Orion Insurance Corp. The Doctors do not allege that they were misled by the mention of Cerberus Casualty Corp., Janus Casualty Corp., and Orion Casualty Corp. instead of Cerberus Insurance Corp, Janus Insurance Corp., and Orion Insurance Corp.[4]

The nonsignatory entities are bound by the terms of the Engagement Letter arbitration clause, which requires arbitration in Houston.

### 3. The Appointment of Judge Dorfman

The Doctors argue that the court should deny Capstone's expedited motion to compel "arbitration before Judge Grant Dorfman" because Judge Dorfman was improperly appointed, and that if the court grants the motion, it should "should compel the proper appointment of a replacement arbitrator pursuant to 9 U.S.C. § 5." (Docket Entry No. 10 at 7). The Doctors argue that "Judge Dorfman was improperly appointed because the called-for arbitrator selection procedures in AAA Rule E-4 were not followed." (*Id.* at 6).

The Engagement Letter describes how to select an arbitrator. (Docket Entry No. 7-1 at 15). It states that when a dispute arises, "either party may submit the dispute to any recognized, neutral (x) arbitral association or (y) arbitrator for final resolution in an arbitration proceeding to be concluded within four months." (*Id.*). The Engagement Letter further modifies the procedure for appointing an arbitrator, as follows:

---

[4] Nor are these conclusions changed by the nonsignatory entities' "statement of joinder" in the Texas arbitration. (See Docket Entry No. 20-5). That statement includes a reservation of rights, including the right to object to the arbitration because they never signed an arbitration agreement. (*Id.* at 1 n.1).

11

>Except as to the HBA's FDC which shall apply its own rules, all arbitrations -- regardless of the arbitral organization or arbitrator actually hearing the dispute -- shall be conducted in Houston, Texas applying Texas substantive law pursuant to the Commercial Arbitration Rules (and not the rules for Large, Complex Commercial Cases) of the American Arbitration Association (AAA) then in effect, whose Expedited Procedures shall apply regardless of the monetary size of the dispute or the number of parties to the proceeding, with only a single arbitrator hearing the dispute, again all regardless of the organization sponsoring the arbitration in question. All parties acknowledge and agree that this arbitration agreement modifies the AAA arbitration rules regarding, inter alia, the selection of the arbitrator and the administration of the arbitration in that: (1) either party may directly appoint the single arbitrator or the arbitral association who/which shall proceed to resolve the dispute, provided that the arbitrator is recognized and neutral; (2) the AAA is not required to administer and shall not administer the arbitration; and (3) any recognized and neutral arbitrator himself/herself or arbitral association may administer the arbitration. The arbitrator or arbitral association appointed to resolve the dispute shall have the sole and exclusive ability to rule on all aspects of the arbitrator's appointment, including, but not limited to, disputes or challenges of bias and neutrality.

(*Id.*).

Capstone followed this procedure in the Texas arbitration by filing an arbitration demand with Conflict Resolution Solutions, PLLC and "request[ing] that CRS appoint a single arbitrator according to the called for expedited rules of the American Arbitration Association with the parties having adopted the optional rules of the AAA for Emergency Measures of Protection." (Docket Entry Nos. 10-5, 10-10). Judge Dion Ramos appointed Judge Dorfman as the arbitrator. (Docket Entry No. 10-8). The Doctors object to Judge Dorfman's appointment on the grounds that AAA Commercial Arbitration Rule E-4 was not followed. (Docket Entry No. 10-11 at 1–2). Judge Dorfman overruled this objection, finding that the rule was not violated and that his appointment was consistent with CRS's procedures and the 2015 Engagement Letter. (Docket Entry No. 10-7). The Doctors restate their objections here and ask the court to deny the motion to compel arbitration because Judge Dorfman was improperly appointed.

