## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SCOTT SULLIVAN, et al. | § | CIV. ACT. NO.  4:20-cv-02236 |
| Plaintiffs, | § | |
| | § | CONSOLIDATED WITH 2021-cv-0658 |
| | § | AND 2021-CV-0682 |
| | § | |
| | § | JUDGE LEE H. ROSENTHAL |
| VS. | § | |
| | § | JURY TRIAL REQUESTED |
| STEWART A. FELDMAN, et al. | § | (9 U.S.C. § 4) |
| Defendants | § | |

### THE DOCTORS' OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD FILED BY THE FELDMAN/CAPSTONE PARTIES AND CROSS- REPLY MEMORANDUM IN SUPPORT OF MOTION TO CONFIRM ARBITRATION AWARD

JAMES M. GARNER (Tex. Bar # 792312/ 13895)
PETER L. HILBERT, JR (Tex. Fed. Bar # 114441)
THOMAS J. MADIGAN, II (Tex. Fed. Bar #3337451)
JEFFREY D. KESSLER (Tex. Fed. Bar # 3567546)
DAVID A. FREEDMAN (Tex. Fed. Bar # 3567550)
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
jgarner@shergarner.com


Mark Trachtenberg
State Bar No. 24008169
Tex. Federal Bar No. 24584
**Haynes Boone, LLP**
1221 McKinney Street, Suite 4000
Houston, Texas 77010
Telephone: (713) 547-2528
Facsimile: (713) 236-5567
mark.trachtenberg@haynesboone.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………...…………....…iii

SUMMARY OF ARGUMENT…………………….. …………………………….....1

ARGUMENT…………………………………………………...……………..……2

I.  Judge Jones was properly appointed, and the Engagement Letter
    provides him with sole authority to determine the validity
    of his appointment and his jurisdiction…………….……………………..…..2

    A.  The agreement contemplates multiple arbitrations………………..…..3

    B.  Texas law does not permit the Feldman/Capstone Parties
        to hijack the Doctors' tort claims so as to deprive
        them of their choice of forum…..………………………………...…..3

    C.  Judge Jones properly concluded that the Feldman/Capstone
        Parties' premature divestment of Judge Medley's jurisdiction
        was invalid………………………………….…..……….…..…..5

    D.  The cases relied upon by the Feldman/Capstone Parties are
        easily distinguishable……………………………………………..…..8

II. Arbitrator Glasser's award does not have preclusive effects on
    Judge Jones's Award – and in any event, that inquiry is one for
    Judge Jones, not this Court……………………………………..……....9

    A.  The Engagement Letter, along with AAA Rule R-7,
        granted Judge Jones the authority to rule on his own jurisdiction...…..10

    B.  Inconsistent arbitral awards may co-exist and cannot be
        vacated as long as they "draw their essence" from the
        parties' agreement…………………………...…………...……..11

    C.  The cases cited by the Feldman/Capstone Parties are distinguishable..12

III. There is no basis for vacating the Jones Award on evident
     partiality grounds………………………………………………..…..13

IV. The Doctors' claims were properly submitted to Judge Jones……………15

    A.  The Doctors pleaded and repeatedly disclosed their
        conversion claims…………………………………..……..…..15

i

B. Judge Jones had sole discretion to determine what claims were before him……………………………………………......17

V. Judge Jones acted as a "single arbitrator," and the Feldman/Capstone Parties cannot prove that any decision made by Judge Jones was tainted by any so-called "consultation" with other Arbitrators…....…....……18

VI. The Feldman/Capstone Parties offer no proof whatsoever of "corruption, fraud, or undue means" by Judge Jones………………….20

A. The Feldman/Capstone Parties cannot satisfy §10(a)(1)'s requirements for proving that an award was "procured by corruption, fraud, or undue means"…………………………...……...20

B. Neither Judge Jones's sanctions award nor the March 29, 2022 Award is based on any evidence provided to Judge Jones on an *ex parte* basis…………….……………………………………21

C. There was nothing improper about redacting fee invoices for privilege, as contemplated by AAA Rule R-34(c)………………23

VII. By selecting the AAA rules, the Feldman/Capstone Parties agreed to allow Judge Jones to decide class arbitrability, and that ruling is entitled to deference………………….……………...23

CONCLUSION…………………………………………………...…………25

CERTIFICATE OF SERVICE………………………………………………...26

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*20/20 Communication, Inc v. Crawford*
    930 F.3d 715 (5th Cir. 2019)………………………….…………………………25

*23andMe v. Davis-Hudson,*
    2015 WL 6094303 (N.D. Cal. 10/16/2015)……………..……………….…..……1, 11, 12

*B.C. v. Steak N Shake Operations, Inc.,*
    512 S.W.3d 276 (Tex. 2017)………………………………………………………5

*Barahona v. Dillard's, Inc.,*
    376 Fed. Appx 395 (5th Cir. 2011)……………………………………...……....…2

*Barlit Beck LLP v. Okada,*
    25 F.4th 519 (7th Cir. 2022)…………………..……...…………………………16

*Baxter v. Genworth N. Am. Corp.,*
    16 Cal. App.5th 713 (2017)……………………………..………….……………3

*Biobased Sys., L.L.C. v. Biobased of S. Tex., LLC,*
    2007 WL 1080114 (S.D. Tex. 4/9/2007)...……………………………..………..10

*Brook v. Peak Int'l, Ltd.,*
    294 F.3d 668 (5th Cir. 2002)…………………………………………...….….…8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
    207 F.3d 1126 (9th Cir. 2000)……………………………………...……10

*CHRISTUS Health Gulf Coast v. Carswell,*
    505 S.W.3d 528 (Tex. 2016)…………………………………………...……………5

*Citigroup, Inc. v. Abu Dhabi Investment Auth.,*
    776 F.3d 126 (2d Cir. 2015)……………………………………..…………10

*Delek Refining, Ltd. v. Local 202,*
    891 F.3d 566 (5th Cir. 2018)……………...………………….………...….…8, 9

*Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n,*
    889 F.2d 599 (5th Cir. 1989)………………………………………...……...9

*Dream Med. Group, LLC v. Old South Trading Co., LLC,*
    2022 WL 2164703 (S.D. Tex. 5/11/2022)…………………………..…………………1

iii

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938 (1995)……………………………………………..…..…1, 3, 7

*Forsythe Intern., S.A. v. Gibbs Oil Co. of Tex.,*
    915 F.2d 1017 (5th Cir. 1990)..……………………………….........15, 20

*Hendricks v. Feldman Law Firm, LLP,*
    2015 WL 5671741 (D. Del. 9/25/2015)…………..….….……………………12

*In re Houston Specialty Ins. Co.,*
    569 S.W.3d 138 (Tex. 2019)………………………………..…..…..……*passim*

*Kashner Davidson Securities Corp. v. Mscisz*
    531 F.3d 68 (1st Cir. 2008)……………………………………………23

*Klay v. United Healthcare Group, Inc,*
    376 F.3d 1092 (11th Cir. 2004)……………………………..……10

*Kubala v. Supreme Prod. Servs., Inc.,*
    830 F.3d 199 (5th Cir. 2016)……………………………………..14

*Langston v. Premier Directional Drilling, L.P.,*
    203 F.Supp.3d 777 (S.D. Tex 2016)……………………...……………25

*Lindland v. U.S. Wrestling Ass'n.,*
    227 F.3d 1000 (7th Cir. 2000)……………………………...…...……8, 12, 23

*Mantle v. Upper Deck Co.,*
    956 F.Supp. 719 (N.D. Tex 2007)……………………….……………15

*Martin v. CB Restaurants, Inc.,*
    2021 WL 2701952 (S.D. Tex. 3/12/2021)………...…..…………………25

*Matter of Arb. Between TransChem. Ltd. and China Nat. Mach. Import & Export Corp.,*
    978 F.Supp 266 (S.D. Tex. 1997)………………………………………...20

*McGowan Working Partners, Inc. v. Eland Energy, Inc.,*
    2011 WL 2669098 (N.D. Tex. 7/6/2011)………………...……….……………...…15

*Miller v. ConocoPhillips Co.,*
    2021 WL 4027054 (S.D. Tex 3/04/2021)………….…………………..…...25

*Miniex v. Law Office of E. Sharon Thornton, LLC,*
    2020 WL 7386368 (S.D. Tex. 12/16/2020)………...……………………20

*Morgan Keegan & Co., v. Garrett,*
    495 Fed. App'x 443 (5th Cir. 2012)……………………………………...……....2, 20

*NLRB v. Washington Heights Mental Health Council, Inc.,*
    897 F.2d 1238 (2d Cir. 1990)………………………………………………………17

*North River Insurance Co. v. Allstate Insurance Co.,*
    866 F. Supp. 123 (S.D.N.Y. 1994)…………………………………………………10

*OOGC America, L.L.C. v. Chesapeake Exploration, L.L.C.,*
    975 F.3d 449 (5th Cir. 2020)……………………………………………...……13

*Oxford Health Plans, LLC v. Sutter,*
    569 U.S. 564 (2013)………………………………..…………………….............1, 12

*Parker v. ETB Mgmt., L.L.C.*
    667 F. App'x 850 (5th Cir. 2016)……………………………………………………1

*Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Tex., Inc.,*
    343 F.3d 355 (5th Cir. 2003)……………………………………………...……25

