# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **SCOTT SULLIVAN, et al.** | § | **CIV. ACT. NO.  4:20-cv-02236** |
| **Plaintiffs,** | § | |
| | § | **CONSOLIDATED WITH 2021-cv-0658** |
| | § | **AND 2021-CV-0682** |
| | § | |
| | § | **JUDGE LEE H. ROSENTHAL** |
| **VS.** | § | |
| | § | **JURY TRIAL REQUESTED** |
| **STEWART A. FELDMAN, et al.** | § | **(9 U.S.C. § 4)** |
| **Defendants** | § | |

### THE DOCTORS' OMNIBUS REPLY MEMORANDUM IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD [DOC. 92] AND OPPOSITION TO JEFF CARLSON'S CROSS-MOTION TO CONFIRM [DOC. 109]

JAMES M. GARNER (Tex. Bar # 792312/ 13895)
PETER L. HILBERT, JR (Tex. Fed. Bar # 114441)
THOMAS J. MADIGAN, II (Tex. Fed. Bar #3337451)
JEFFREY D. KESSLER (Tex. Fed. Bar # 3567546)
DAVID A. FREEDMAN (Tex. Fed. Bar # 3567550)
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
jgarner@shergarner.com

Mark Trachtenberg
State Bar No. 24008169
Tex. Federal Bar No. 24584
**Haynes Boone, LLP**
1221 McKinney Street, Suite 4000
Houston, Texas 77010
Telephone: (713) 547-2528
Facsimile: (713) 236-5567
mark.trachtenberg@haynesboone.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………...…………...….iii

SUMMARY OF ARGUMENT………………………….. …………………………….....1

ARGUMENT ………………………………………………………...…………...….2

I.    Arbitrator Glasser lacked jurisdiction: under *In re Houston Specialty*,
      the Feldman/Capstone Parties could not recast the Doctors' claims
      from a defensive posture to escape arbitrators whom they resisted
      from the outset…………………………………………...……………….2

      A. Arbitrator Glasser could not exercise jurisdiction in light
         of *In re Houston Specialty*…………...…………………….....….….3

      B. The Feldman/Capstone Parties' artful pleading cannot
         save them because the relief they sought from Arbitrator
         Glasser was declaratory in nature.……………………………….5

II.   Arbitrator Glasser was not a "replacement arbitrator" and was
      invalidly and prematurely appointed by the Feldman/Capstone Parties.......7

      A. The December 7, 2020 filing of the Glasser arbitration
         demand was premature, did not divest any arbitrators of
         jurisdiction, and therefore did not confer jurisdiction upon him……….9

         1.  The Engagement Letter only allows an arbitrator
             to be divested of jurisdiction after the expiration
             of the full four months…………………………………...9

         2.  The December 7, 2020 Glasser demand did
             not divest any arbitrators of jurisdiction, thereby
             refuting the notion that Arbitrator Glasser was
             designated as a "replacement arbitrator."……………….……10

         3.  The December 7, 2020 Glasser demand was
             facially premature as to Judge Medley and did
             not divest Judge Medley of jurisdiction……………….....…11

      B. Under *In re Houston Specialty,* after Judge Gill-Jefferson
         resigned as arbitrator, the Feldman/Capstone Parties could not
         recast the Doctors' claims pending in her proceeding
         before Arbitrator Glasser……………………….………………………12

      C. The December 19, 2020 Glasser Demand was ineffective
         because it did not divest any sitting arbitrator of jurisdiction…....……13

i

D.  After Judge Medley's jurisdiction expired on
December 23, 2020, the Doctors were the only parties
to file an arbitration demand reasserting the claims that
were before Judge Medley……………………………………....……16

E.  Under the "prevention doctrine," the Feldman/Capstone
Parties should not be rewarded for their unclean hands
in actively obstructing the Medley Arbitration………………..……...17

III.  Arbitrator Glasser exceeded his authority by impermissibly
infringing on Judge Jones's authority and jurisdiction…………..……....19

IV.  Arbitrator Glasser exhibited evident partiality………………....…..…23

V.  Mr. Carlson's cross-motion to confirm the Glasser Award
should be denied……………………………………………………..…25

VI.  Conclusion and Relief Requested…………………………………...25

CERTIFICATE OF SERVICE………………………………...…………………...26

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Abor v. Black*,
        695 S.W.2d 564 (Tex. 1985)……………….……………………...…………………………4

*B.C. v. Steak N Shake Operations, Inc.,*
        512 S.W.3d 276 (Tex. 2017)………………….……………….…………….……………..7

*BHP Petroleum Co. Inc. v. Millard*,
        800 S.W.2d 838 (Tex. 1990)………………….…………………………………...……6

*BBVA Compass Inv. Solutions, Inc. v. Brooks*,
        456 S.W.3d 711 (Tex. App.—Fort Worth 2015, no pet.)………………….………...…………5

*CHRISTUS Health Gulf Coast v. Carswell,*
        505 S.W.3d 528 (Tex. 2016)……………….……………………………………….……6

*DiGiuseppe v. Lawler*,
        269 S.W.3d 588 (Tex. 2008)……………..…………………………………….……………15

*Feldman v. KPMG, LLP*,
        438 S.W.3d 678 (Tex. App.—Houston [1st Dist.] 2014, no pet.)…………….………….……4

*Forbau v. Aetna Life Insurance Co.*,
        876 S.W.2d 132 (Tex. 1994)……………….……….……………………………………4

*Graphic Arts Int'l. Union, Local 97-B v. Haddon Craftsmen, Inc.*,
        489 F.Supp. 1088 (M.D. Pa. 1979)……………...……………………………………2, 19, 20

*HDS Retail N. Am., L.P. v. PMG Int'l, Ltd.*,
        No. 10-3399, 2012 WL 4485692 (S.D. Tex. Aug. 24, 2012)……...……………….…...2, 17

*Harris v. Rowe*,
        593 S.W.2d 303 (Tex. 1979)……………….……………………………….…………15

*In re Houston Specialty Ins. Co.*,
        569 S.W.3d 138 (Tex. 2019)……………………..………….……………………*passim*

*Kindred Nursing Centers, L.P. v. Clark*,
        137 S.Ct. 1421 (2017)…………………………..………………...…………………..4

*Lazy M Ranch, Ltd. v. TXI Operations, L.P.*,
   978 S.W.2d 678 (Tex. App.—Austin 1998, pet. denied)…………………….……..…19

*Lusardi v. Lechner*,
   855 F.2d 1062 (3d Cir. 1988)…………...……………………………………………2, 20, 21

*MBM Fin. Corp. v. Woodlands Op. Co., L.P.*,
   292 S.W.3d 660 (Tex. 2009)……………….…………………………………………4

*Mendoza v. COMSAT Corp.*,
   201 F.3d 626 (5th Cir. 2000)……………….…...…………………………………2, 17

*Meyer v. CUNA Mut. Ins. Soc.*,
   648 F.3d 154 (3d Cir. 2011)………………….……………………....……..2, 21

*OOGC Am., LLC v. Chesapeake Expl., LLC*,
   975 F.3d 449 (5th Cir. 2020)……………….…….…………………………...…23

*Positive Software Sols., Inc. v. New Century Mortgage Corp.*,
   476 F.3d 278 (5th Cir. 2007)……………….…………...……………………….………23

*Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, LLP*,
   105 S.W.3d 244 (Tex. App.— Houston [14th Dist.] 2003, pet. denied)……………..…5

*Viking River Cruises, Inc. v. Moriana*,
   142 S.Ct. 1906 (2022)……………….…………………………….………………4, 5

*Yamada v. Friend*,
   335 S.W.3d 192 (Tex. 2010)……………….…………………...………………………6

## STATUTES

9 U.S.C. § 10……………………………………………..……………………………*passim*

## TREATISES

30 Tex. Jur.3d Declaratory Relief, Kenneth B. Sills, §13 (2022)…………………………….4

**<u>RULES</u>**

AAA Commercial Arbitration Rule 7……………………………………………....…….10, 20, 21

AAA Commercial Arbitration Rule 23…………………………………………...…………….8

AAA Commercial Arbitration Rule 30…………………………………………...……...…...8

AAA Commercial Arbitration Rule 37…………………………………….............…..…..8

AAA Commercial Arbitration Rule 39…………………………………….....……..…...8

AAA Supplementary Rules for Class Actions Rule 3……………………….……….....…23

AAA Supplementary Rules for Class Actions Rule 5……………………….…………..23

The Doctors respectfully file this reply to the opposition filed by the Feldman/Capstone Parties [Doc. 108] and Jeff Carlson's Response/Cross Motion to Confirm the Glasser Award [Doc. 109].[1]

## SUMMARY OF ARGUMENT

Vacatur is warranted under 9 U.S.C. §10(a)(2) and §10(a)(4) because Arbitrator Glasser exceeded his powers and demonstrated evident partiality. The Feldman/Capstone Parties' contrary arguments should be rejected for the following reasons:[2]

- Arbitrator Glasser could not properly exercise jurisdiction over the Doctors' claims given the Texas Supreme Court's ruling in *In re Houston Specialty Insurance Co.*[3]

  - It is immaterial that the Feldman/Capstone Parties artfully pleaded their claims to avoid using the phrase "declaratory judgment," as they forcibly recast the Doctors' claims against them from a defensive posture, in a "legally invalid" gambit that violated Texas law.