According to the Doctors, Capstone had the right to select CRS as the arbitral association, but after doing so, CRS "occupie[d] the position of the AAA and [was] bound to apply AAA Rule

12

E-4" of the Commercial Arbitration Rules regarding Expedited Procedures.  (Docket Entry No. 10 at 16; Docket Entry No. 10-9 at 34).  Rule E4 states that "AAA shall simultaneously submit to each party an identical list of five proposed arbitrators drawn from its National Roster from which one arbitrator shall be appointed," and that the parties subsequently may strike or agree to names on the list.  (*Id.*).  The Doctors argue that CRS violated Rule E-4 because it appointed Judge Dorfman on its own, without providing the parties a list of proposed arbitrators to review.  (Docket Entry No. 10 at 18).  For this alleged failure to follow AAA rules, the Doctors ask the court to deny Capstone's motion to compel arbitration or alternatively compel a replacement for Judge Dorfman.

The court cannot deny Capstone's expedited motion to compel arbitration on the ground that Judge Dorfman was improperly appointed.  In deciding a motion to compel arbitration, the court's inquiry is limited to whether the parties agreed to arbitrate and if there are external legal constraints that prevent arbitration.  *See Tittle,* 463 F.3d at 418.  The court cannot deny the motion to compel on the ground that the arbitrator was improperly appointed; this goes beyond the permitted scope.  *See Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 487 (5th Cir. 2002) ("The FAA does not provide therefore for any court intervention prior to issuance of an arbitral award beyond the determination as to whether an agreement to arbitrate exists and enforcement of that agreement by compelled arbitration of claims that fall within the scope of the agreement even after the court determines some default has occurred.").

Nor can the court "compel the proper appointment of a replacement arbitrator pursuant to 9 U.S.C. § 5."  (Docket Entry No. 10 at 16).  The Doctors may, "before proceeding to arbitration, . . . [seek] an order from the district court compelling arbitration before a properly selected arbitrator pursuant to sections 4 and 5 of the FAA."  *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 674 (5th Cir. 2002).  Parties to an arbitration may seek a court order to ensure that an "arbitration

13

proceed[s] in the manner provided for in" an arbitration agreement. 9 U.S.C. § 4. If parties have agreed on "a method of naming or appointing an arbitrator . . . such method shall be followed." 9 U.S.C. § 5. While courts enforce arbitration agreements as written, there is a preference for the parties, not the courts, to make the decisions on the arbitration; "federal courts [have] very limited jurisdiction to intervene in an arbitration before an award is issued." *Int'l Bancshares Corp. v. Ochoa*, 311 F. Supp. 3d 876, 878 (S.D. Tex. 2018) (citing *Gulf Guar. Life Ins. Co.*, 304 F.3d at 486). "But 9 U.S.C. § 5 does permit a court to intervene in three limited circumstances: '(1) if the arbitration agreement does not provide a method for selecting arbitrators; (2) if the arbitration agreement provides a method for selecting arbitrators but any party to the agreement has failed to follow that method; or (3) if there is a lapse [of time] in the naming of an arbitrator or arbitrators.'" *Id.* (citing *BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 491 (5th Cir. 2012)). Under these circumstances, a court may intervene to appoint an arbitrator. *See BP Expl. Libya.*, 689 F.3d at 491.

These circumstances are not present here. The Doctors argue that CRS has failed to follow the selection process set out in the Engagement Letter because, according to the Doctors, the Agreement required CRS to follow Rule E-4. (Docket Entry No. 10 at 18). The Engagement Letter states that "[t]he arbitrator or arbitral association appointed to resolve the dispute shall have the sole and exclusive ability to rule on all aspects of the arbitrator's appointment." (Docket Entry No. 7-1 at 15); *see Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*, 729 F.3d 443, 452 (5th Cir. 2013) (the plaintiff's contention that an arbitrator was improperly appointed was a procedural question properly handled by the arbitrator, who addressed the plaintiff's concerns according to the method the agreement specified to resolve interpretation disputes); *Int'l Bancshares*, 311 F. Supp. 3d at 879 (the court did not have jurisdiction to intervene because

14

"challenging the process used to select arbitrators" is a procedural challenge that is appropriate for arbitrators to decide).

The Doctors' challenge to the selection method is procedural in nature; "[t]he law presumes that "procedural questions" are for an arbitrator to decide." *Adam Techs. Int'l,* 729 F.3d at 452 (5th Cir. 2013). Under the parties' Engagement Letter, the arbitrator, Judge Dorfman, had the power "to rule on all aspects of the arbitrator's appointment." (*See* Docket Entry No. 7-1 at 15). The court will not disturb the Agreement or the arbitrator's decision by compelling the appointment of another arbitrator.