*PoolRe Ins. Corp. v. Organizational Strategies, Inc.,*
    783 F.3d 256 (5th Cir. 2015)……………………………….……………......……8, 9

*Positive Software Sols. Inc. v. New Century Mortgage Corp.,*
    46 F.3d 278 (5th Cir. 2007)…………………………………………………………13

*Rent-a-Ctr., W., Inc. v. Jackson*
    561 U.S. 63 (2010)…………………………………………………………………14

*Robbins v. Day,*
    954 F2d. 683 (11th Cir. 1992)………………………………….……………………15

*Robinson v. Home Owners Mgmt. Enterprises, Inc.,*
    590 S.W. 3d 518 (Tex. 2019)……………………………….……………………25

*Rosetta Res. Operating, LP v. Martin,*
    -- S.W.3d --, 2022 WL 1434662 (Tex. May 6, 2022)…………….…………………3

*Roughneck Concrete Drilling & Sawing Co., v. Plumbers' Pension Fund, Local 130, UA,*
    640 F3d 761 (7th Cir. 2011)……………………………………………………....12

*Schoenduve Corp. v. Lucent Techs., Inc.*
    442 F.3d 727 (9th Cir. 2006)………………………………………………………7

*Shafli v. British Airways,*
    872 F.Supp 1178 (E.D.N.Y. 1995)………………………………………......…17

*Smith v. Transport Workers Union of America, AFL-CIO*
    374 F.3d 372 (5th Cir. 2004)……………………………………………….…9

*Steelworkers v. Enterprise Wheel & Car Corp.,*
    363 U.S. 593 (1960)……………………………………………………....……1

*Sun Coast Resources, Inc. v. Conrad,*
    956 F.3d 335 (5th Cir. 2020)………………………………………….....2, 24, 25

*Taylor v. Univ. of Phoenix/Apollo Group,*
    487 F. App'x 942 (5th Cir. 2012)……………………………….………...………20

*Totem Marine Tug & Barge, Inc. v. North American Towing*
    607F2d 649 (5th Cir. 1979)……………………………….….……………17, 22

*Timegate Studios, Inc. v. Southpeak Interactive, LLC,*
    713 F.3d 797 (5th Cir. 2013)……………………………………………….....9

*W.R. Grace & Co. v. Local Union 759,*
    461 U.S. 757 (1983)……………………………...……………………1, 9, 11

*Yamada v. Friend,*
    335 S.W.3d 192 (Tex. 2010)…………………………….……………………...5

## STATUTES

9 U.S.C. § 10……………………………………a…………………………*passim*

## OTHER

AAA Commercial Arbitration Rule 7……………………………...…............2, 7, 10, 17

AAA Commercial Arbitration Rule 17……………………………...…………...14

AAA Commercial Arbitration Rule 23……………………………...…………...23

AAA Commercial Arbitration Rule 34……………………………...…………...23

AAA Commercial Arbitration Rule 35……………………………...…………...23

AAA Commercial Arbitration Rule 50……………………………...…………...13

AAA Commercial Arbitration Rule 58……………………………...……….…...23

AAA Commercial Arbitration Supplementary Rule for Class Actions 1…...…….……….....24, 25

The Doctors respectfully ask this Court to deny the Feldman/Capstone Parties'[1] Motion to Vacate the Arbitration Award rendered by the Honorable Charles R. Jones, and instead grant the Doctors' Motion to Confirm the Jones Award, for the reasons set forth below.[2]

## SUMMARY OF ARGUMENT

Judge Jones properly exercised jurisdiction over the Doctors' tort claims, consistent with Texas law, and irrespective of the Feldman/Capstone parties' attempts to hijack those claims to a friendlier forum.[3] None of the four exclusive grounds for vacatur under 9 U.S.C. §10 exists here. Under the "***exceedingly deferential***"[4] approach to reviewing an arbitrator's findings, which extends to Judge Jones's determination of his jurisdiction, this Court should deny the Feldman/Capstone Parties' motion and confirm Judge Jones' Award, for the following reasons:

> ➢ Judge Jones was properly appointed, and the Engagement Letter's arbitration clause vests him with the "***sole and exclusive ability to rule on all aspects of the arbitrator's appointment***."[5] Controlling Supreme Court authority requires deference to Judge Jones's arbitrability determination.[6]

> ➢ Arbitrator Glasser's ruling does not preclude Judge Jones's decision. All that matters is that the Jones Award draws its essence from the parties' contract—and because it does, it is not subject to vacatur.[7] This principle also holds true as to conflicting arbitral rulings regarding class certification, so Arbitrator Glasser's ruling on the class does not preclude Judge Jones from rendering a contrary ruling.[8]

---

[1] The "Feldman/Capstone Parties" shall refer collectively to "Feldman" and "Capstone" as those terms are defined in the Doctors' Motion to Confirm [Doc. 72]. Jeff Carlson, previously defined as part of "Capstone," filed a separate opposition brief [Doc. 89], so references to the Feldman/Capstone Parties' arguments do not include Mr. Carlson. All other capitalized terms, including the "Doctors," shall have the meaning ascribed to them in the Doctors' Motion to Confirm unless otherwise indicated. [Doc. 72].

[2] *See* Motion to Vacate, filed June 2, 2022 [Doc. 87]; Motion to Confirm Arbitration Award, filed April 25, 2022 [Doc. 72].

[3] *In re Houston Specialty Ins. Co.*, 569 S.W.3d 138, 141 (Tex. 2019).

[4] *Dream Med. Group, LLC v. Old South Trading Co., LLC*, No. 22-134, 2022 WL 2164703 (S.D. Tex. 5/11/2022), at *3 (quoting *Parker v. ETB Mgmt., L.L.C.*, 667 F. App'x 850, 851 (5th Cir. 2016) (emphasis added).

[5] *See* Exhibit A, Engagement Letter, at p. 15 (emphasis added).

[6] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

[7] *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 765 (1983); *Oxford Health Plans, LLC v. Sutter*, 569 U.S. 564, 573 (2013) (quoting *Steelworkers v. Enterprise Wheel & Car Corp*., 363 U.S. 593, 599 (1960)).

[8] *23andMe v. Davis-Hudson*, No. 15-01323, 2015 WL 6094303, at *4 (N.D. Cal. 10/16/2015).

➢ The Feldman/Capstone Parties cannot satisfy the stringent standard to show "evident partiality" based on Judge Jones' receipt of two football tickets of *de minimis* value from a third-party with no connection to these proceedings.

➢ The Doctors formally pleaded and disclosed their conversion claims, and the Feldman/Capstone Parties had fair notice that those claims were being asserted.

➢ Judge Jones acted as a "single arbitrator." The Feldman/Capstone parties expressly consented to the framework whereby the arbitrators would receive testimony together, but issue separate awards.[9] They cannot prove that the Award was tainted because Judge Jones consulted with other arbitrators on logistical issues.

➢ The conclusory assertions of the Feldman/Capstone Parties are wholly insufficient to meet their burden to prove by clear and convincing evidence that the Jones Award was "procured by corruption, fraud, or undue means."[10]

➢ The parties' agreement to use the AAA Rules means that they agreed to allow Judge Jones to decide class arbitration issues.[11]

## ARGUMENT

**I.    Judge Jones was properly appointed, and the Engagement Letter provides him with sole authority to determine the validity of his appointment and his jurisdiction.**

The starting point in the analysis of Judge Jones's appointment is the Engagement Letter, which grants the arbitrator "the ***sole and exclusive ability to rule on all aspects of the arbitrator's appointment***."[12] This language is buttressed by AAA Rule R-7, which provides that "the arbitrator shall have the power to rule on his or her jurisdiction, including . . . the arbitrability of any claim."[13] Judge Jones did just that,[14] and this Court cannot second-guess his interpretation of the Engagement Letter. The arbitration clause drafted by Feldman vested the arbitrator with the power to decide his own jurisdiction. As the Supreme Court held in *First Options of Chicago, Inc. v.*

---

[9] *See* Exhibit B, Stipulation, March 21, 2021; Exhibit C, E-mail from Ian Sander, May 19, 2021; Exhibit D, Agreed Scheduling Order, May 20, 2021.

[10] 9 U.S.C. §10(a)(1); *Morgan Keegan & Co., v. Garrett*, 495 Fed. App'x 443, 447 (5th Cir. 2012) (quoting *Barahona v. Dillard's, Inc.*, 376 Fed. Appx. 395, 397 (5th Cir. 2011)).

[11] *Sun Coast Resources, Inc. v. Conrad*, 956 F.3d 335, 338 (5th Cir. 2020).

[12] *See* Exhibit A, Engagement Letter, at p. 15 (emphasis added).

[13] *See* Exhibit E, AAA Rule R-7.

[14] *See* Jones Award [Doc. 72-2], at pp. 19-21.

*Kaplan*, the Feldman/Capstone Parties must live with the consequences of that choice, as it is subject to the same highly-deferential standard as Judge Jones's rulings on the merits.[15]

### A.  The Engagement Letter contemplates multiple arbitrations.

As this Court has recognized,[16] the Engagement Letter's arbitration clause explicitly contemplates multiple "arbitration*s*" (plural) to be conducted pursuant to "the Commercial Arbitration Rules . . . of the American Arbitration Association (AAA) then in effect."[17] All the arbitrators, including Judge Jones, have so held.[18] While the Feldman/Capstone Parties reject this construction as leading to "absurd results," the endorsement of this interpretation by this Court and five arbitrators fatally undermines the notion that this interpretation is "absurd."[19]

### B.  Texas law does not permit the Feldman/Capstone Parties to hijack the Doctors' tort claims so as to deprive them of their choice of forum.

The Doctors asserted a broad swath of tort claims before Judge Jones—many of which were previously asserted before Judge Medley and Judge Gill-Jefferson.[20] Under governing Texas law, the Doctors are the masters of their claims: they have the right to choose when and where these claims would be tried. The Texas Supreme Court emphasized in *In re Houston Specialty* that

---

[15] 514 U.S. at 943.

[16]  Doc. 51, Memorandum and Opinion, Dec. 4, 2020, at p. 17 ("the Engagement Letter does not preclude the parties from proceeding with separate arbitrations").

[17]  *See id.*, (quoting Engagement Letter, Exhibit A, at p. 15 (emphasis added)).

[18] *See* Jones Award [Doc. 72-2] at p. 22; Order, Feb. 8, 2021 [Doc. 72-16], at pp. 1-2; Dorfman Award, Nov. 10, 2020, [Doc. 72-19] at ¶ 56 ("That language is further supported by the language in the arbitration clause that contemplates multiple 'arbitrations' (note the plural) as well as the absence of any requirement regarding the pleading of compulsory counterclaims in either the Engagement Letter or the AAA Rules governing this proceeding."); Joint Order, March 1, 2021 [Doc. 72-7].

[19] *See* Memorandum in Support of Motion to Vacate [Doc. 87-1], at p. 5 (quoting *Rosetta Res. Operating, LP v. Martin*, No. 20-0898, -- S.W. 3d --,  2022 WL 1434662, at *3 (Tex. May 6, 2022)).

[20]  Judge Medley's jurisdiction expired pursuant to the four-month provision on December 23, 2020. That four-month provision was later found by Judge Jones, Arbitrator Kutcher, Judge Baker, and Arbitrator Glasser to be unconscionable and unenforceable.  *See* Order, March 1, 2021 [Doc. 72-7].  Further, Hon. Stanwood Duval held that the "[e]nsuring of due process transcends the four-month expiration date." *See* Exhibit F, Order, Dec. 23, 2020, at p. 2, n.1. *See also Baxter v. Genworth N. Am. Corp.*, 16 Cal. App.5th 713 (2017) (provision mandating arbitration hearing to begin within 120 days would be unconscionable but-for the express assurance that arbitrator had discretion to extend jurisdictional window for good cause). Judge Gill-Jefferson declined her appointment due to scheduling conflicts.

a defendant may not preemptively raise a plaintiff's tort claims from a defensive posture to deprive the plaintiff of its right to choose the time and place where its claims shall be adjudicated.[21]

But that is precisely what the Feldman/Capstone Parties tried to do in initiating the Glasser Arbitration, into which they "intended to wrap all the parties' disputes," by bringing a claim they say was "meant to be all encompassing to cover any and all disputes, claims and controversies between the parties."[22] This language necessarily includes the Doctors' tort claims. The relief sought by the Feldman/Capstone Parties was fundamentally declaratory in nature, concerning the Doctors' tort, malpractice, statutory, and breach of fiduciary duty claims, regardless of the labels applied. Strikingly, at the final hearing, Capstone's attorney declared that "there are no affirmative claims" made by the Feldman/Capstone Parties in either the Baker arbitration or the Glasser arbitration.[23] Instead of pursuing affirmative claims for relief, the Feldman/Capstone Parties tried to avoid (or minimize) liability for the Doctors' claims. While the Feldman/Capstone Parties were free to defend themselves, they could not forcibly recast the Doctors' claims into an invalid forum.

As per *Houston Specialty*, that attempt to hijack the Doctors' claims and place them before the Feldman/Capstone Parties' arbitrator of choice was "legally invalid" and "ha[s] no basis in [Texas] law."[24] Under *Houston Specialty*, the Doctors have the exclusive right to pick the "time and place of suit" for their malpractice and tort claims against Capstone.[25] The Feldman/Capstone Parties litigated and lost that issue before Judge Dorfman, before having that order—including its

---

[21] 569 S.W.3d 138, 141 (Tex. 2019).

[22] *See* Exhibit G, Glasser Arbitration Demand, Dec. 7, 2020, at p. 2

[23] *See* Exhibit H, Transcript, Sept. 24, 2021, at p. 7048, line 22 – p. 7049, line 4. Immediately after that exchange, Arbitrator Glasser asked counsel for the Feldman/Capstone Parties to confirm by the end of the day whether they were pursuing any affirmative claims for relief. *Id.* at p. 7050, line 6 – p. 7052, line 20. They did not respond.

[24] *In re Houston Specialty*, 569 S.W.3d at 141.

[25] *See id.* at 140-41.

4

application of *Houston Specialty*—confirmed as part of a now-final judgment.[26]

While the Feldman/Capstone Parties claim that they "disavowed requested declaratory relief on [the Doctors'] tort claims" before Arbitrator Glasser, this Court should defer to Judge Jones's rejection of that semantic hair-splitting. It is immaterial that the Feldman/Capstone Parties, obviously cognizant of *Houston Specialty*, did not use the phrase "declaratory judgment" in filing the Glasser Arbitration. Courts examine the "underlying nature and gravamen of the claim, rather than the way it is pleaded."[27] Arbitrators, like courts, should not rely on "what is simply alleged or artfully pled," to "determine the rights and liabilities of the involved parties."[28] In addition, "artful pleading and recasting of claims is not permitted."[29] Judge Jones thus properly disregarded the transparent attempt to circumvent *Houston Specialty* by disavowing the seeking of declaratory relief before Arbitrator Glasser. By recasting the Doctors' claims before Arbitrator Glasser and denying liability for those same claims, the Feldman/Capstone Parties' pursuit of the Glasser Arbitration can *only* be construed as seeking a back-door declaration of nonliability for the Doctors' damages. Judge Jones recognized that *Houston Specialty* prohibits such gamesmanship.

**C. Judge Jones properly concluded that the Feldman/Capstone Parties' premature divestment of Judge Medley's jurisdiction was invalid.**

Under the "exceedingly deferential" standard governing this Court's review, this Court should defer to Judge Jones's determination that his arbitration was validly initiated in light of the Feldman/Capstone Parties' invalid attempts to prematurely divest Judge Medley of jurisdiction. Judge Medley's arbitration immediately preceded the Jones Arbitration. The Feldman/Capstone Parties (1) resisted Judge Medley's jurisdiction at the outset, (2) paralyzed his proceeding by

---

[26] *See* Dorfman Award, Nov. 9, 2020, at ¶ 6
[27] *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 534 (Tex. 2016).
[28] *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276 (Tex. 2017).
[29] *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010).

seeking a contractually-barred injunction, and (3) tried to prematurely divest his jurisdiction by filing the Glasser arbitration weeks before the end of Judge Medley's four-month jurisdictional window. They now seek, as a reward for such obstreperousness, to vacate the Jones Award.

Judge Medley's arbitration began on August 23, 2020, so his four-month jurisdictional window remained intact through December 23, 2020. But the Feldman/Capstone Parties refused to honor his appointment., stating that they "have elected not to participate"[30] in his "purported arbitration."[31] They also froze Judge Medley's proceedings in place by obtaining a contractually-barred TRO, which Judge Jones found directly contributed to Judge Medley's inability to complete the proceedings before him.[32]

Judge Jones correctly rejected the Feldman/Capstone Parties' attempt to truncate Judge Medley's proceeding early, which would have prematurely divested Judge Medley of jurisdiction. The arbitration clause in the Engagement Letter provides that, if an arbitration has not been completed within four months, "any party *then* may file another written demand for arbitration . . . with the prior arbitrator or arbitral association *then* being immediately divested of jurisdiction."[33] This language requires sequencing: the full four months must expire before a party may "then" file a new arbitration. But the Feldman/Capstone Parties jumped the gun by filing the Glasser arbitration on December 7, 2020, with sixteen days remaining in Judge Medley's tenure.

Judge Jones correctly interpreted this contractual language to determine that a party could divest an arbitrator's jurisdiction only after the full passage of four months, and "then" formally tendering the claims to a new arbitrator.[34] The Doctors immediately tendered their claims to Judge

---

[30] *See* Exhibit I, Motion to Enforce Arbitrators' Jurisdiction, August 27, 2020, at p. 7.

[31] *See* Exhibit J, E-mail from Joseph Greenberg, Oct. 2, 2020

[32] *See* Jones Award, at p. 20, ¶ 8 [Doc. 72-2]

[33] *See* Exhibit A, Engagement Letter, at p. 15.

[34] *See* Jones Award, at pp. 20-21, ¶¶ 9-10 [Doc. 72-2]

Jones when Judge Medley's jurisdiction expired on December 23, 2020.[35] Judge Jones construed these jurisdictional divestiture provisions to require that the claims be formally filed with a new arbitrator only upon the expiration of an arbitrator's four-month window—not sooner.

Thus, the Feldman/Capstone Parties' emphasis on the "single arbitrator" language is misplaced. Ignoring the fact that the Engagement Letter has been repeatedly and uniformly found to contemplate multiple "arbitrations" (plural), the framing of this issue in terms of only an "original arbitrator" and a "replacement arbitrator" ignores the role of the Judge Medley arbitration. Under that framework, Judge Medley was the "original arbitrator," and upon the lapse of his jurisdiction on December 23, 2020, Judge Jones became the "replacement arbitrator."

Judge Jones's jurisdictional ruling cannot be revisited here. He analyzed his jurisdiction against the backdrop of the Engagement Letter and *Houston Specialty* and held "the claims before this Arbitrator fall squarely within the rule of *In re Houston Specialty*," consistent with his February 8, 2021 jurisdictional ruling. He also applied AAA Rule R-7, which empowered him to "rule on his . . . own jurisdiction," including the arbitrability of specific claims.[36] As *First Options* confirms, these rulings are entitled to the same deference as the arbitrator's substantive rulings.[37]

When the shoe was on the other foot, the Feldman/Capstone Parties asserted that a dispute over the arbitrator's appointment "goes to the ***arbitrator alone for decision***, thereby falling outside this Court's jurisdiction."[38] This Court agreed.[39]  They are estopped from arguing to the contrary.

---

[35] *See* Exhibit K, E-mail from David Freedman, Dec. 23, 2020, at 12:00 A.M. To eliminate any potential ambiguity as to whether Judge Medley's jurisdiction ran through December 23, 2020, the Doctors sent a substantively identical arbitration demand to Judge Jones at 12:00 A.M. on December 24, 2020.

[36] *See* Jones Award, at pp. 21-27.

[37] *First Options*, 514 U.S. at 943; *see also Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 733 (9th Cir. 2006) ("the arbitrator's interpretation of the scope of his powers is entitled to the same level of deference as his determination on the merits").

[38] *See* Feldman/ Capstone Parties Joint Response to Cross-Motion to Compel Arbitration, filed July 20, 2020 [Doc. 16], at p. 7 (emphasis added).

[39]  *See* Amended Memorandum and Opinion, Aug. 14, 2020 [Doc. 31], at pp. 15-16.

**D.  The cases relied upon by the Feldman/Capstone Parties are easily distinguishable.**

None of the cases cited by the Feldman/Capstone Parties affords a basis for vacating the Jones Award on the basis of improper appointment. In *Brook v. Peak International, Ltd.*, the AAA "flouted the prescribed procedures" by imposing a ranking process rather than following the contract's prescribed procedure calling for the parties to alternate striking names from a list of nine arbitrators.[40] In *PoolRe Insurance Corp. v. Organizational Strategies, Inc.*, the contract required that the arbitrator be selected by the Director of Insurance for Anguilla; instead, the administrator of a local alternative dispute resolution service appointed himself as arbitrator.[41] These situations are not similar at all to this case. Here, the Doctors followed the prescribed contractual procedures permitting multiple arbitrations and allowing either party to select the arbitrator. Consistent with *Houston Specialty*, the Doctors did precisely that in tendering their claims to Judge Jones.

The Feldman/Capstone Parties also wrongly contend that *Lindland v. U.S. Wrestling Association* supports their position that multiple proceedings cannot proceed before different arbitrators.[42] There, the second arbitration was deemed *ultra vires* because the "*sole* subject" of that proceeding was to challenge an already-confirmed ruling rendered by another arbitrator.[43] Confirmation of the second award would have required vacating the already-confirmed first award. The multiple arbitrations in *Lindblad* are beside the point: the second was jurisdictionally infirm, so the second award "could not be confirmed even if it were the sole award."[44] Nor does *Delek Refining, Ltd. v. Local 202* help their cause.[45] *Delek* emphasized the highly deferential standard of

---

[40] *Brook*, 294 F.3d 668, 670, 673 (5th Cir. 2002).

[41] 783 F.3d 256, 260 (5th Cir. 2015). Capstone and the Feldman Law Firm, LLP were parties in *PoolRe.*

[42] 227 F.3d 1000 (7th Cir. 2000).

[43] *Id.* at 1003, 1004 (emphasis in original).

[44] *Id.* at 1003.

[45] 891 F.3d 566 (5th Cir. 2018).

judicial review of arbitral awards, noting only a limitation "when the arbitrator exceeds the jurisdictional limits drawn in a CBA."[46] Nothing in *Delek* purports to restrict an arbitrator's contractual authority to decide his own jurisdiction, based on his interpretation of the contract.

The Feldman/Capstone Parties also mistakenly point to *PoolRe*'s discussion of the *de novo* standard of review, but that discussion pertains only to the standard by which an appellate court reviews a district court's confirmation/vacatur rulings.[47] In the *very next sentence*, the *PoolRe* court contrasts this standard with the "very deferential" review of the "arbitration award itself," which is the standard that applies to the Feldman/Capstone Parties' motion to vacate.[48]

Finally, in light of the procedural morass created by the arbitration clause, it cannot be said that Judge Jones acted "contrary to express contractual provisions."[49] Judge Jones's interpretation and application of the Engagement Letter's jurisdictional provisions is not analogous at all with *Smith v. Transport Workers Union of America, AFL-CIO*, where an arbitrator modified an award more than one month after its issuance, despite the CBA's express three-day window to do so.[50]

## II.    Arbitrator Glasser's award does not have preclusive effects on Judge Jones's Award—and in any event, that inquiry is one for Judge Jones, not this Court.

The fact that the Glasser Award preceded the Jones Award provides no basis under 9 U.S.C. § 10 to vacate the latter. The Engagement Letter vested Judge Jones with the authority to determine his own jurisdiction, and he did precisely that. Moreover, arbitrators are not required to follow other arbitral rulings, and the preclusive effect of a previously-rendered arbitral award is for the arbitrator to decide—not a court. In *W.R. Grace & Co. v. Local Union 759*, the Supreme Court

---

[46] *Id.* at 570

[47] *PoolRe*, 783 F.3d at 263-64.

[48] *Id.* at 264 (quoting *Timegate Studios, Inc. v. Southpeak Interactive, LLC*, 713 F.3d 797, 802 (5th Cir. 2013)).

[49] *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 604 (5th Cir. 1989)

[50] 374 F.3d 372, 375 (5th Cir. 2004). Similarly, in *Delta Queen*, the arbitrator exceeded his authority by directing the reinstatement of a worker whom he found to be grossly careless, even though the CBA granted the company sole power to discipline employees— thereby depriving the arbitrator of the power of reinstatement. 889 F.3d at 604.

deferred to an arbitrator's determination that he was not bound by a prior arbitrator's ruling—and because the second arbitrator's conclusions "draw their 'essence' from the provisions of the collective bargaining agreement," that latter award was entitled to judicial deference.[51] Future Justice Sotomayor ruled similarly in *North River Insurance Co. v. Allstate Insurance Co.*, holding, "an arbitrator faced with a case with issues resolved in a prior arbitration has discretion as to whether to follow a previous award . . . Where **two arbitrators render inconsistent decisions, neither award will be set aside** where they both draw their essence from the underlying contract."[52]

### A. The Engagement Letter, along with AAA Rule R-7, granted Judge Jones the authority to rule on his own jurisdiction.

Nothing in 9 U.S.C. § 10 allows for vacatur based upon the issuance of a previously-rendered arbitral award. While the Feldman/Capstone Parties argue that the Glasser Award conflicts with the Jones Award, that conflict creates no basis for vacatur under the four exclusive prongs of 9 U.S.C. §10. The *unconfirmed* Glasser Award does not preclude Judge Jones's Award.

The Engagement Letter and the incorporated AAA rules authorize arbitrators to rule on their own jurisdiction. Arbitrators also have the power to decide if previously-rendered rulings have preclusive effect. The assertion that an arbitral award is precluded by a prior award "is a component of the dispute on the merits and must be considered by the arbitrator, not the court"[53]— a principle this Court has recognized.[54] Thus, whether Judge Jones needed to address any potential preclusive effects of the award rendered shortly beforehand by Arbitrator Glasser was solely for Judge Jones to decide. Judge Jones concluded that "no circumstances have changed" since his

---

[51] 461 U.S. at 765.

[52] 866 F. Supp. 123, 128 (S.D.N.Y. 1994) (emphasis added).

[53] *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1132 (9th Cir. 2000); *see also Klay v. United Healthcare Group, Inc.*, 376 F.3d 1092, 1109 (11th Cir. 2004); *Citigroup, Inc. v. Abu Dhabi Invest. Auth.*, 776 F.3d 126, 131 (2d Cir. 2015); *Biobased Sys., L.L.C. v. Biobased of S. Tex., LLC*, 06-2149, 2007 WL 1080114, at *1 (S.D. Tex. 4/9/2007).

[54] *See* Memorandum and Opinion, December 4, 2020, at pp. 17-18 [Doc. 51] ("The arbitrators are authorized to determine whether and when earlier decisions or awards have preclusive effects.").

initial ruling that he retained jurisdiction over the Doctors' claims, and also found that "no ruling by Arbitrator Glasser can impair this arbitrator's jurisdiction."[55] The inquiry properly ends there.

### B. Inconsistent arbitral awards may co-exist and cannot be vacated as long as they "draw their essence" from the parties' agreement.

Any alleged inconsistency between the Jones Award and the Glasser Award is immaterial. Ample caselaw confirms that one arbitrator need not abide by a previously-rendered award.[56] Nor does the issuance of a prior, contrary award constitute grounds for vacatur under 9 U.S.C. §10. The four exclusive statutory vacatur grounds do not speak to this situation. Further, because the arbitrator has the inherent power to determine whether a previously-rendered award has preclusive effect, the issuance of a conflicting award cannot constitute the exceedance of arbitral power.

Because the arbitrator—not the court—decides whether a prior arbitral award has preclusive effect, courts do not intervene where one award purports to conflict with another. Instead, all that matters is whether the challenged ruling draws its essence from the contract. The Feldman/Capstone Parties do not argue that Judge Jones failed to interpret the Engagement Letter.

As noted above, courts consistently reject the notion that arbitrators are bound by prior arbitral decisions—even if those rulings conflict. Similarly, in *23andMe, Inc. v. Davis-Hudson*, a court faced the identical situation: one arbitrator held that the parties' agreement did not allow for class arbitration, while a second arbitrator held that the contract permitted class arbitration.[57] While the two awards were "mutually exclusive," *23andMe* refused to vacate the second one because "the ***inquiry must end upon finding that the second arbitrator interpreted the arbitration clause***. The Supreme Court left no loopholes allowing judicial vacatur where an arbitrator construed the

---

[55] *See* Jones Award [Doc. 72-2], at pp. 20, 27.

[56] *W.R. Grace & Co.*, 461 U.S. at 765; *N. River Ins. Co.*, 866 F.Supp. at 128.

[57] No. 15-01323, 2015 WL 6094303 (N.D. Cal. 10/16/2015).

arbitration agreement."[58] Any attempt to elevate the first award over the second would flout the Supreme Court's holding that courts "have no business overruling" an arbitrator "because their interpretation is different from his. . . 'Under §10(a)(4), the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all.'"[59] Because Judge Jones interpreted the Engagement Letter, "the inquiry must end."[60]

### C.  The cases cited by the Feldman/Capstone Parties are distinguishable.

The Seventh Circuit cases[61] cited by the Feldman/Capstone Parties regarding contradictory awards are unavailing. Those cases predate the Supreme Court's 2013 ruling in *Oxford Health*, a case which *23andMe* found controlling.[62] *Lindland* did not vacate an arbitral award because it was second-in-time, but because (1) "the entire proceeding appears to have been *ultra vires*," as that latter proceeding simply sought to invalidate an already-confirmed award, and (2) it was jurisdictionally invalid under the statute creating the framework for arbitrating disputes involving the U.S. Olympic Committee.[63] *Roughneck Concrete* concerned a jurisdictional dispute involving two arbitral proceedings, and the plaintiff withdrew its consent to participate in the second matter after the first arbitrator ruled—a very different procedural posture than exists here.[64] In any event, in light of *Oxford Health* and *23andMe*'s command to look only at whether the second award "draws its essence" from the arbitration agreement, *Roughneck Concrete* should be disregarded.[65]

---

[58] *23andMe*, 2015 WL 6094303, at *4 (emphasis added).

[59] *Oxford Health Plans, LLC v. Sutter*, 569 U.S. 564, 573 (2013)..

[60] *23andMe*, 2015 WL 6094303, at *4.

[61] *Roughneck Concrete Drilling & Sawing Co. v. Plumbers Pension Fund*, 640 F.3d 761 (7th Cir. 2011); *Lindland v. U.S. Wrestling Ass'n, Inc.*, 227 F.3d 1000 (7th Cir. 2000).

[62] *23andMe*, 2015 WL 6094303 at *4 (characterizing movant's argument as "a request to disregard the rule lately established by *Oxford*").

[63] *Lindland*, 227 F.3d at 1003 (citing 36 U.S.C. §220529) (arbitral review limited to committee, not arbitral, decisions).

[64] *Roughneck Concrete*, 640 F.3d 761, 767 (7th Cir. 2011).

[65] The Feldman/Capstone Parties also cite a Delaware court's ruling in *Hendricks v. Feldman Law Firm, LLP*, in which they were parties. 2015 WL 5671741 (D. Del. Sept. 25, 2015). The award there was not vacated due to conflicting arbitral awards, but because it imposed relief against PoolRe, a non-party in that arbitral proceeding. *Id.* at *4-5.

Finally, the Feldman/Capstone Parties' reliance on AAA Rule R-50 is unavailing. That rule, addressing "Modification of Award[s]," allows an arbitrator to "correct any clerical, typographical, or computational errors in the award," upon a formal request by a party.[66] It does not require an arbitrator to account for unconfirmed awards rendered by *other* arbitrators.

## III.    There is no basis for a vacating the Jones Award on evident partiality grounds.

The Feldman/Capstone Parties do not come close to meeting the stringent standard for "evident partiality."[67] The Fifth Circuit emphasized that "nondisclosure alone does not require vacatur of an arbitral award for evident partiality. An arbitrator's failure to disclose ***must involve a significant compromising connection to the parties***."[68] No such connection exists here.

This "evident partiality" argument is based only on a second-hand gift of two tickets to a college football game delivered to Judge Jones by a colleague (James Williams) of a non-party witness (David Sherman).[69] Mr. Williams has no connection at all to these proceedings. Neither he, Mr. Sherman, nor their law firm has any interest—financial or otherwise—in the outcome of this dispute. Judge Jones provided a lengthy disclosure on the record.[70] Mr. Sherman played no role whatsoever in delivering these tickets, and he had never met Judge Jones before the hearing.[71]

The so-called "significant gift" consisted of two tickets to a LSU-UCLA football game in which UCLA gave away thousands of free tickets.[72] Evidence reflected that the average price of UCLA football games was $69.00 apiece, and—when not distributed *en masse* for free—they

---

[66] *See* Exhibit E, AAA Rule R-50.

[67] *OOGC America, L.L.C. v. Chesapeake Exploration, L.L.C.*, 975 F.3d 449, 455-56 (5th Cir. 2020)

[68] *Positive Software Sols. Inc. v. New Century Mortgage Corp.*, 46 F.3d 278, 282 (5th Cir. 2007) (emphasis added).

[69] These were not premium seats. While Judge Jones did not know the monetary value of the tickets, they were located in the 49th row of the stadium. *See* Exhibit L, Tickets.

[70] *See* Exhibit M, Opposition to Objection, at Exhibit B thereto, Transcript, Oct. 3, 2021, pp. 9605-9612.

[71] *See* Exhibit M, at Exhibit B thereto, Transcript, at pp. 9607-08. Mr. Sherman's testimony was tangential: the Doctors did not call him in their case-in-chief, and his testimony comprised less than 100 pages of the 9,621 page transcript.

[72] *See* Exhibit M, Opposition to Objection, filed Oct. 20, 2021, at Exhibit D thereto. The author of the article, James H. Williams, is not the same James Williams who delivered the tickets in question.

could cost as little as $12 apiece.[73] The value of these tickets was *de minimis*. Their economic

value is dwarfed by the monetary value of the additional hours Judge Jones spent presiding over a

hearing,[74] reviewing the briefing, and writing a lengthy opinion rejecting the partiality challenge.[75]

Notably, during a hearing necessitated by this objection, the Feldman/Capstone Parties declared:

"[W]e're not arguing the issue of whether your award could be vacated under Section 10 of the

FAA due to evident partiality."[76] That fatal concession waives any possible vacatur argument.

These circumstances do not implicate the AAA's disclosure provisions—let alone provide

a basis to suggest evident partiality. AAA Rule R-17 calls for the disclosure of "circumstance[s]

likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including

. . . any past or present relationship with ***the parties or their representatives***."[77] But there is no

plausible need for disclosure where a stranger to the arbitration provides a *de minimis* gift to an

arbitrator, as that does not implicate "the arbitrator's impartiality or independence." Mr. Williams

had no connection whatsoever to the arbitration: he was not a witness, a party, and his firm was

not counsel of record. No "relationship with the parties or their representatives" was implicated.

In any event, the Engagement Letter delegated "sole and exclusive authority" to Judge Jones to

decide "challenges of bias and neutrality."[78] Judge Jones concluded that the objection to his

continued tenure as arbitrator was "at best trivial, not substantial," and thus, "without merit."[79]

The Feldman/Capstone Parties try to seize upon certain language used in his November 9,

---

[73] *See* Exhibit M, Opposition to Objection, filed Oct. 20, 2021, at Exhibit C thereto, *UCLA Bruins Football*, SeatGeek, https://seatgeek.com/ucla-bruins-football-tickets (last visited Oct. 20, 2021).

[74] *See* Exhibit N, Transcript, Oct. 26, 2021 hearing.

[75] *See* Order, Nov. 9, 2021 [Doc. 72-17].

[76] *See* Exhibit N, Transcript, Oct. 26, 2021 hearing, at p. 7.

[77] *See* Exhibit E, AAA Rule 17 (emphasis added).

[78] *See* Engagement Letter, Exhibit A, at p. 15.  Delegation clauses are enforceable. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016) (citing *Rent-a-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).

[79] *See* Order, Nov. 9, 2021 [Doc. 72-17].

2021 ruling rejecting their objection to his service. Judge Jones's ruling simply noted the pretextual nature of the objection. It does not constitute "evident partiality" to challenge a party's sincerity or hidden purpose of its arguments—and especially not when such arguments represent the culmination of a year-long series of challenges to his jurisdiction. Judge Jones's explanation is a far cry from "impermissibly shifting the burden of proof" to the Feldman/Capstone parties.[80] His award confirms that he applied the traditional burden of proof—notwithstanding the Feldman/Capstone Parties' attempt to strong-arm him into withdrawing under flimsy pretenses.[81]

## IV.     The Doctors' claims were properly submitted to Judge Jones.

The Feldman/Capstone Parties wrongly elevate the formalities of litigation over the flexibility of arbitration in arguing that Judge Jones exceeded his powers by deciding claims not before him. The parties' pre-hearing submissions made clear that the Doctors were pursuing claims for conversion based on the Feldman/Capstone Parties taking over $3 million in funds held in trust by the risk pool to pay for the Feldman/Capstone Parties' defense. And Judge Jones maintained the sole discretion to determine whether the Doctors' malpractice claims were properly before him, and this Court cannot second-guess that determination.[82]

### A.  The Doctors pleaded and repeatedly disclosed their conversion claims.

"[P]leading requirements in arbitration proceedings are generally relaxed."[83] In selecting arbitration, parties are "not constrained by formal rules of procedure or evidence,"[84] and "should

---

[80] *See* Memorandum in Support of Motion to Vacate [Doc. 87-1], at p. 14.

[81] *See* Jones Award, at Doc. 72-2, p. 226-27 (applying RICO elements)

[82] Regardless, the Doctors' conversion claim is subsumed within their RICO claim, which was unquestionably asserted before Jones.   By the same token, the Doctors' malpractice claims overlap with their claims for breach of fiduciary duty and intentional/ negligent misrepresentation. Thus, the Doctors' damages awards are independently supported by other claims which were not specifically challenged by the Feldman/Capstone Parties.

[83] *McGowan Working Partners, Inc. v. Eland Energy, Inc.*, 2011 WL 2669098, at *5-6 (N.D. Tex. 7/6/2011); *see also Forsythe Intern., S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1022 (5th Cir. 1990).

[84] *Mantle v. Upper Deck Co.*, 956 F.Supp. 719, 730 (N.D. Tex. 2007) (citing *Robbins v. Day*, 954 F.2d 683, 685 (11th Cir. 1992)).

not expect the same procedures they would find in the judicial arena."[85]

While the specifics of the Feldman/Capstone Parties' looting of the risk pools were not revealed until midway through the arbitration hearing, the Doctors unquestionably pleaded conversion in their December 23, 2020 arbitration demand. Paragraphs 25, 26, 35, and 43 explicitly asserted that the Feldman/Capstone Parties required their clients to unwittingly "underwrite the costs of Feldman's and Capstone's defense against malpractice and breach of fiduciary duty claims," and that payments for such claims were improperly made from the 2018-2019 risk pools.[86]

The Feldman/Capstone Parties' actions demonstrate that they recognized that the Doctors' conversion claims were before Judge Jones. Their July 21, 2021 pre-hearing brief noted that the Doctors' RICO claim asserted that the Feldman/Capstone Parties "convert[ed] funds belonging" to the Doctors and the class.[87] The Feldman/Capstone Parties also elicited extensive testimony regarding these claims and cross-examined the Doctors' expert.[88] The Doctors disclosed their pursuit of these conversion claims through their discovery responses[89] and expert disclosures.[90] Thus, the Feldman/Capstone Parties could not feign surprise when the Doctors submitted a multipage section in their Proposed Final Award detailing the many instances where they pleaded and disclosed this conversion claim.[91] As a result, they cannot claim Judge Jones exceeded his powers by adjudicating the Doctors' conversion claim, as they had "sufficient opportunity to prepare [their] case and the opportunity to call and cross-examine witnesses and to present

---

[85] *Barlit Beck LLP v. Okada*, 25 F.4th 519, 522 (7th Cir. 2022).

[86] *See* Exhibit O, Arbitration Demand, December 23, 2020, at ¶¶ 25, 26, 36, 43.

[87] *See* Exhibit P, Feldman/ Capstone Parties' Opening Brief, July 21, 2021, at p. 21.

[88] *See* Exhibit Q, Transcript, Vol. 7, pp. 2813-64; Vol. 18, pp. 7137-7219; Vol. 22, pp. 8689-8820; Vol. 23, pp. 9259-75.

[89] *See* Exhibit R, Doctors' Discovery Responses, Feb. 23, 2021, at pp. 6-11.

[90] *See* Exhibit S, Expert Witness Disclosure of Richard Amoroso, Feb. 5, 2021, at p. 4.

[91] *See* Exhibit T, Proposed Final Award, Jan. 28, 2022, at pp. 264-69.

pertinent evidence" regarding this claim.[92] This situation differs starkly from *Totem Marine Tug & Barge, Inc. v. North American Towing*, where a party was awarded damages for a claim which it conceded was not at issue, and which was omitted from an itemized damages statement.[93]

### B. Judge Jones had sole discretion to determine what claims were before him.

Feldman drafted a non-negotiable arbitration clause which vested the arbitrator with sole discretion to determine his jurisdiction, as this Court previously held.[94] Judge Jones reasonably concluded that he had jurisdiction over the Doctors' claims for malpractice and conversion (as part of their RICO claims), and he adjudicated those claims. This Court cannot override that decision.

It is undisputed that the Doctors' pleadings before Judge Jones asserted malpractice claims, whether conditionally or otherwise. It is also undisputed that the Doctors asserted malpractice claims against Feldman on behalf of the class—and they did not assert those claims before any other arbitrator. The malpractice claims were discussed at length in the post-trial Proposed Final Arbitration Award submitted by the Feldman/Capstone Parties.[95] The Feldman/Capstone Parties cannot credibly contend that they were prejudiced by Judge Jones's adjudication of this claim, when their Proposed Final Arbitration Award acknowledged this pending claim. Moreover, Judge Jones's Award does not impose additional damages for malpractice beyond those assessed for breach of fiduciary duty and representation, so those damages are independently supported.

Judge Jones reasonably construed the pleadings to place these claims before him. Consistent with AAA Rule R-7, the Engagement Letter provides the arbitrator with sole discretion to determine "the issue of arbitrability."[96] That delegation inherently allows the arbitrator to

---

[92] *Shafli v. British Airways*, 872 F.Supp. 1178, 1181 (E.D. N.Y. 1995) (quoting *NLRB v. Washington Heights Mental Health Council, Inc.*, 897 F.2d 1238, 1244 (2d Cir. 1990)).

[93] 607 F.2d 649, 651-52 (5th Cir. 1979).

[94] *See* Amended Memorandum and Opinion, Aug. 14, 2020 [Doc. 31], at pp. 15-16.

[95] *See* Exhibit U, Feldman/Capstone Parties' Proposed Final Award (Jones), Jan. 28, 2022, at pp. 97-101

[96] *See* Exhibit A, Engagement Letter, at p. 15.

determine whether a claim is arbitrable, and, if so, to rule on the merits.

**V.    Judge Jones acted as a "single arbitrator," and the Feldman/Capstone Parties cannot prove that any decision made by Judge Jones was tainted by any so-called "consultation" with other Arbitrators.**

The four arbitrators presided over their own proceedings. It would have been grossly inefficient to require the parties to conduct four separate trials at different times and locations. For that reason, the arbitrators agreed, ***with the express consent of the Feldman/Capstone Parties***, that the arbitrators would receive evidence simultaneously, but issue their own separate rulings. The Feldman/Capstone parties signed a stipulation on March 21, 2021, expressly agreeing that the "final hearing" (singular) would commence in August 2021.[97] And the Feldman/Capstone parties submitted an "***Agreed*** Scheduling Order" which called for "all four pending arbitrations" to commence simultaneously on August 2, 2021, and provided numerous common deadlines.[98]

The arbitrators, including Judge Jones, shared the view that they would act independently, while sitting together for the sake of efficiency. If each arbitration were heard separately, it "would result in *legal chaos, undue expense, deprivation of due process, duplication of effort, and would be the antithesis of judicial economy and efficiency*," and thus, a consolidated proceeding was needed "to avoid duplication."[99] As Judge Baker noted, "So it has been crystal clear that we are *not a panel*, that we are *not ruling together* in terms of our arbitration awards. We are all issuing separate awards. We are ***simply all sitting on the same day and hearing evidence*** in each of our arbitrations."[100] At the start of the hearing, Judge Baker reiterated this concept, noting, "I am not the chair of any kind of panel," and noted that the arbitrators would rule separately on objections.[101]

---

[97] *See* Exhibit B, Stipulation, March 21, 2021

[98] *See* Exhibit C, E-mail from Ian Sander, May 19, 2021; Exhibit D, Scheduling Order, May 20, 2021 (emphasis added).

[99] *See* Exhibit F, Order, Dec. 23, 2020 (emphasis added).

[100] *See* Exhibit V, Transcript, March 17, 2021, at p. 50 (emphasis added).

[101] *See* Exhibit W, Transcript, August 3, 2021, at pp. 7-8.

The arbitrators did what they promised: they each ruled independently, both on evidentiary issues and objections that arose during the hearing,[102] as well as their ultimate awards.[103]

This approach is consistent with the framework this Court endorsed. [104] This Court properly recognized that the arbitrators can best handle the procedural mechanics of the hearing. There is nothing remotely improper about arbitrators discussing procedural efficiencies.[105]

Grasping at straws, the Feldman/Capstone Parties object that Judge Jones conferred briefly with Judge Medley and arbitrator Carolyn Gill-Jefferson in June 2021—two months *before* the start of the hearing and more than nine months before the Jones Award was rendered.[106] Judge Jones noted that these informal conversations were "*never of a substantive nature*."[107] Indeed, any discussion with Judge Gill-Jefferson could not possibly affect the Jones Award, as Judge Gill-Jefferson *declined her appointment* after participating only in an introductory hearing, and never considered a single substantive issue.[108] While the Feldman/Capstone parties place undue emphasis on an e-mail from Arbitrator Glasser, asserting that "the four arbitrators 'have conferred' regarding the delivery of their awards," the e-mail in question simply addressed the *timing* of their respective awards—not their content.[109] This argument constitutes much ado about nothing.

---

[102] *See, e.g.*, Exhibit W, Transcript, August 3, 2021, at pp. 333-34 (Jones overrules objections sustained by two other arbitrators); Transcript, August 7, 2021, at pp. 2146-48; 2188-89 (sustains objections overruled by other arbitrators).

[103] *Compare* Jones Award, Doc. 72-2 *with* Kutcher Award, Doc. 72-3; Baker Award, Doc. 72-4; Glasser Award, Doc. 72-5.

[104] Memorandum and Opinion [Doc. 51], at pp. 17, 18 (holding that the Court "will not impose its own view of efficient procedure when those decisions are properly left to arbitrators," and specifically finding that the arbitration agreement "does not foreclose multiple 'arbitrations'.")

[105] Indeed, this Court's December 4, 2020 opinion deferred to the arbitrators to decide the "fastest, most efficient, and most timely way" to conduct the arbitration process, and favorably referenced a joint proposal by the arbitrators—an approach which necessarily entailed communications between the arbitrators as to logistical details. Doc. 51, Memorandum and Opinion, Dec. 4, 2020, at pp. 2, 17.

[106] *See* Memorandum in Support of Motion to Vacate, Doc. 87-1, at p. 16 (citing EX. 43 thereto).

[107] *See* EX. 43 to Doc. 87-1, Transcript, June 11, 2021, at p. 13.

[108] *See* Exhibit X, E-mail from Carolyn Gill-Jefferson, Dec. 10, 2020.

[109] *See* EX. 48 to Doc. 87-1, E-mail from Mark Glasser, Feb. 2, 2022.

19

## VI.    The Feldman/Capstone parties offer no proof whatsoever of "corruption, fraud, or undue means" by Judge Jones.

The Feldman/Capstone Parties conclusorily assert that the Jones Award should be vacated due to "corruption, fraud, or undue means"—but they utterly fail to establish *any*, much less *all*, of the necessary elements to vacate the Award on this basis.[110] Their assertion that "corruption, fraud, or undue means infects the Jones Award"[111] misstates the rule: §10(a)(1) applies "only 'where the *award was procured* by'" such measures.[112]  No such showing can be made here.

### A.    The Feldman/Capstone parties cannot satisfy §10(a)(1)'s requirements for proving that an award was "procured by corruption, fraud, or undue means."

The vacatur standard under §10(a)(1) is an onerous one: a movant "must demonstrate (1) that the fraud occurred by clear and convincing evidence, (2) that the fraud was not discoverable by due diligence before or during the arbitration hearing; and (3) the fraud materially related to an issue in the arbitration."[113] These standards apply, regardless of whether "fraud," "corruption," or "undue means" is asserted.[114] The Feldman/Capstone Parties do not attempt to satisfy this rigorous standard. They rely only on a statement in a June 8, 2021 sanctions award which was rendered against the Feldman/Capstone Parties eight weeks *before* the hearing began, and nine months before Judge Jones rendered his Award.[115] At a bare minimum, even assuming *arguendo* that this sanction could somehow constitute "corruption, fraud, or undue means," it fails the timing prong.

Nothing in Judge Jones's June 8, 2021 Award rises to the level of "corruption, fraud, or

---

[110] 9 U.S.C. §10(a)(1).

[111] *See* Memorandum in Support of Motion to Vacate, Doc. 87-1, at p. 17.

[112] *Taylor v. Univ. of Phoenix/ Apollo Group*, 487 F. App'x 942, 945 (5th Cir. 2012) (quoting *Forsythe*, 915 F.2d at 1022) (emphasis in original).

[113] *Morgan Keegan* 495 Fed. App'x at 447 (quoting *Barahona*, 376 Fed. Appx. at 397).

[114] *Miniex v. Law Office of E. Sharon Thornton,* LLC, 2020 WL 7386368 (S.D. Tex. Dec. 16, 2020); *Matter of Arb. Between Trans Chem. Ltd. and China Nat. Mach. Import & Export Corp.*, 978 F. Supp. 266, 304 (S.D. Tex. 1997).

[115] *See* Memorandum in Support of Motion to Vacate Jones Award, Doc. 87-1, at p. 17, citing EX 55, Jones Order, June 8, 2021.

undue means." The Feldman/Capstone Parties quote only a portion of a sentence, stripped of any context, where they were sanctioned for "continued misconduct" as to the class action.[116] A full review of that order (along with four months of the filings, e-mails, and transcripts that led to that sanctions award) is needed to contextualize that statement. That award's prior page quoted an e-mail from Feldman's counsel which "specifically sought to encourage [Arbitrator Glasser] to issue an award decertifying the class certified by this arbitration."[117] While Arbitrator Glasser previously noted lines of demarcation between his proceeding (where there was no class), and Judge Jones's proceeding (where the class action remained pending),[118] Feldman's counsel urged Arbitrator Glasser that "the issue of decertification (of the class) is likewise before you."[119] Judge Jones sanctioned the Feldman/Capstone Parties for repeatedly instigating attacks on his jurisdiction,[120] as they urged Arbitrator Glasser to "… issue an order nullifying, countering, or blocking the effect, validity, or enforceability of such [classwide] relief issued in Judge Jones['s] arbitration."[121]

### B. Neither Judge Jones's sanctions award nor the March 29, 2022 Award is based on any evidence provided to Judge Jones on an *ex parte* basis.

Contrary to the misleading picture painted by the Feldman/Capstone Parties, Judge Jones's sanctions award against them for undermining his class-related orders was not procured by *ex parte* communications.[122] After the Feldman/Capstone Parties violated Judge Jones's injunction by continuing to attack his jurisdiction via collateral attacks made through Arbitrator Glasser, Judge

---

[116] *See* Memorandum in Support of Motion to Vacate Jones Award, Doc. 87-1, at p. 17, citing EX 55, Jones Order, June 8, 2021, at p. 5.

[117] *See* Doc. 87-1, at EX. 55, Order, June 8, 2021, at p. 4.

[118] *See* Exhibit Y, e-mail from Mark Glasser, Feb. 11, 2021.

[119] *See* Doc. 87-1, at EX. 55, Order, June 8, 2021, at p. 4.

[120] Curiously, Arbitrator Glasser sanctioned the Doctors $305,475— nearly $80,000 *more* than Judge Jones's sanctions award— based on their issuance of class notices pursuant to the express approval of Judge Jones. *See* Glasser Award [Doc. 72-5], at p. 400 (incorporating order of December 11, 2021).

[121] *See* Doc. 87-1, at EX. 55, Order, June 8, 2021, at p. 5; *see also* Exhibit Z, Motion for Further Relief Related to Class Arbitration, filed April 23, 2021, at p. 2.

[122] *See* Doc. 87-1, at EX. 59, Order, August 1, 2021.

Jones sanctioned the Feldman/Capstone Parties and awarded the Doctors their attorneys' fees incurred in combatting those tactics. The Doctors asserted by affidavit that they incurred $225,407.00 in fees and costs, and they provided Judge Jones **and the Feldman/Capstone Parties** with copies of the relevant invoices on July 9, 2021.[123] The Doctors confirmed that the redactions concerned "entries **unrelated to the Doctors' fee application**," consistent with the practice directed by other arbitrators.[124] Judge Jones nonetheless asked them to provide unredacted invoices — but he ultimately sanctioned the Feldman/Capstone Parties in the amount of $225,407.00. That amount is the same amount requested in the original June 28, 2021 fee application, and nearly $30,000 *less* than the amount sought in the July 9, 2021 supplemental fee affidavit, for which unredacted supporting invoices were timely provided to the Feldman/Capstone Parties.

Further, the circumstances surrounding the issuance of the August 1, 2021 sanctions award do not affect how Judge Jones's Award was "procured" nearly seven months later, as required to trigger 9 U.S.C. §10(a)(1). Importantly, the Doctors submitted *unredacted* copies of *all* of their legal invoices to both Judge Jones and opposing counsel on January 28, 2022, and the Feldman/Capstone Parties submitted formal objections to the Doctors' fee applications on March 24, 2022—before the Award's issuance.[125] This situation contrasts markedly from *Totem Marine*, where the arbitrators called one party's counsel for details regarding an unpleaded claim which was not presented at the hearing; the other party had no opportunity to contest that information.[126]

---

[123] *See* Exhibit AA, Submission of Attorneys' Fees and Costs Incurred, June 28, 2021; Exhibit BB, E-mail from Wade Hammett, July 9, 2021; Exhibit CC, Supplemental Affidavit and Fee Invoices, July 9, 2021. Because these invoices are sorted by arbitration, rather than by issue, these invoices were redacted to the extent they reflected additional tasks which did not pertain to sanctions.

[124] *See* E-mail from Wade Hammett, July 13, 2021, attached as Exhibit DD (emphasis added).

[125] *See* Exhibit EE, Response and Statement of Fees and Costs, March 24, 2022. This exhibit includes two supporting affidavits submitted by the Feldman/ Capstone Parties controverting the Doctors' attorneys' fees claim in detail.

[126] 607 F.2d 649, 652 (5th Cir. 1979).

### C. There was nothing improper about redacting fee invoices for privilege, as contemplated by AAA Rule R-34(c).

As noted above, the Doctors submitted certain invoices for an *in camera* inspection after redacting those invoices as to "entries ***unrelated to the Doctors' fee application***" for sanctions.[127] These invoices, submitted midway through the arbitration proceedings, were redacted to protect the attorney-client privilege, consistent with AAA Rule R-34(c). While the Feldman/Capstone Parties contend that Judge Jones "ignor[ed] the evidentiary requirements imposed by AAA Rules R-34 and R-35,"[128] Rule 34(c) plainly requires arbitrators to account for "applicable principles of legal privilege" such as the attorney-client privilege.[129] Rule R-35 addresses the issuance of written witness statements, unavailable witnesses, and the submission of post-hearing evidence—none of which apply here. Judge Jones's handling of these issues fits easily within his inherent power as an arbitrator to issue sanctions for noncompliance with his orders, pursuant to AAA Rule R-58.[130]

In light of an arbitrator's inherent authority to protect his jurisdiction and to ensure compliance with his orders, pursuant to AAA Rule 23, Judge Jones's decision to sanction the Feldman/Capstone Parties under such circumstances does not give rise to any inference that his ultimate award was procured by fraud or corruption.[131]

### VII.    By selecting the AAA rules, the Feldman/Capstone Parties agreed to allow Judge Jones to decide class arbitrability, and that ruling is entitled to deference.

The Feldman/Capstone Parties' objections to Judge Jones's class arbitration rulings ignore

---

[127] *See* Exhibit DD, e-mail from Wade Hammett, July 13, 2021 (emphasis added).

[128] *See* Memorandum in Support of Motion to Vacate Jones Award [Doc. 87-1], p. 19.

[129] *See* Exhibit E, AAA Rule R-34.

[130] *See* Exhibit E, AAA Rule R-58.

[131] The two cases cited by the Feldman/Capstone parties for this principle are easily distinguished. In *Kashner Davidson Securities Corp. v. Mscisz*, the arbitrator dismissed claims outright as a sanction, even though the governing rules allowed such a drastic step *only* where lesser sanctions proved to be ineffective – and no such lesser sanctions were issued. 531 F.3d 68, 78-79 (1st Cir. 2008). In *Lindland*, the second arbitrator exceeded his authority because the "*sole* subject" of his proceeding was the "decision of a prior arbitrator," which was not authorized under the statute governing the U.S. Olympic Committee, 36 U.S.C. §220529. 227 F.3d at 1004 (7th Cir. 2000).

that the AAA Rules vested him with this discretion. Judge Jones's Award incorporates the November 16, 2020 Clause Construction Award and Class Determination Award, which found that the Engagement Letter allowed for class arbitration.[132] Because the Feldman/Capstone Parties agreed to place this decision in the hands of the arbitrator, it cannot serve as a basis for vacatur.

This Court previously recognized its jurisdictional limits regarding the class in noting the broad nature of the Engagement Letter's delegation clause "and the absence of any explicit provision barring class actions."[133] Citing controlling Fifth Circuit precedent, this Court held: "if the parties agree to delegate arbitrability issues to the arbitrator, then they agree to delegate the class-arbitration issue, unless their agreement contains a clear class-arbitration bar."[134]

The Engagement Letter's arbitration clause does not merely delegate questions of arbitrability to the arbitrator, but it specifically invokes the AAA's Commercial Arbitration Rules.[135] Rule 1(a) of the AAA's Supplementary Rules for Class Arbitrations provide that those rules governing class disputes automatically "apply to any dispute" arising out of *any* agreement providing for *any* of the AAA's Rules.[136] These rules vest the arbitrator with the right to determine whether the contract contemplates class arbitration.

In turn, the invocation of the AAA Rules subsumes the AAA's Supplementary Rules for Class Arbitrations, thereby allowing the arbitrator to make this decision. Once again, so long as the arbitrator's ruling regarding the availability of class arbitration "draws its essence" from the contract, that ruling cannot be disturbed by a court. In *Sun Coast*, the Fifth Circuit refused to vacate

---

[132] *See* Jones Award [Doc. 72-2], at p. 4, n.6; pp. 25-26; Clause Construction Award and Class Determination Award, Nov. 16, 2020 [Doc. 72-12]; Order, Feb. 11, 2021 [Doc. 72-10].

[133] *See* Memorandum and Order, April 16, 2021 [Doc. 65], at p. 2.

[134] *See* Memorandum and Order, April 16, 2021 [Doc. 65], at p. 2 (citing *Sun Coast*, 956 F.3d at 338).

[135] *See* Exhibit A, Engagement Letter, at p. 15.

[136] *See* Exhibit E, AAA Supplementary Rules, Rule 1(a).

an award where the contract did not mention class arbitration. That court emphasized that the invocation of the AAA rules constituted evidence that the parties agreed to classwide arbitration.[137] This factor, coupled with the broad arbitration clause, "strongly indicate that the parties bargained for the arbitrator to decide class arbitrability."[138] Multiple judges from this district have ruled similarly, without requiring that the AAA's Supplementary Rules be explicitly invoked.[139]

The cases relied on the Feldman/Capstone Parties, conversely, did not incorporate the AAA Rules, and thus, do not apply. *Robinson v. Home Owners Management Enterprises, Inc.*, while noting the *general* presumption that this decision should be made by a court absent contractual language to the contrary, noted that the contract did ***not*** "reference[] or incorporate[] the AAA rules or any others."[140] And *20/20 Communications, Inc. v. Crawford* contained an *explicit* prohibition on class proceedings which is absent from the Engagement Letter here.[141] Because the contract here more closely parallels *Sun Coast*, that case governs.

## CONCLUSION

The Feldman/Capstone Parties present no basis to vacate Judge Jones's Award under the extraordinarily deferential standards that apply. This Court should confirm Judge Jones's Award.

---

[137] *Sun Coast*, 956 F.3d at 337 ("Finally, the arbitrator noted that the parties agreed that the [AAA] rules for employment rules for employment disputes would govern arbitration. And those rules permit class proceedings." (citing AAA Supplementary Rule 1(a))).

[138] *Sun Coast*, 956 F.3d at 338. *See also Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Tex., Inc.*, 343 F.3d 355, 363 (5th Cir. 2003) ("arbitrators should decide whether class arbitration is available or forbidden").

[139] *Langston v. Premier Directional Drilling, L.P.*, 203 F. Supp. 3d 777, 786, 788-89 (S.D. Tex. 2016) (AAA Rules "anticipate" that arbitrators will decide availability of class arbitration, as "the Supplementary Rules apply to any dispute governed by 'any of the rules' of the AAA"); *Miller v. ConocoPhillips Co.*, No. 20-1634, 2021 WL 4027054 (S.D. Tex. Mar. 4, 2021), at *2 (express adoption of JAMS rules includes supplemental JAMS Class Action Procedures, thus allowing arbitrator to decide class arbitration); *Martin v. CB Restaurants, Inc.*, 20-1334, 2021 WL 2701952 (S.D. Tex. Mar. 12, 2021) (distinguishing *Sun Coast* based on absence of contractual language incorporating AAA Rules "that 'strongly indicate that the parties bargained for the arbitrator to decide class arbitrability.'").

[140] 590 S.W.3d 518, 523 (Tex. 2019). *Robinson* acknowledged that this fact was dispositive of this issue. *Id*. at n.8.

[141] 930 F.3d 715, 719 (5th Cir. 2019) (contract provided that "arbitrator will hear only individual claims and *does not have the authority to fashion a proceeding as a class or collective action* or to award relief to a group of employees").

Respectfully submitted,


*/s/ James M. Garner*
JAMES M. GARNER (Tex. Bar # 792312/ 13895)
PETER L. HILBERT, JR (Tex. Fed. Bar # 114441)
THOMAS J. MADIGAN, II (Tex. Fed. Bar #3337451)
JEFFREY D. KESSLER (Tex. Fed. Bar # 3567546)
DAVID A. FREEDMAN (Tex. Fed. Bar # 3567550)
**SHER GARNER CAHILL RICHTER**
**KLEIN & HILBERT, L.L.C.**
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
jgarner@shergarner.com


Mark Trachtenberg
State Bar No. 24008169
Tex. Federal Bar No. 24584
**Haynes Boone, LLP**
1221 McKinney Street, Suite 4000
Houston, Texas 77010
Telephone: (713) 547-2528
Facsimile: (713) 236-5567
mark.trachtenberg@haynesboone.com

**ATTORNEYS FOR THE DOCTORS**




**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served on all known

counsel of record through the Court's ECF system on June 30, 2022.


/s/ *James M. Garner*
JAMES M. GARNER

26