  - Because Arbitrator Glasser lacks jurisdiction under *In re Houston Specialty*, he exceeded his powers, and his Award should be vacated.

- Arbitrator Glasser was not validly appointed, and the Feldman/Capstone Parties did not divest any arbitrators of jurisdiction.

  - The Engagement Letter requires the expiration of a full four months before a party may "then" file a new arbitration to divest an arbitrator of jurisdiction. The Feldman/Capstone Parties filed their claims prematurely, as Judge Medley's jurisdiction did not expire until December 23, 2020.

  - The Feldman/Capstone Parties' premature filings of December 7 and December 19, 2020 failed to comport with the Engagement Letter's framework for divesting arbitrators. Only the Doctors filed a new arbitration demand *after* December 23, 2020, allowing Judge Jones to succeed Judge Medley.

---

[1] The "Feldman/Capstone Parties" refer collectively to "Feldman" and "Capstone" as those terms are defined in the Doctors' Motion to Vacate the Glasser Award [Doc. 92]. All other capitalized terms, including the "Doctors," have the meaning ascribed to them in the Doctors' Motion to Vacate, unless otherwise indicated. [Doc. 72].

[2] Because the arguments raised in Mr. Carlson's separate response largely parrot those raised by the Feldman/Capstone Parties and do not present any arguments that are unique to him, any reference to the arguments made by the Feldman/Capstone Parties should be construed to also include parallel arguments made by Mr. Carlson.

[3] 569 S.W.3d 138, 141 (Tex. 2019).

1

- o   The failure to complete the Judge Medley arbitration is attributable to the Feldman/Capstone Parties' obstructionist, bad-faith tactics. Under the "prevention doctrine," a party cannot actively prevent a condition from occurring to benefit from the non-occurrence of that condition.[4] Allowing the Feldman/Capstone Parties to divest Judge Medley after actively obstructing it would ***improperly reward their misconduct***.

- Arbitrator Glasser exceeded his power by interfering with Judge Jones's proceeding—even purporting to vacate awards and rulings rendered by Judge Jones and Judge Medley concerning class certification.[5]

  - o   No authority allows one arbitrator to usurp the role of courts by vacating rulings rendered by other arbitrators.

  - o   Once a class is decertified, a tribunal acts "beyond [its] jurisdiction" in purporting to rule on class related issues, and it has "***no power***" to exercise ***continued oversight over class-related issues***. [6]

- Arbitrator Glasser's overreach regarding class-related issues also demonstrates evident partiality.

## ARGUMENT

I.   **Arbitrator Glasser lacked jurisdiction: under *In re Houston Specialty*, the Feldman/Capstone Parties could not recast the Doctors' claims from a defensive posture to escape arbitrators whom they resisted from the outset.**

On August 27, 2020—four weeks after Arbitrator Kutcher was appointed and four days into Judge Medley's tenure—the Feldman/Capstone Parties stated that they "***have elected not to participate*** in any of the Kutcher or Medley proceedings."[7] After ignoring outstanding discovery requests in the Medley Arbitration for weeks, counsel for Feldman submitted belated responses disparaging "this purported arbitration" in the cover e-mail.[8] The Feldman/Capstone Parties,

---

[4] *HDS Retail N. Am., L.P. v. PMG Int'l, Ltd.*, No. 10-3399, 2012 WL 4485692 (S.D. Tex. Aug. 24, 2012), at *8 (citing *Mendoza v. COMSAT Corp.*, 201 F.3d 626, 631 (5th Cir. 2000)).

[5] *See* Order, Jul. 27, 2021 [Doc. 92-8] (emphasis in original).

[6] *Lusardi v. Lechner*, 855 F.2d 1062, 1079 (3d Cir. 1988) (emphasis added); *see also Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 170 (3d Cir. 2011) (holding that a district court's injunction was invalid because it "effectively allowed the Court to retain jurisdiction over the claims of former class members despite decertification."); *Graphic Arts Int'l Union, Local 97-B v. Haddon Craftsmen, Inc.*, 489 F.Supp. 1088, 1091 (M.D. Pa. 1979) ("of course, an arbitrator has no power to overrule a prior decision by another arbitrator.").

[7] *See* Exhibit A, Motion, Aug. 27, 2020, at p. 7 (emphasis added).

[8] *See* Exhibit B, E-mail from Joseph Greenberg, Oct. 2, 2020.

2

accustomed to hand-picking their arbitrators, (1) deliberately slow-played the existing proceedings and (2) prematurely filed the Glasser arbitration in an attempt to oust arbitrators whom they perceived as unfavorable. That gambit failed—both jurisdictionally and temporally.

### A. Arbitrator Glasser could not exercise jurisdiction in light of *In re Houston Specialty*.

On December 7, 2020, the Feldman/Capstone Parties filed the Glasser Arbitration, into which they "intended to wrap all the parties' disputes," by bringing a claim they say was "meant to be all encompassing to cover any and all disputes, claims and controversies between the parties."[9] As a matter of law, the Glasser demand was wholly insufficient to divest the claims before Arbitrator Medley (as well as Judge Baker and Arbitrator Kutcher) and reassign them to Arbitrator Glasser. Nor could he exercise jurisdiction over the claims before Judge Gill-Jefferson.

Substantively, the Feldman/Capstone Parties' attempt to hijack the Doctors' claims and place them before the Feldman/Capstone Parties' preferred arbitrator was "legally invalid" and "ha[s] no basis in [Texas] law."[10] By law, the Doctors are the masters of their claims: they have the right to choose the "time and place of suit" for their malpractice and tort claims against the Feldman/Capstone Parties.[11] The Texas Supreme Court emphasized in *In re Houston Specialty* that defendant may not preemptively raise a plaintiff's tort claims from a defensive posture to deprive the plaintiff of its right to choose the time and place where its claims shall be adjudicated.[12]

The Feldman/Capstone parties struggle mightily to diminish *In re Houston Specialty*. That ruling is couched in jurisdictional principles – not "*venue* principles," as the Feldman/Capstone

---

[9] *See* Glasser Arbitration Demand, December 7, 2020, [Doc. 92-7], p. 2.

[10] *In re Houston Specialty*, 569 S.W.3d at 141.

[11] *See id.* at 140-41.

[12] *Id.*

Parties contend.[13] The word "venue" is not used in the opinion. Rather, the Texas Supreme Court held that the district court could not exercise *jurisdiction* over the "legally invalid claims" and directed that those claims be ***dismissed***—not simply transferred to a different venue.[14] A leading procedural treatise cites *In re Houston Specialty* for the proposition that "courts should decline to exercise *jurisdiction*" where a tort defendant improperly asserts the plaintiff's claims from a defensive posture.[15] Similarly, in *Feldman v. KPMG, LLP*, a Texas appellate court held that courts should "decline to exercise jurisdiction" under such circumstances.[16]

The Feldman/Capstone Parties assert that *In re Houston Specialty* has no bearing in arbitration[17]—even though several arbitrators (including Judge Dorfman, Judge Duval, Judge Medley, Arbitrator Kutcher, and Judge Jones) have held to the contrary. But none of the cases cited by the Feldman/Capstone Parties for this ostensible proposition held any such thing. *Forbau v. Aetna Life Insurance Co.*, cited for the notion that the arbitration agreement supersedes Texas substantive law, does not even address arbitration.[18] *Kindred Nursing Centers, L.P. v. Clark* did not address arbitrator selection, but instead, merely addressed the effects of state legislation which "singles out arbitration agreements for disfavored treatment."[19] That consideration is absent here. FAA preemption does not apply.

*Viking River Cruises, Inc. v. Moriana* also is inapposite.[20] That case held that the FAA

---

[13] *See* Opposition Brief, filed July 11, 2022 [Doc. 108], at p. 8.

[14] *In re Houston Spec. Ins. Co.*, 569 S.W.3d at 141.

[15] 30 Tex. Jur.3d Declaratory Relief, Kenneth B. Sills, §13 (2022) (emphasis added).

[16] 438 S.W.3d 678, 682 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *MBM Fin. Corp. v. Woodlands Op. Co., L.P.*, 292 S.W.3d 660, 668 (Tex. 2009); *Abor v. Black*, 695 S.W.2d 564, 566 (Tex. 1985)). The plaintiffs in *Feldman* were Mr. Feldman and the Feldman Law Firm, LLP.

[17] *See* Opposition Brief, filed July 11, 2022 [Doc. 108], at p. 7.

[18] 876 S.W.2d 132, 134 (Tex. 1994).

[19] 137 S.Ct. 1421, 1425 (2017).

[20] 142 S.Ct. 1906 (2022).

preempted a California statute which invalidated waivers of the right to assert representative claims under that state's Private Attorneys General Act.[21] That statutory scheme has no bearing here. The Feldman/Capstone Parties contort *Viking River Cruises* to suggest that the Doctors are using a "procedural device" to "restrict the scope of the arbitration by eliminating claims the parties agreed to arbitrate."[22] The Doctors are doing nothing of the sort: they are not restricting the "scope" of what claims are arbitrable. Rather, the Doctors merely seek to enforce Texas law (as contracted for) with respect to **who commences** the arbitration.

The application of *Houston Specialty* does not render any otherwise-arbitrable claims non-arbitrable. The Feldman/Capstone Parties' assertion that Texas law allows tortfeasors to compel arbitration misses the mark: the issue is not whether tort claims are arbitrable, but whether a defendant can assert the tort claims from a defensive posture. The cases invoked by the Feldman/Capstone Parties concern only the first question, which is not at issue here.[23] The Doctors did not oppose arbitration conceptually, but they maintained the right to commence the proceeding, in accordance with *In re Houston Specialty.* And under the framework of the Engagement Letter, an arbitrator appointed by the Feldman/Capstone Parties from a defensive posture to adjudicate tort claims asserted against them has no jurisdiction to do so.

### B. The Feldman/Capstone Parties' artful pleading cannot save them because the relief they sought from Arbitrator Glasser was declaratory in nature.

The Feldman/Capstone Parties' attempted disclaimers that they did not seek a declaration of non-liability for any of the Doctors' tort claims, but merely "submitted" the claims to Arbitrator Glasser, constitutes semantic hair-splitting. It is immaterial that the Feldman/Capstone Parties,

---

[21] *Viking River Cruises*, 142 S.Ct. at 1913.

[22] *See* Opposition Brief, July 11, 2022 [Doc. 108], at p. 7 (citing *Viking River Cruises*, 142 S.Ct. at 1923).

[23] *See, e.g., BBVA Compass Inv. Solutions, Inc. v. Brooks*, 456 S.W.3d 711 (Tex. App.—Fort Worth 2015, no pet.); *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, LLP*, 105 S.W.3d 244 (Tex. App.— Houston [14th Dist.] 2003, pet. denied).

obviously cognizant of *In re Houston Specialty,* did not use the phrase "declaratory judgment" in their arbitration demand. Courts look at the "underlying nature and gravamen of the claim, rather than the way it is pleaded."[24] Further, "artful pleading and recasting of claims is not permitted."[25]

These principles have been applied in the specific context of whether a party can disclaim tort liability from a defensive posture. In *BHP Petroleum Co. Inc. v. Millard*, a case arising from plaintiffs' claims of fraudulent representations, breach of contract and violations of the Deceptive Trade Practices Act, the Texas Supreme Court applied the principle that the defendant could not "deprive the real plaintiff of the traditional right to choose the time and place of suit," when the "allegations pled in defendants' counterclaim are not any averments of fact upon which affirmative relief could be granted. **They are merely denials of plaintiffs' cause of action**."[26] *In re Houston Specialty* approvingly cited *BHP*.[27]

By bringing a claim the Feldman/Capstone Parties say was "meant to be all encompassing to cover any and all disputes, claims and controversies between the parties,"[28] they necessarily included the Doctors' tort claims. The relief sought by the Feldman/Capstone Parties was *fundamentally declaratory in nature*, concerning the Doctors' tort, malpractice, statutory, and breach of fiduciary duty claims, regardless of the labels applied. Indeed, at the final hearing, Capstone's attorney confirmed that "*there are no affirmative claims*" made by the Feldman/Capstone Parties in the Glasser arbitration.[29] Instead of pursuing affirmative claims for

---

[24] *CHRISTUS Health Gulf Coast v. Carswell,* 505 S.W.3d 528, 534 (Tex. 2016).

[25] *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010).

[26] 800 S.W.2d 838, 841 (Tex. 1990) (emphasis in original).

[27] *In re Houston Specialty Ins. Co.*, 569 S.W.3d at 140.

[28] *See* Glasser Arbitration Demand, December 7, 2020, [Doc. 92-7]

[29] *See* Transcript, Sept. 24, 2021, [Doc. 104-8], at p. 7048, line 22 – p. 7049, line 4 (emphasis added). Immediately after that exchange, Arbitrator Glasser, in an apparent attempt to salvage his jurisdiction, asked counsel for the Feldman/Capstone Parties to confirm by the end of the day whether they were pursuing any affirmative claims for relief. *Id.* at p. 7050, line 6 – p. 7052, line 20. They did not respond.

relief, the Feldman/Capstone Parties tried to avoid (or minimize) liability for the Doctors' claims by forcibly recasting the Doctors' claims into an invalid forum. Arbitrators, like courts, should not rely on "what is simply alleged or artfully pled,"[30] to "determine the rights and liabilities of the involved parties." But that is precisely what the Feldman/Capstone Parties sought here.

Throughout these proceedings, Arbitrator Glasser ignored a series of rulings by the other arbitrators who preceded him, including Judge Dorfman's confirmed Final Award. Those other arbitral rulings applied *In re Houston Specialty* to prevent the Feldman/Capstone Parties from hijacking the Doctors' claims.[31] The Doctors chose another forum for their tort and malpractice claims against the Feldman Parties—the Arbitrations the Doctors brought before Judge Charles Jones and Arbitrator Robert Kutcher. Judge Grant Dorfman, Judge Stanwood Duval, Jr., and Arbitrator Robert Kutcher, and Judge Jones each upheld the Doctors' choice of forum.[32] Arbitrator Glasser did not. Arbitrator Glasser's overreach is a fundamental exceedance of his arbitral power by deciding claims which the Doctors did not agree to place before him, even though Texas law makes the Doctors the exclusive masters of their claims.[33]

## II.    Arbitrator Glasser was not a "replacement arbitrator" and was invalidly and prematurely appointed by the Feldman/Capstone Parties.

The Feldman/Capstone Parties filed the Glasser arbitration demand on December 7, 2020.[34] That filing, which purported to divest multiple arbitrators of jurisdiction, was premature and

---

[30] *B.C. v. Steak N Shake Operations, Inc.,* 512 S.W.3d 276 (Tex. 2017)

[31] *See* Dorfman Final Award, Nov. 9, 2020, at ¶ 56, [Doc. 92-5]; Order No. 4, July 11, 2020 [Doc. 92-6].

[32] *See* Judge Dorfman's Order No. 4, July 10, 2020 at ¶ 2 (granting Respondents' Rule R-33 Motion) [Doc. 92-6]; Judge Duval's Order No. 4, June 26, 2020, at pp. 3-4 [Doc. 92-12]; Arbitrator Kutcher's Order, Oct. 12, 2020 [Doc. 92-13]; Judge Jones's Order, Feb. 8, 2021 [Doc. 92-14].

[33] *See* Judge Dorfman's Final Award, Nov. 9, 2020, at ¶ 6 [Doc. 92-5] (incorporating Judge Dorfman's Order No. 4 (July 11, 2020) [Doc. 92-6]).

[34] *See* Glasser Demand, Dec. 7, 2020 [Doc. 92-7]

ineffective because **none** of the arbitrators' jurisdiction had lapsed as of that date.[35] The Feldman/Capstone Parties' blithe disregard of the stay orders entered by Arbitrator Kutcher and Judge Baker, as part of their inherent authority to protect due process by staying their proceedings, means that Arbitrator Glasser cannot be considered a "replacement arbitrator."[36] Moreover, two-plus weeks remained in Judge Medley's four-month window—even though his proceedings were frozen by a *contractually-prohibited* state court TRO. Upon the expiration of Judge Medley's four-month window on December 22, 2020, only the Doctors filed a new proceeding at that time.

Arbitrator Glasser's appointment was therefore invalid from the outset because he was not appointed in connection with the contractually-specified method for selecting an arbitrator. The Feldman/Capstone Parties tried to prematurely wrest jurisdiction away from other arbitrators by recasting the Doctors' claims before Arbitrator Glasser. The operative version of the Engagement Letter does not allow for the early divestiture of jurisdiction. The Doctors' interpretation of the Engagement Letter's divestiture provisions is further confirmed by the Feldman/Capstone Parties' recent revisions to the Engagement Letter. Presumably in response to these proceedings, Capstone's website contains a new version of that document, effective January 2022, which now allows a party to file a new arbitration demand "**within thirty days of the end of the four-month period**."[37] By revising the arbitration clause to expressly allow a party to divest an arbitrator thirty

---

[35] The Doctors incorporate by reference Section I(C) of their Opposition to Motion to Vacate Kutcher Award and Section I(B)of their Opposition to Vacate Baker Award, each filed July 20, 2022. [Docs. 115, 116]

[36] *See, e.g.*, AAA Rules R-23 (confirming arbitrator's authority to "issue any orders necessary . . . to otherwise achieve a fair, efficient, and economical resolution of the case); Rule R-30 (allowing arbitrator to postpone hearing "upon the arbitrator's own initiative," thereby indicating that the parties' consent is not required); Rule R-37 (allowing arbitrators to take "whatever interim measures he or she deems necessary"); Rule R-39 (allowing arbitrators to "extend the time limit for rendering the award" in "unusual and extreme circumstances") [Doc. 104-5]

[37] *See* Exhibit C, Updated Arbitration Agreement (Revised Jan. 2022) (emphasis added). This form is publicly available on Capstone's website, at http://www.capstoneassociated.com/wp-content/uploads/2022/05/Client-Information-Guidelines.pdf (last viewed August 1, 2022). A version of this document with the new content highlighted for ease of reference is attached as Exhibit D. Other changes include the express rejection of the application of the AAA Supplementary Rules for Class Actions, which further supports the Doctors' Motion to Confirm the Jones Award. [Doc. 72].

days before the end of the four-month window, the Feldman/Capstone Parties implicitly recognize that the prior language did not allow for a premature divestiture of arbitral jurisdiction.

**A. The December 7, 2020 filing of the Glasser arbitration demand was premature, did not divest any arbitrators of jurisdiction, and therefore did not confer jurisdiction upon him.**

From day one, Arbitrator Glasser lacked jurisdiction to address any of the Doctors' claims. That jurisdictional defect was not cured or rectified. Even putting aside the separate jurisdictional issues raised by *In re Houston Specialty*, Arbitrator Glasser was not appointed in connection with the contractual method for appointing arbitrators. The Feldman/Capstone Parties could not override the contractual language by preemptively appointing a "replacement arbitrator" before the jurisdictional window of any arbitrator expired.

**1. The Engagement Letter only allows an arbitrator to be divested of jurisdiction after the expiration of the full four months.**

The arbitration is the outgrowth of an arbitration provision drafted by Feldman and inserted in each of its client contracts, requiring that (1) any arbitration proceeding must be completed—start-to-finish—within four months, and (2) if the arbitrator "does not complete the arbitration to finality within four months of receiving the written demand, any party ***then*** may file another written demand for arbitration . . . with the prior arbitrator or arbitral association ***then*** being immediately divested of jurisdiction."[38] Significantly, the Engagement Letter's dual use of the word "then" connotes temporal effects. This term signifies that, only *after* the four-month period runs, can a party "then" file another arbitration demand to divest the first arbitrator of jurisdiction.[39]

---

[38] *See* Engagement Letter, [Doc. 92-4], at p. 15 of PDF (emphasis added).

[39] Mr. Carlson suggests, in a footnote, that the word "then" does not necessarily require that the new arbitration demand be sent after the expiration of four months, and instead, that the "replacement arbitrator may deem the demand to have been filed after the four months" even if it is filed early. *See* Carlson Response [Doc. 109], at p. 13, n. 7. That argument ignores the phrase "then may file." "File" is a verb which follows "then" sequentially. The arbitration clause does not contain any language suggesting that an arbitrator "may deem" a demand to be filed at a later date.

In another about-face, the Feldman/Capstone Parties' argument conflicts with their prior position regarding the need to abide by the full four-month period. The Feldman/Capstone Parties previously urged that this provision defines "the outer reaches of the Arbitrators' jurisdiction," and as a "rigid time restriction" that "cuts off the Arbitrators' authority when 'any party' invokes the divestiture clause ***at the end of four months***."[40] The Feldman/Capstone Parties should be estopped from arguing the contrary now.

> ### 2. The December 7, 2020 Glasser demand did not divest any arbitrators of jurisdiction, thereby refuting the notion that Arbitrator Glasser was designated as a "replacement arbitrator."

Until the arbitrator is divested of jurisdiction by the proper filing of a subsequent arbitration demand with a new arbitrator, the Engagement Letter establishes that:

- "The arbitrator . . . appointed to resolve the dispute shall have the sole and exclusive ability to rule on all aspects of the arbitrator's appointment;"[41]

- "The parties agree that the arbitrator has exclusive authority to resolve all disputes and challenges to the formation and enforceability of this arbitration agreement, and decide all disputes and challenges to the enforceability of the parties' agreements as a whole;"[42] and

- the arbitrator appointed "shall proceed to resolve the dispute."[43]

As such, only Judge Medley, Arbitrator Kutcher and Judge Baker could decide if the December 7, 2020 filing divested them of jurisdiction. Consistent with AAA Rule R-7, that decision was not for Arbitrator Glasser to make. Arbitrator Kutcher and Judge Baker expressly rejected the notion that this December 7, 2020 filing divested them of jurisdiction, as that argument "***flies in the face of the due process they seek to ensure***."[44] Judge Medley never held that the

---

[40] Plaintiffs' Amended Motion to Vacate Final Arbitration Awards Certifying a Class Action and Imposing Sanctions (Feb. 26, 2021), [No. 4:21-cv-00658, Doc. 1-8, p. 14 of 328].

[41] *See* Engagement Letter [Doc. 92-4], at p. 15 of PDF.

[42] *Id*.

[43] *Id*.

[44] *See* Order, Jan. 25, 2021 [Doc 116-8], at p. 3 (emphasis added).

December 7, 2020 Glasser demand divested him of jurisdiction: indeed, he continued to preside and rendered rulings.

Not even Arbitrator Glasser went so far as to hold that his December 7, 2020 appointment affirmatively and immediately divested any other arbitrator of jurisdiction. Arbitrator Glasser never held that the December 7, 2020 filing operated to divest Arbitrator Kutcher or Judge Baker of jurisdiction; to the contrary, he regularly participated in status conferences with them and signed the March 1, 2021 order holding the four-month period to be "unconscionable."[45] These actions are incompatible with the notion that the Glasser arbitration divested Arbitrator Kutcher and Judge Baker of jurisdiction, either on December 7, 2020 or later. Finally, Mr. Carlson's assertion that the Doctors "[do] not challenge the validity of the appointment of [Arbitrator] Glasser" to divest Arbitrator Kutcher or Judge Baker is wrong. While it was unnecessary to address the purported divestiture of those arbitrators for purposes of this motion to vacate Arbitrator Glasser's Award, the Doctors (1) consistently asserted that Arbitrator Glasser had no jurisdiction from the outset, and (2) specifically challenged the efficacy of the attempted divestiture due to the joint stay order.[46]

### 3. The December 7, 2020 Glasser demand was facially premature as to Judge Medley and did not divest Judge Medley of jurisdiction.

The Feldman/Capstone Parties' attempted forcible divesture of Judge Medley's jurisdiction was premature on its face. The Doctors filed their Original Arbitration Demand with Judge Medley on August 23, 2020 and Amended and Restated Arbitration Demand with Judge Medley on August 24, 2020.[47] Thus, Judge Medley's jurisdiction continued until December 23, 2020. Thus, *only on or after December 23, 2020* could a "party *then* [] file another written

---

[45] *See* Order, March 1, 2021 [Doc 92-15].

[46] The Doctors again incorporate by reference Section I(C) of their Opposition to the Motion to Vacate the Kutcher Award [Doc. 115] and Section I(B) of their Opposition to Motion to Vacate the Baker Award [Doc. 116].

[47] *See* Original Arbitration Demand, Aug. 23, 2020, attached as Exhibit E; Amended and Restated Arbitration Demand, Aug. 24, 2020, attached as Exhibit F.

arbitration demand of the dispute with another recognized, neutral arbitrator."[48] The December 7, 2020 improper commencement of the Glasser arbitration was a bald attempt by the Feldman/Capstone Parties to **prematurely** divest Judge Medley of his jurisdiction. That claim was asserted ***sixteen days before*** the four-month anniversary of the filing of the claims before Judge Medley. Judge Medley's four-month window had not expired at that time, and therefore, he was not subject to divestiture. Nothing in the Engagement Letter allowed the Feldman/Capstone Parties to preemptively file a new demand to allow Arbitrator Glasser to wait in the wings if Judge Medley failed to complete his arbitration in four months.

>    **B.    Under *In re Houston Specialty,* after Judge Gill-Jefferson resigned as arbitrator, the Feldman/Capstone Parties could not recast the Doctors' claims pending in her proceeding before Arbitrator Glasser.**

The Doctors asserted a separate arbitration before Judge Carolyn Gill-Jefferson on November 10, 2020. The Doctors asserted civil violations of RICO, as well as the breach of professional and fiduciary duties based on the Feldman/Capstone Parties' anticipated refusal to wind-down the Doctors' captive insurers by allowing for the escrowing of funds which would be more than adequate to cover the worst-case liability exposure to the risk pool.[49] After numerous delays precipitated by the Feldman/Capstone Parties, Judge Gill-Jefferson stepped down on December 10, 2020, having conducted only a single introductory status conference.[50] Within minutes, the Feldman/Capstone Parties sent a one-line e-mail to Arbitrator Glasser, noting that Judge Gill-Jefferson declined her appointment and that "we wish to assign her claims to you."[51]

---

[48] *See* Engagement Letter, [Doc. 92-4], at p. 15 of PDF (emphasis added).

[49] *See* Exhibit G, Gill-Jefferson Arbitration Demand, filed Nov. 10, 2020.

[50] *See* Exhibit H, E-mail from Carolyn Gill-Jefferson, Dec. 10, 2020.

[51] *See* Exhibit I, E-mail from Sammy Ford, Dec. 10, 2020 forwarding the Doctors' November 10, 2020 pleading. Mr. Ford represented Capstone in addition to PoolRe.

Not only did the Feldman-Capstone Parties fail to submit a formal pleading, but they ***attached the Doctors' November 10, 2020 claims filed before Judge Gill-Jefferson***.

These circumstances plainly implicate *In re Houston Specialty*. The Feldman/Capstone Parties literally submitted the Doctors' claims previously filed before Judge Gill-Jefferson to Arbitrator Glasser. These claims included non-contractual claims for civil RICO violations as well as the anticipatory repudiation claim, which asserted breaches of professional and fiduciary duties. Putting aside the insufficiency of a one-line arbitration "demand" without any formal pleading on behalf of the Feldman/Capstone Parties, *In re Houston Specialty* prohibits this type of recasting of tort claims by a defendant. Arbitrator Glasser therefore did not have jurisdiction over the claims originally pleaded before Judge Gill-Jefferson.

**C.    The December 19, 2020 Glasser Demand was ineffective because it did not divest any sitting arbitrator of jurisdiction.**

The Feldman/Capstone Parties submitted another arbitration demand to Arbitrator Glasser on December 19, 2020. This submission suffered from the same defects as the initial December 7, 2020 arbitration demand. The Feldman/Capstone Parties made no pretense about submitting the Doctors' own affirmative claims to Arbitrator Glasser: the initial e-mail sent by Mr. Feldman contained no arbitral pleading on behalf of the Feldman/Capstone Parties, but rather, stated that "this email puts before you as arbitrator all of the matters now before Judge Medley"—and ***attached the Doctors' pleadings before Judge Medley***.[52] As was the case with the one-line December 10, 2020 e-mail to Arbitrator Glasser,[53] such a filing necessarily implicates *In re Houston Specialty*, as the Feldman/Capstone Parties again submitted the Doctors' own claims from a defensive posture.

---

[52] *See* Exhibit J, E-mail from Stewart Feldman, Dec. 19, 2020, at 11:44 AM.
[53] *See* Exhibit I, E-mail from Sammy Ford, Dec. 10, 2020.

Out of an abundance of caution, the Doctors prophylactically filed a formal pleading before Judge Jones less than an hour later.[54] Several hours after the Doctors filed their formal arbitration demand, the Feldman/Capstone Parties filed a formal demand before Arbitrator Glasser, demanding that he "take aggressive control over the parties."[55]

The Feldman/Capstone Parties' December 19, 2020 pleading also failed to establish jurisdiction before Arbitrator Glasser as a so-called "replacement arbitrator." As noted above, Arbitrator Kutcher and Judge Baker rejected the notion that the Feldman/Capstone Parties validly divested them of jurisdiction in light of their stay order.[56] The December 19, 2020 Glasser demand was again ineffective to divest Judge Medley of jurisdiction because it violated the plain language of the Engagement Letter's arbitration clause, which allowed for the divestiture of an arbitrator's jurisdiction only *after* the expiration of the full four months.

That contractual language was unaffected by Judge Medley's determination that he would not extend his jurisdiction beyond December 23, 2020. Judge Medley did not resign or terminate his jurisdiction effective immediately—instead, his order simply allowed the full four-month period to play out. Judge Medley continued to set hearings and rule on motions through December 21, 2020, and stated that "my jurisdiction will expire on December 23, 2020."[57] If he was "divested" of jurisdiction on December 19, 2020, as the Feldman/Capstone Parties posit, he would have lacked jurisdiction to take those additional actions during the final days of his tenure.

---

[54] *See* Exhibit K, E-mail from David Freedman, Dec. 19, 2020, at 12:27 PM. This e-mail contained a link to download a formal arbitration demand before Judge Jones, also dated December 19, 2020 [Doc. 88, at AR_3511]

[55] *See* Exhibit L, E-mail from Sammy Ford, Dec. 19, 2020, at 4:43 PM; Exhibit M, Glasser Supplemental Arbitration Demand, Dec. 19, 2020.

[56] *See* Order, Jan. 25, 2021 [Doc 116-8]. That stay order had been lifted only five days earlier. *See* Joint Order, Dec. 14, 2020 [Doc 116-14].

[57] *See* Exhibit N, E-mail from Jennifer Bourgeois (law clerk to Judge Medley), Dec. 19, 2020; Exhibit O, E-mail from Jennifer Bourgeois, Dec. 21, 2020; Exhibit P, Order, Dec. 21, 2020.

Therefore, because Judge Medley maintained jurisdiction through December 23, 2020, the Feldman/Capstone Parties could not divest him of jurisdiction at an earlier date. The Feldman/Capstone Parties' December 19, 2020 filing before Arbitrator Glasser was both substantively and procedurally invalid to divest any arbitrator of jurisdiction or confer jurisdiction on Arbitrator Glasser as a so-called "replacement arbitrator."

Nor can the Feldman/Capstone Parties argue that their December 19, 2020 filing, even if initially improper, would eventual ripen into a proper filing once Judge Medley's jurisdiction expired weeks later. It would be improper to allow a party to establish an illegitimate toehold to forcibly divest an arbitrator of jurisdiction; otherwise, a party could conditionally file a new arbitration demand one week into an arbitration proceeding to prevent the counterparty from choosing a replacement.

The Feldman/Capstone Parties' assertion that the Doctors' position would require the parties to "perform a futile act" misses the mark.[58] No act would be "performed" by applying the contractual provisions governing the divestment sequence. Instead, the contract contemplates *inactivity*, not performative action, as the parties would merely need to wait an additional four days to appoint a "replacement arbitrator" upon the expiration of the four-month period. Finally, the Feldman/Capstone Parties' reliance on *Harris v. Rowe* for the premise that the parties could prematurely appoint a "replacement arbitrator" prematurely is misplaced.[59] That case has nothing to do with arbitration. To the extent that case suggests that the parties' conduct can resolve a "genuine uncertainty" as to the proper construction of an ambiguous contract, no such ambiguity exists here. The sequencing language is clear and unequivocal.

---

[58] *See* Opposition Brief [Doc. 108], at p. 17 (citing *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 594-95 (Tex. 2008)).
[59] 593 S.W.2d 303, 306 (Tex. 1979).

**D. After Judge Medley's jurisdiction expired on December 23, 2020, the Doctors were the only parties to file an arbitration demand reasserting the claims that were before Judge Medley.**

The Feldman/Capstone Parties place undue emphasis on the fact that the Doctors filed an arbitration demand before Judge Jones on December 19, 2020, less than an hour after Mr. Feldman forwarded the Doctors' claims before Judge Medley to Arbitrator Glasser. This filing does not negate the Doctors' position. This filing was a protective measure necessitated by the Feldman/Capstone Parties' decision to jump the proverbial gun while Judge Medley's jurisdictional window remained open through December 23, 2020. The Doctors' protective action (their December 19, 2020 filing before Judge Jones) taken in direct response to the Feldman/Capstone Parties premature action proves nothing. Two wrongs don't make a right.

This filing does not negate the fact that Judge Medley's jurisdiction extended through December 23, 2020—and in recognition of that fact, the Doctors immediately filed stand-alone arbitration demands before Judge Jones both on December 23, 2020 and December 24, 2020.[60] Those claims included those previously pending before Judge Medley.[61] Conversely, the Feldman/Capstone Parties did not file any arbitration demands on either of those dates. Thus, upon the expiration of Judge Medley's jurisdiction, the Doctors filed the first proper arbitration demand submitting the disputes previously before Judge Medley to Judge Jones. The Feldman/Capstone Parties' failure to file their claims before Arbitrator Glasser *after* the expiration of Judge Medley's four-month window negates their argument.

---

[60] *See* Arbitration Demand, filed Dec. 23, 2020 [Doc 104-15]; *See* Exhibit Q, Arbitration Demand, filed Dec. 24, 2020. These dual filings were made to eliminate any possible argument as to whether Judge Medley's tenure expired at the stroke of midnight on December 23, 2020, or continued throughout the day. Either way, the Doctors were the only parties to file a new arbitration demand upon the expiration of that window.

[61] *See* Arbitration Demand, filed Dec. 23, 2020 [Doc 104-15], at pp. 19-20, ¶¶ 51-54.

As a result, the Doctors' claims were never properly before Arbitrator Glasser in the first place, and the Feldman/Capstone Parties failed to divest Judge Medley of jurisdiction. Thus, every action taken by Arbitrator Glasser exceeded his authority, and it constituted an abuse of his arbitral powers to attempt to adjudicate these claims that were properly before other arbitrators.

### E. Under the "prevention doctrine," the Feldman/Capstone Parties should not be rewarded for their unclean hands in actively obstructing the Medley Arbitration.

The notion that the Feldman/Capstone Parties' premature filings of their December 7, 2020 and December 19, 2020 demands before Arbitrator Glasser divested Judge Medley of jurisdiction ignores their role in obstructing the Medley Arbitration. After attacking Judge Medley at the outset, and declaring that they "have elected not to participate" in his proceeding,[62] the Feldman/Capstone Parties embarked on a months-long exercise in delay, dawdling, and defiance. This disregard of Judge Medley's authority culminated in the Feldman/Capstone Parties' pursuit of a contractually-barred TRO which froze his proceeding in place weeks before the scheduled final hearing.[63] Judge Medley's hearing failed to go forward as scheduled because of the Feldman/Capstone Parties' blatant obstructionism. The Feldman/Capstone Parties actively prevented Judge Medley's hearing from going forward, thus triggering the prevention doctrine. That doctrine, which is "subsumed under the duty of good faith and fair dealing,"[64] provides that when a party "wrongfully prevents a condition from occurring, that condition is excused."[65]

---

[62] *See* Exhibit A, Motion, filed Aug. 27, 2020. That assertion was based on a gross misreading of this Court's August 14, 2020 ruling, which predated both (1) the Doctors' discovery that the Feldman/Capstone Parties were requiring their clients to subsidize their malpractice defense fees, and (2) the resulting filing of the Medley arbitration nine days later.

[63] *See* Engagement Letter, at p. 15 [Doc. 92-4] ("the parties agree that their intent is to divest the court of all powers in disputes involving the parties, except to compel arbitration, and to confirm, vacate, or modify award [sic]. The courts shall have *no jurisdiction* over legal or *equitable (including injunctive)* matters.") (emphasis added).

[64] *HDS Retail*, 2012 WL 4485692, at *8 (quoting *Mendoza*; RESTATEMENT (SECOND) OF CONTRACTS, §230)).

[65] *HDS Retail*, 2012 WL 4485692, at *8 (citing *Mendoza v. COMSAT Corp.*, 201 F.3d 626, 631 (5th Cir. 2000)).

Allowing the Feldman/Capstone Parties to grind Judge Medley's arbitration to a halt, and then prematurely divest him of jurisdiction by filing before Arbitrator Glasser, would ***improperly reward their obstructionism.*** The Feldman/Capstone Parties demanded a four-month rocket-docket proceeding and refused to negotiate as to the content of the arbitration clause.[66] Having inserted these provisions into the arbitration agreement, the Feldman/Capstone Parties were obligated to arbitrate in good faith.

The record demonstrates that they did nothing of the sort. A non-exhaustive list of the Feldman/Capstone Parties' bad-faith, dilatory tactics in the Medley arbitration includes:

- Judge Medley asked the parties on August 30, 2020 to submit a proposed scheduling order.[67] The Feldman/Capstone Parties failed to comply. Judge Medley then ordered the Feldman/Capstone Parties to submit a proposed scheduling order by September 21, 2020 and again, they ignored that deadline.[68]

- The Doctors submitted multiple discovery-related motions with their August 23, 2020 demand. The Feldman/Capstone Parties went over four weeks without responding to them, then objected when Judge Medley granted the unopposed motions.[69]

- The Doctors also submitted discovery requests with their arbitration demand. The Feldman/Capstone Parties refused to answer until they were ordered to do so by October 2, 2021.[70] Those responses consisted of little more than boilerplate objections, and no documents were produced at that time.

- The Feldman/Capstone Parties ignored and refused to comply with three separate orders requiring Capstone to facilitate an inspection of records by the Doctors.[71]

- The Feldman/Capstone Parties failed to comply with a September 28, 2020 order requiring that documents be produced with electronically stored information. After a two-month delay in responding to document requests, the Feldman/Capstone Parties

---

[66] *See* Transcript, Sept. 29, 2021, [Doc 115-31] at pp. 7925-27 (testimony of David Sherman noting concerns about phrasing of dispute resolution provisions in Engagement Letter, which Feldman refused to negotiate).

[67] *See* Exhibit R, E-mail from Lloyd Medley, Aug. 30, 2020.

[68] *See* Exhibit S, Transcript, Sept. 21, 2020, at pp. 14-15.

[69] *See* Exhibit T, E-mail from David Freedman, Aug. 23, 2020 (attaching Motion for Entry of Electronically Stored Information Protocol and Motion for Inspection, as well as discovery requests); *see also* Exhibit S, Transcript, Sept. 21, 2020, at pp. 17-20 (noting that motions were pending for thirty days without opposition).

[70] *See* Exhibit S, Transcript, Sept. 21, 2020, at pp. 12, 24-26.

[71] *See* Exhibit U, Orders, dated Sept. 28, 2020, Nov. 5, 2020, and Transcript, Nov. 18, 2020, at pp. 23-28, 37.

clumped hundreds of separate documents and thousands of pages together in each PDF, impeding the loading of the documents into document-review software.

- The Feldman/Capstone Parties waited two months to file an answer.

- Despite the contractual prohibition on judicial relief (which specifically barred court-ordered injunctive relief), the Feldman/Capstone Parties (1) moved this Court to lift its stay to issue an injunction to address discovery rulings rendered by Judge Medley and Arbitrator Kutcher,[72] and (2) filed a TRO in state court on November 19, 2020, which sidelined Judge Medley and derailed his arbitration.[73]

In a display of unmitigated audacity, the Feldman/Capstone Parties justified these obstructionist tactics as simply "exercis[ing] their contractual and legal rights." It bears emphasis that this Court previously noted Mr. Feldman's "long history of being sanctioned for bad faith litigation tactics."[74] The Feldman/Capstone Parties now seek to be **rewarded** for such bad-faith, dilatory tactics, which were deployed specifically to prevent Judge Medley's arbitration from proceeding. The prevention doctrine, along with the equitable doctrine of unclean hands,[75] precludes such an outcome.

### III.    Arbitrator Glasser exceeded his authority by impermissibly infringing on Judge Jones's authority and jurisdiction.

Arbitrator Glasser's intrusion into Judge Jones's arbitration—which went so far as to purportedly "vacate" Jones' class certification rulings[76]—provides a separate, independent basis to vacate his Award. Nowhere do the Feldman/Capstone Parties provide any authority to suggest that one arbitrator can nullify or vacate rulings rendered in *another* arbitration by *another* arbitrator. To the contrary, a Pennsylvania federal district court held in *Graphic Arts International Union, Local 97-B v. Haddon Craftsmen, Inc.*, "of course, an arbitrator has **no power to overrule**

---

[72] *See* Motion to Lift Stay, Oct. 19, 2020 [Doc. 36

[73] *See* Exhibit V, Petition and Application for TRO and Preliminary Injunction. PoolRe and its directors were also parties to that action, in addition to the Feldman/Capstone Parties.

[74] *In re Date*, 20-878, 2020 WL 70697872 (S.D. Tex. Dec. 1, 2020) (Rosenthal, J.).

[75] *Lazy M Ranch, Ltd. v. TXI Operations, L.P.*, 978 S.W.2d 678, 683 (Tex. App.—Austin 1998, pet. denied) (holding that tribunal may refuse to enforce contract in favor of a party who engaged in "unlawful or inequitable conduct regarding the issue in dispute.")

[76] *See* Order, July 27, 2021 [Doc. 92-8]. This ruling is incorporated into Arbitrator Glasser's Award, at p. 383.

***a prior decision by another arbitrator***."[77]

As this Court has recognized,[78] the Engagement Letter's arbitration clause explicitly contemplates multiple "arbitrations" (plural) to be conducted pursuant to "the Commercial Arbitration Rules . . . of the American Arbitration Association (AAA) then in effect."[79] This Court's ruling included disputes involving "overlapping" facts.[80] On March 1, 2021, Arbitrator Glasser correctly recognized the limitation to the scope of his arbitral authority, stating that "***I can't tell [the Doctors] they can't do something in another arbitration***."[81]

Despite initially recognizing that the Engagement Letter allowed for multiple overlapping arbitrations, and Arbitrator Glasser previously distinguishing "Judge Jones's order . . . in his matter" from the "issues in my matter,"[82] Arbitrator Glasser abandoned that notion of arbitral restraint and impermissibly infringed upon Judge Jones's authority and jurisdiction. In doing so, Arbitrator Glasser impermissibly exceeded his authority under the Engagement Letter's arbitration clause and AAA Commercial Rule R-7.

Without conceding that Arbitrator Glasser ever had jurisdiction over the class claims due to his premature appointment, in February 2021, Arbitrator Glasser forfeited his jurisdiction to further address class-related issues when he issued an order vacating the class certification award and dismissing the Doctors' class action claims in *his* arbitration.[83] In *Lusardi v. Lechner*, the Third Circuit held that the district court acted "beyond [its] jurisdiction" in purporting to rule on the

---

[77] 489 F.Supp. 1088, 1091 (M.D. Pa. 1979) (emphasis added).

[78] Memorandum and Opinion, Dec. 4, 2020, [Doc. 51], at p. 17 ("the Engagement Letter does not preclude the parties from proceeding with separate arbitrations").

[79] *See id.* (quoting Engagement Letter, at p. 15 (emphasis added)).

[80] *See id.*

[81] *See* Exhibit W, Transcript, March 1, 2021, at p. 98, lines 8-14 (emphasis added).

[82] *See* E-mail from Mark Glasser, February 11, 2021 [Doc. 92-10].

[83] *Id.*

filing requirements applicable to putative class members after decertifying the class.[84] *Lusardi* further held that the district court had "*no power*" to exercise *continued oversight over class-related issues*.[85] That rationale applies with equal force to Arbitrator Glasser. Nevertheless, Arbitrator Glasser continued to address class-related issues though the final hearing and in the Glasser Award. The Feldman/Capstone Parties offer no response to *Lusardi* and provide no contrary authority.

Arbitrator Glasser's efforts to police a class action no longer under his authority extended to attempts to exercise control over other arbitrations. On July 27, 2021, Arbitrator Glasser purported to decertify and vacate class certification awards issued by Judge Medley and Judge Jones:

> Having here granted Claimants' Motion to Decertify Class Action it is therefore **ORDERED** that any and all class certifications previously granted by Judge Medley and Arbitrator Jones in any arbitration proceeding are here **DECERTIFIED** and **VACATED,** as are any orders entered in furtherance of such certifications.[86]

Arbitrator Glasser had no jurisdiction to take such a drastic step. The power to vacate an arbitral award is the exclusive province of the Court, pursuant to 9 U.S.C. §10.[87]

Arbitrator Glasser also had no authority to make class-related rulings regarding a class that was not before him. AAA Rule R-7 provides that the "arbitrator shall have the power to rule on his or her *own* jurisdiction."[88] The word "own" is crucial: an arbitrator does not have the power to rule on *another* arbitrator's jurisdiction in a *separate* arbitration. Arbitrator Glasser's overstepping

---

[84] 855 F.2d 1062, 1079 (3d Cir. 1988) (emphasis added).

[85] *Lusardi*, at 1079 (emphasis added); *see also Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 170 (3d Cir. 2011) (holding that a district court's injunction was invalid because it "effectively allowed the Court to retain jurisdiction over the claims of former class members despite decertification.")

[86] *See* Order, July 27, 2021, [Doc. 92-8] (emphasis in original).

[87] Indeed, Arbitrator Glasser had no more authority to vacate the rulings rendered by Judge Jones and Judge Medley than Judge Jones could vacate the Glasser Award. While Judge Jones recognized the limitations on his arbitral power, Arbitrator Glasser did not.

[88] *See* Rule 7 of the AAA Commercial Arbitration Rules [Doc. 115-6] (emphasis added).

of his authority and purportedly "decertify" and "vacate" orders issued by other arbitrators in their arbitrations is entirely improper and constitutes grounds for vacating the Glasser Award.

The Feldman/Capstone Parties engage in misdirection by attacking Judge Jones's June 8, 2021 and August 1, 2021 orders concerning Arbitrator Glasser's ongoing interference with class-related communications based on the rulings rendered by Judge Medley and Judge Jones. Judge Medley's class certification award predated the inception of the Glasser arbitration, and Judge Jones's February 11, 2021 order holding that Judge Medley's class certification ruling "remains in *full force and effect during this arbitration*" also preceded Arbitrator Glasser's contrary ruling.[89] Arbitrator Glasser *initially* respected the lines of demarcation between his proceeding and Judge Jones's arbitration.[90] But over the coming months, Arbitrator Glasser repeatedly attempted to (1) exert his control over the class in Judge Jones's arbitration, (2) override Judge Jones's class-related rulings, and (3) sanction the Doctors for complying with the orders of Judge Jones in fulfilling their fiduciary duties to the class. The rulings rendered by Judge Jones discussed in the Feldman/Capstone Parties' opposition were *defensive* in nature, designed to preserve his jurisdiction. Judge Jones did not deign to undo or alter Arbitrator Glasser's orders. But Arbitrator Glasser did not exercise the same restraint.

Finally, in a transparent attempt to distract the Court from Arbitrator Glasser's overreach, the Feldman/Capstone Parties criticize various aspects of the class proceedings before Judge Medley. These considerations have nothing to do with the discrete question of whether Arbitrator Glasser exceeded his authority. In any event, they are grossly overstated.[91] But more

---

[89] *See* E-mail from Judge Jones, Feb. 11, 2021 [Doc 92-9].

[90] *See* E-mail from Arbitrator Glasser, Feb. 11, 2021 [Doc 92-10]; Exhibit W, Transcript, March 1, 2021, at p. 98.

[91] For instance, the assertion that Judge Medley did not allow the Feldman/Capstone Parties to put on evidence at the class certification hearing ignores the fact that their class certification opposition brief raised *no factual issues* other than a purported class action waiver—so any attempt to introduce exhibits at the hearing would constitute trial by ambush. *See* Exhibit X, Response to Motion for Class Certification, Oct. 9, 2020. Conversely, the exhibits submitted

fundamentally, the Feldman/Capstone Parties' after-the-fact attacks on Judge Medley's class certification award affords no defense to Arbitrator Glasser's abuse of his arbitral power. Arbitrator Glasser exceeded his power by purporting to rule on class issues before other arbitrators, and the Glasser Award should be vacated under 9 U.S.C. § 10(a)(4).

## IV.    Arbitrator Glasser exhibited evident partiality.

The Doctors agree with the Feldman/Capstone Parties that a "stern standard" applies to evident partiality motions.[92] But while the Feldman/Capstone Parties' charges of "evident partiality" as to Judge Jones and Arbitrator Kutcher are based on frivolities such as Mardi Gras "ladies in waiting"[93] or a stranger to the arbitration providing a second-hand gift of football tickets of *de minimis* value, the evident partiality charge as to Arbitrator Glasser is far more substantive and satisfy this stern standard.

Arbitrator Glasser blurred the lines between arbitrator and advocate—most directly in the context of class-related issues. While the Feldman/Capstone Parties conclusorily assert that he did not make "recommendations" or "suggestions" to the Feldman/Capstone Parties regarding motions and legal arguments, the record demonstrates otherwise. Arbitrator Glasser dropped non-too-subtle hints to the Feldman/Capstone Parties: he advised the parties that "I will entertain a motion or motions from the Capstone parties addressing the consequences" of the Doctors' compliance with Judge Jones's order authorizing the sending of the approved class notice.[94] Arbitrator Glasser—

---

by the Doctors were attached to or referenced in their class certification motion, so there was no prejudice to the Feldman/Capstone Parties. *See* Exhibit Y, Submission of Exhibits, Nov. 4, 2020. That submission also included exhibits attached to the discovery motions heard during that same hearing. In addition, the Doctors stated on the record that they were moving to attach the exhibits identified and attached in that motion and the class certification demand, and Judge Medley directed that they be allowed to do so. *See* Exhibit Z, Transcript, Nov. 4, 2020, at pp. 91-93.

[92] *OOGC Am., LLC v. Chesapeake Expl., LLC*, 975 F.3d 449, 453 (5th Cir. 2020) (citing *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 476 F.3d 278, 281 (5th Cir. 2007)).

[93] *See* Opposition to Motion to Vacate Kutcher Award, filed July 20, 2022 [Doc.115], at pp. 20-21; Opposition to Motion to Vacate Jones Award, filed June 30, 2022 [Doc.104], at pp. 20-21.

[94] *See* E-mail from Arbitrator Glasser, Feb. 11, 2021 [Doc. 92-20].

not the Feldman/Capstone Parties—raised the specter of sanctions. After the Feldman/Capstone Parties filed a motion before Judge Jones alone to decertify the class, Arbitrator Glasser encouraged the Feldman/Capstone Parties, under the guise of "clarify[ing]," to also seek decertification of Judge Jones's class before him.[95] In a thoroughly unsurprising development, the Feldman/Capstone Parties agreed with Arbitrator Glasser that the decertification of the class in Judge Jones's arbitration was nonetheless before Arbitrator Glasser.[96]

Arbitrator Glasser also blatantly ignored the ***mandatory*** stay provisions of Rules 3 and 5 of the AAA's Supplementary Rules for Class Actions so that he could continue to interfere with the Doctors' attempts to satisfy their fiduciary duties to the class members. The Feldman/Capstone Parties sought and obtained approval for the proposed class notice. Arbitrator Glasser nonetheless sanctioned the Doctors for complying with the lawful orders of Judge Jones. This disturbing pattern of conduct constitutes evident partiality.

Finally, the Feldman/Capstone Parties distort Arbitrator Glasser's comments concerning his role as an affirmative counterbalance to Judge Jones.[97] Arbitrator Glasser was not merely speaking of the notion of a "level playing field" in the abstract—indeed, he did not even use that metaphor. Of course, all tribunals should strive to provide the proverbial "level playing field" by treating litigants fairly. But Arbitrator Glasser went much further: he stated that he would operate as a counterweight to Judge Jones's orders—in effect, *forcibly* leveling the proverbial playing field by acting to neutralize the effect of Judge Jones's orders.[98] No level of spin by the Feldman/Capstone Parties can justify this practice as a proper arbitral role.

---

[95] *See* E-mail from Arbitrator Glasser, May 22, 2021 [Doc. 92-20]; Exhibit AA, E-mail from Arbitrator Glasser, May 22, 2021.

[96] *See* Exhibit BB, E-mail from Joe Greenberg, May 22, 2022.

[97] *See* Transcript, July 14, 2021, at pp. 42-45 [Doc. 92-17].

[98] *Id*. at p. 42-43 ("what I have before me is what looks like a ***mirror image motion*** from the Capstone parties whereby they are seeking fees for what they've had to do in connection with a class action proceeding that I denied as early as

**V.      Mr. Carlson's cross-motion to confirm the Glasser Award should be denied.**

While the Feldman/Capstone Parties did not affirmatively move to confirm the Glasser Award, Mr. Carlson moved to confirm that award. The arguments offered by Mr. Carlson in his Response/Cross-Motion are substantively indistinguishable from those raised by the Feldman/Capstone Parties. Mr. Carlson does not raise any arguments unique to him that would justify confirmation, or which would render vacatur inapplicable. Because substantial grounds exist to vacate the Glasser Award under 9 U.S.C. §10(a)(2) and/or §10(a)(4), the Doctors' Motion to Vacate should be granted. And because an award cannot be confirmed if it is vacated, Mr. Carlson's Motion to Confirm should be denied.[99]

**VI.      Conclusion and Relief Requested.**

For these reasons, and those set forth in the Doctors' Motion to Vacate, the Doctors respectfully ask that this Court enter an Order vacating the Glasser Award and correspondingly deny Mr. Carlson's motion to confirm that Award.

---

February . . . ***those are the rules we're playing by, that one side has the right to seek attorney fees for things that that the other side did*** and [sic] another arbitration that Party A doesn't think they have the right to do. Then – and I guess fundamental fairness means that – ***that construct should be applied across the board***….You need to provide me—much as the Doctors' counsel have provided Judge Jones with such information on attorneys' fees, you need to provide me the same.") (emphasis added).

[99] 9 U.S.C. § 9.

Respectfully submitted,

 /s/ James M. Garner
JAMES M. GARNER (Tex. Bar # 792312/ 13895)
PETER L. HILBERT, JR (Tex. Fed. Bar # 114441)
THOMAS J. MADIGAN, II (Tex. Fed. Bar #3337451)
JEFFREY D. KESSLER (Tex. Fed. Bar # 3567546)
DAVID A. FREEDMAN (Tex. Fed. Bar # 3567550)
**SHER GARNER CAHILL RICHTER**
**KLEIN & HILBERT, L.L.C.**
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
jgarner@shergarner.com


Mark Trachtenberg
State Bar No. 24008169
Tex. Federal Bar No. 24584
**Haynes & Boone, LLP**
1221 McKinney Street, Suite 4000
Houston, Texas 77010
Telephone: (713) 547-2528
Facsimile: (713) 236-5567
mark.trachtenberg@haynesboone.com

**ATTORNEYS FOR THE DOCTORS**


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served on all known counsel of record through the Court's ECF system on August 1, 2022.

/s/ James M. Garner
JAMES M. GARNER