The court denies the Doctors' request to compel arbitration before another arbitrator.

### B. The Doctors' Cross-Motion to Compel Arbitration Before Judge Duval

The Doctors cross-move to compel Feldman and The Feldman Law Firm to arbitrate the Doctors' claims in the Louisiana arbitration before Judge Duval. (Docket Entry No. 10 at 5). The Doctors argue that the Engagement Letter was a valid arbitration agreement and that Judge Duval has properly exercised jurisdiction over the arbitration. (*Id.* at 13–15). The Lawyers responded by arguing that the Doctors do not have standing to bring the motion to compel. (Docket Entry No. 16 at 6).

Section 4 of the FAA allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to file a motion to compel arbitration. 9 U.S.C. § 4; s*ee Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). This requirement restricts the exercise of judicial power "to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate." *See id.* at 473. Parties moving to compel arbitration must show that they were aggrieved by the failure, neglect, or refusal of another to arbitrate. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983) (the refusal to arbitrate is an "indispensable

15

element" to a "cause of action under § 4 for an arbitration order"). Absent this, a court cannot grant a motion to compel. *See Baker Hughes Inc. v. BNY Mellon Capital Markets LLC*, No. CIVA H-09-CV-1446, 2010 WL 985826, at *6 (S.D. Tex. Mar. 16, 2010) (declining to entertain a motion to compel arbitration because "the respondents have not refused to arbitrate within the meaning of 9 U.S.C. § 4 nor has any "default" in the arbitration procedure occurred.").

The Doctors cannot show that Feldman and The Feldman Law Firm have failed, neglected or refused to arbitrate. Both have been active participants in the Texas and Louisiana arbitrations and have not refused to arbitrate. *See Indep. Coca-Cola Employees' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United,* 114 F. App'x 137, 140 (5th Cir. 2004) ("To 'make it clear' that an employer refuses to arbitrate, circuit courts have held that one of the parties must take the unequivocal position that it will not arbitrate."); *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1066 (3d Cir. 1995) ("[W]e hold that an action to compel arbitration under the Federal Arbitration Act accrues only when the respondent unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate the subject matter of the dispute."). The fact that Feldman and The Feldman Law Firm moved to abate or dismiss the Louisiana arbitration and challenged its jurisdiction is not evidence of a failure or refusal to arbitrate. *See Capstone Associated Servs., Ltd. v. Rivero*, No. CV H-13-613, 2013 WL 12140391, at *3 (S.D. Tex. Sept. 30, 2013) (the moving party, Capstone, was not entitled to an order compelling arbitration when the adversary parties, Stewart Feldman and the Feldman Law Firm, had been participating in the arbitration but spent "spent over two months . . . challenging the jurisdiction of the arbitrator" because "arbitrating such a defense does not constitute failure or refusal to arbitrate as required for an order compelling arbitration under Section 4 of the FAA.").

Nor have Feldman and The Feldman Law Firm filed litigation or engaged in other conduct suggesting a refusal to arbitrate. *See Baker Hughes,* 2010 WL 985826, at *6 (noting that commencing litigation can show a refusal to arbitrate) (citing *Jacobs v. USA Track & Field,* 374 F.3d 85, 89 (2d Cir. 2004)). The Lawyers' invocation of a separate arbitration on the nonsignatory entities' claims before Judge Baker is not evidence of a refusal to arbitrate the Doctors' claims before Judge Duval.

The Doctors have not been injured in a way that warrants the court's interference at this time. The court denies the Doctors' motion to compel arbitration.

## IV. Conclusion

The court: (1) grants the Lawyers' motion to compel the participation of the Doctors' business entities in the Texas arbitration, (Docket Entry No. 2); (2) denies the Doctors' cross-motion to compel Stewart Feldman and The Feldman Law Firm's participation in the Louisiana arbitration, (Docket Entry No. 10); and (3) denies the motion to stay the Texas arbitration because a stay is not warranted when these issues are resolved, (Docket Entry Nos. 12, 13).

SIGNED on August 3, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge