United States District Court
Southern District of Texas

**ENTERED**

December 20, 2022

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SCOTT SULLIVAN, FRANK DELLACROCE, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-20-2236 |
| STEWART A. FELDMAN, THE FELDMAN LAW FIRM LLP, *et al.*, | § § § | |
| Defendants. | § § | |

**MEMORANDUM AND OPINION**

A dozen substantive motions are pending in this case. Each motion asks the court to do the same thing: clean up the parties' post-arbitration mess. The parties used poorly drafted arbitration clauses to weaponize the arbitration process and abuse the time of multiple arbitrators in competing, wasteful arbitrations. Now, the parties bring the multiple awards, all issued against the defendants in this litigation but imposing different damages, and ask this court to help sort them out. "The point" of arbitration "is to allow for efficient, streamlined procedures tailored to the type of dispute," with each side benefiting from "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344–45 (2011) (quoting reference omitted). Arbitration is supposed to be "speedy and not subject to delay and obstruction." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). This litigation results from the defendants' efforts to turn arbitration on its head.

The parties' disputes arose from financial investments designed to avoid taxes and reduce certain risks of loss. Louisiana doctors Scott Sullivan and Frank DellaCroce and their related

business entities were persuaded to make these investments by a Texas lawyer, Stewart Feldman, his law firm, and other entities. The tax shelters and other risk-mitigation packages Feldman sold apparently failed. Money was lost. Fingers were pointed. Arbitration was initiated. A competing arbitration was then initiated, followed by other competing arbitrations.

The court resolves the following motions:

(1) a motion to dismiss under Rules 12(b)(1), 12(h)(3), and 12(b)(7) of the Federal Rules of Civil Procedure, filed by the Feldman and Capstone Parties, (Docket Entry No. 86);

(2) a joint motion to dismiss purported claims between the plaintiffs and a nonparty insurance entity called PoolRe, filed by the Doctors, the Doctor Entities, and PoolRe, (Docket Entry No. 90);

(3) a motion to confirm the March 29, 2022, but not the November 1, 2022, arbitration award issued by Charles Jones (the "Jones Award"), filed by the Doctors and the Doctor Entities, (Docket Entry No. 72);

(4) a motion to vacate the Jones Award, filed by the Feldman and Capstone Parties, (Docket Entry No. 87);

(5) a motion to vacate the Jones Award filed by Capstone's President, defendant Jeff Carlson, (Docket Entry No. 89);

(6) a motion to vacate the March 9, 2022, award issued by Mark Glasser (the "Glasser Award"), filed by the Doctors and the Doctor Entities, (Docket Entry No. 92);

(7) a motion to confirm the Glasser Award, filed by Jeff Carlson, (Docket Entry No. 109);

(8) a motion to confirm the Glasser Award, filed by the Feldman and Capstone Parties, (Docket Entry No. 149);

(9) a motion to vacate the March 22, 2022, and April 14, 2022, arbitration awards issued by Robert Kutcher (the "Kutcher Awards"), filed by the Feldman and Capstone Parties, (Docket Entry No. 95);

(10) a motion to vacate the Kutcher Awards, filed by Jeff Carlson, (Docket Entry No. 98);

(11) a motion to vacate the March 22, 2022, arbitration award issued by Caroline Baker (the "Baker Award"), filed by the Feldman and Capstone Parties, (Docket Entry No. 96); and

2

(12) a motion for reconsideration of the court's indicative ruling at the November 18, 2022, hearing, that the motions to vacate the Kutcher Awards and the Baker Award were not yet ripe, filed by the Feldman and Capstone Parties, (Docket Entry No. 147).

Having reviewed the extensive, often repetitious, and sometimes shrill briefs; the record; and the applicable law, the court denies both motions to dismiss, denies the motions to vacate all four arbitration awards on the merits, denies the motion for reconsideration as moot; and grants the motions to confirm the Jones Award and the Glasser Award.  The reasons are set out below.

## I.    Background

Doctors Scott Sullivan and Frank DellaCroce worked as surgeons at the Center for Restorative Breast Surgery in New Orleans, Louisiana, performing restorative breast surgeries on women with breast cancer.  On October 22, 2015, the Doctors entered into a turnkey agreement with Stewart Feldman and the Feldman Law Firm, LLP.  The Doctors and their business entities—the St. Charles Surgical Hospital, L.L.C., St. Charles Holdings, L.L.C, Center for Restorative Breast Surgery, L.L.C., Sigma Delta Billing, L.L.C., Cerberus Insurance Corp., Janus Insurance Corp., and Orion Insurance Corp. (together, the "Doctor Entities")—sought tax benefits and protection against exposure to various risks of loss.

Stewart Feldman, the Feldman Law Firm LLP, Capstone Associated Services (Wyoming), LP, Capstone Associated Services, Ltd., and Capstone Insurance Management, Ltd. (together, the "Feldman and Capstone Parties") agreed to provide the Doctors and Doctor Entities "a wide range of services for an ongoing term for a fixed, quarterly fee."  (Docket Entry No. 2 at 2).  The parties executed a 2015 Engagement Letter and a document entitled the Capstone Services Agreement, which explained that the Feldman Law Firm and the Capstone Parties would perform work "on behalf of, as appropriate: (i) the owners of the [Captive Insurers] in connection with the formation

of the captives; (ii) the Clinic and certain of its affiliates as the insureds; and (ii) the [C]aptives, Cerberus CC, Janus CC, and Orion CC, as the insurers." (Docket Entry No. 7-2 at 2).

According to the Doctors, their purpose in entering the Agreement was to participate in third-party insurance and obtain the benefits of risk pooling. The Doctors allege that Feldman "represented that this alternative risk management program would protect the Doctors and their business entities . . . against a multitude of loss exposures and provide tax benefits." (Docket Entry No. 46-1 at ¶ 6). Feldman also represented that the Doctors could direct him to wind down and liquidate at any point. (*Id.* at ¶¶ 12, 20). Feldman encouraged the Doctors and Doctor Entities to have the Captive Insurers participate in "third[-]party insurance and reinsurance through PoolRe," a "risk pooling arrangement involving sets of generally similar policies covering generally similar risks of closely held businesses, wherein each [Captive insurer] assumes reinsurance on policies covering other clients" of Feldman. (*Id.* at ¶ 13).

The Doctors allege that Feldman did not disclose the fact that he also used the PoolRe insurance pool to underwrite legal malpractice claims filed against him. (*Id.* at ¶ 27). In 2019, the Doctors learned of a United States Tax Court judgment holding "that PoolRE was not a bona fide insurance company." Because the Doctors believed that the Tax Court decision "could have very negative consequences," the Doctors asked Feldman and the Capstone Parties to "liquidate and wind down Plaintiffs' program that the Defendants designed, implemented, and administered." (Docket Entry No. 1-1 at ¶¶ 25–30). The Feldman and Capstone Parties refused.

In May 2020, the Feldman and Capstone Parties initiated arbitration proceedings before former Harris County, Texas, Judge Grant Dorfman. Shortly after, the Doctors and Doctor Entities initiated arbitration before retired United States District Court Judge Stanwood Duval. The Doctors then sued Feldman, the Feldman Law Firm, LLP, Capstone Associate Services

4

(Wyoming), LP, Capstone Associated Services, Ltd., Carlson, and Capstone Insurance Management, LLC (the "Feldman Parties" and the "Capstone Parties") in Texas state court. Capstone Associate Services (Wyoming), LP timely removed the action under 28 U.S.C. § 1441, based on federal jurisdiction under 28 U.S.C. § 1332(a)(1).   In July 2020, the Feldman and Capstone Parties initiated a third arbitration before another former Harris County, Texas, judge, Caroline Baker.

The timeline of the three arbitrations and the initiation of litigation is as follows:

| | |
|---|---|
| *May 7, 2020* | Arbitration initiated by the Feldman and Capstone Parties before Judge Dorfman. |
| *May 28, 2020* | Arbitration initiated by the Doctors before Judge Duval. |
| *June 17, 2020* | The Doctors filed suit in Texas state court. |
| *June 25, 2020* | The Feldman and Capstone Parties removed to federal court. |
| *July 20, 2020* | Arbitration initiated by the Feldman and Capstone Parties before Judge Baker. |

In August 2020, this court considered competing motions to compel arbitration before Judge Dorfman, Judge Duval, and Judge Baker.  (Docket Entry No. 26, amended at Docket Entry No. 31).  The Engagement Letter included the following arbitration clause:

> With respect to any and all other controversies, disputes or claims whatsoever between (x) the Firm (including its lawyers) and/or its affiliates (including Capstone Associated Services, Ltd., Capstone Insurance Management (Anguilla), Ltd., and/or Export Assurance) . . . and (y) any client of the Firm and/or its affiliates related to or arising out of the Firm's or its affiliates' services or arising under or in connection with or related to any of the parties' agreements . . . either party may submit the dispute to any recognized, neutral (x) arbitral association or (y) arbitrator for final resolution in an arbitration proceeding to be concluded within four months . . . Submission of the dispute to arbitration under this agreement shall be the sole and exclusive forum for resolving any and all disputes between the parties . . . .
>
> [A]ll arbitrations – regardless of the arbitral organization or arbitrator actually hearing the dispute – shall be conducted in Houston, Texas applying Texas substantive law pursuant to the Commercial Arbitration Rules . . . of the American

Arbitration Association (AAA) then in effect, whose Expedited Procedures shall apply regardless of the monetary size of the dispute or the number of parties to the proceeding, with only a single arbitrator hearing the dispute, again all regardless of the organization sponsoring the arbitration in question. All parties acknowledge and agree that this arbitration agreement modifies the AAA arbitration rules regarding, inter alia, the selection of the arbitrator and the administration of the arbitration in that: (1) either party may directly appoint the single arbitrator or the arbitral association who/which shall proceed to resolve the dispute, provided that the arbitrator is recognized and neutral; (2) the AAA is not required to administer and shall not administer the arbitration; and (3) any recognized and neutral arbitrator himself/herself or arbitral association may administer the arbitration. The arbitrator or arbitral association appointed to resolve the dispute shall have the sole and exclusive ability to rule on all aspects of the arbitrator's appointment, including, but not limited to, disputes or challenges of bias and neutrality.

(Docket Entry No. 7-2 at 15).

The parties also agreed to the following terms:

The parties agree that the arbitrator has exclusive authority to resolve all disputes and challenges to the formation and enforceability of this arbitration agreement, and decide all disputes or challenges to the enforceability of the parties' agreements as a whole. The parties agree that their intent is to divest the courts of all powers in disputes involving the parties, except to compel arbitration, and to confirm, vacate or enforce award. The courts shall have no jurisdiction over legal or equitable (including injunctive) matters. The arbitration decision shall be final and binding in all respects. Any person may have a U.S. District Court or another court of competent jurisdiction enter the findings of the arbitrator for all purposes, including for the confirmation and enforcement of any award.

If the first arbitrator or arbitral organization which receives a written demand for arbitration of the dispute from either of us does not complete the arbitration to finality within four months of receiving the written demand, any party then may file another written demand for arbitration of the dispute with another recognized, neutral, arbitrator or arbitral association, with the prior arbitrator or arbitral association then being immediately divested of jurisdiction, and the replacement arbitrator or arbitral association being required to render a final award within four months of the new, written demand being filed with the replacement arbitrator or arbitral organization. The replacement arbitrator shall not be the original arbitrator. Additionally, the parties agree that the dispute resolution process set forth above concerning the first (non-HBA FDC) arbitration demand, shall apply to every subsequent arbitration.

(Docket Entry No. 104-1 at 15).

This court granted the motion to compel the arbitration that the Feldman and Capstone Parties initiated before Judge Dorfman in Texas and the arbitration that the Feldman and Capstone Parties initiated before Judge Baker, also in Texas.  But the court stayed the arbitration that the Doctors initiated before Judge Duval in Louisiana until the resolution of the Texas arbitrations. (Docket Entry No. 26, amended at Docket Entry No. 31).  As the court noted at the time, "[t]he result is piecemeal presentations before three different arbitrators.  It is not efficient, and certainly not pretty, but it results from the parties' own contracts and conduct."  (*Id.* at 2).

The inefficiencies did not end there.  Far from it.  Just a few months later, the court was presented with "the *Bleak House* of arbitration."  (Docket Entry No. 51).  The parties by then had initiated a fourth, fifth, and then sixth arbitration proceeding, and the first of different awards by different arbitrators had issued.  By late November 2020, the timeline was as follows:

| | |
|---|---|
| *July 29, 2020* | Arbitration initiated by the Doctors before arbitrator Robert Kutcher. |
| *Aug. 23, 2020* | Arbitration initiated by the Doctors before former Orleans Parish, Louisiana, Civil District Court Judge Lloyd Medley. |
| *Nov. 9, 2020* | Dorfman Award issued. |
| *Nov. 23, 2020* | Arbitration initiated by the Doctors before former Orleans Parish Civil District Court Judge Carolyn Gill-Jefferson. |

The Feldman and Capstone Parties moved in this court to confirm the Dorfman Award and stay the arbitrations before Mr. Kutcher, Judge Medley, and Judge Gill-Jefferson.  (Docket Entry Nos. 36, 47).  This court determined that it lacked jurisdiction to confirm the Dorfman Award due to a pending appeal from the court's order compelling arbitration before Judge Dorfman.  (Docket Entry No. 51).  The court denied the motion to stay the Kutcher, Medley, and Gill-Jefferson arbitrations, declining to "impos[e] [its] own conception of sound' arbitration procedures" over

the parties' contractual choices.  (*Id.* at 16 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 675 (2010))).  The court held:

> The Engagement Letter does not preclude the parties from proceeding with separate arbitrations for disputes involving overlapping but different facts. The Letter does not foreclose multiple "arbitrations," but simply requires that a "dispute" be heard before "a single arbitrator." (Docket Entry No. 7-2 at 15). The AAA Commercial Rules do not require or prohibit consolidation of multiple arbitrations. Instead, the Rules leave issues related to the "consolidation of the claims or counterclaims with another arbitration" in the "discretion of the arbitrator." American Arbitration Association, Commercial Arbitration Rules, Rule P-2, https://www.adr.org/sites/default/files/CommercialRules_Web.pdf.

> Judge Duval, Judge Baker, and Mr. Kutcher have issued a joint proposal to streamline the issues presented in their three arbitrations.  (Docket Entry No. 44-4). They developed a proposal to rule on "issues common to all three arbitrations, including discovery issues, dispositive motions, or evidentiary rulings." (*Id.*). Both sides have also submitted their own proposals to streamline the arbitrations. (Docket Entry No. 44-5). While the parties have not agreed to all these proposals, the disagreements do not preclude additional proposals to consolidate.  Nor do they preclude each arbitrator from going forward with his or her arbitration.

(Docket Entry No. 51 at 17).

As if the court needed further support for its reference to *Bleak House*, a seventh, eighth, and ninth arbitration followed:

| | |
|---|---|
| *Dec. 7, 2020* | Arbitration initiated by the Feldman and Capstone Parties before Mark Glasser. |
| *Dec. 19, 2020* | Arbitration initiated by the Doctors before former Louisiana Fourth Circuit Court of Appeal Judge Charles Jones. |
| *n/a* | Arbitration initiated by the Feldman and Capstone Parties before James Doyle. |

For those keeping score, that's nine arbitrators: Judge Dorfman, Judge Duval, Judge Baker, Mr. Kutcher, Judge Medley, Judge Gill-Jefferson, Mr. Glasser, Judge Jones, and Mr. Doyle.

The pending motions to confirm or vacate do not concern five of these arbitrators.  The parties did not move to confirm or vacate the Dorfman Award after the appeal was dismissed.

Judge Duval, Judge Medley, Judge Gill-Jefferson, and Mr. Doyle did not issue final awards.  Judge Duval has stayed the arbitration proceedings before him.  Judge Medley determined that his jurisdiction had expired.  Judge Gill-Jefferson declined her appointment.  And the Feldman and Capstone Parties voluntarily dismissed the arbitration they initiated before Mr. Doyle.

The remaining four arbitrators (Judge Baker, Mr. Kutcher, Mr. Glasser, and Judge Jones) issued the awards that are disputed here.  All four arbitrators issued final awards in favor of the Doctors and Doctor Entities, finding that Feldman and his related entities breached their fiduciary duties, committed malpractice, and converted funds belonging to the Doctors and Doctor Entities. The findings and damages issued by each arbitrator are summarized in the chart below.

| AWARD | FINDINGS AND DAMAGES ISSUED |
|---|---|
| *Baker Award* | Judge Baker found that the Feldman and Capstone Parties were liable "for breaching fiduciary duties, committing professional malpractice, making negligent misrepresentations or omissions, and converting funds."  Judge Baker awarded "$1,471,949.21 for the foregoing wrongful acts and breaches." (Docket Entry No. 72-4 at 362–63).  The award equals the combination of $1,250,944 in fees forfeited by the Feldman and Capstone Parties and $221,005.21 of the risk pool premiums converted by the Feldman and Capstone Parties.<br><br>Judge Baker also awarded pre- and post-judgment interest accruing at 5%, with pre-judgement accrual beginning on July 20, 2020, and ending on the day before final execution of the award, and post-judgement accrual beginning after the award is executed.  (*Id.*).<br><br>Judge Baker awarded "the total sum of $126,383.75 as reasonable, necessary, and segregated fees and costs incurred by the Doctors because of the Capstone Parties' sanctionable and contemptuous conduct." (*Id.*).  The Feldman and Capstone Parties were awarded nothing.  Claims against Jeff Carlson individually were dismissed, with prejudice. |

| | |
|---|---|
| *Kutcher Awards* | Mr. Kutcher found that "Feldman's and Capstone's breaches of fiduciary duties were 'serious,' pervasive, and resulted in actual harm and threatened future harm in substantial amounts." (Docket Entry No. 72-3 at 128). Mr. Kutcher found that "the Doctors are entitled to fee forfeiture and their share of premiums converted from the 2018/2019 risk pools." (*Id.* at 116). This equals $1,250,944 in fees and $221,005.21 in premiums, totaling $1,471,949.21. Mr. Kutcher also found that "Capstone violated the Texas Insurance Code, thus entitling the Doctors to treble damages, attorneys' fees, and costs, and pre and post judgment interest." (*Id.*). <br><br> The total award equals $4,415,847.63, not including attorneys' fees or interest. Mr. Kutcher awarded unpaid sanctions of $17,319.32 and attorneys' fees of $126.383.75 from the March 8, 2022, order. Pre-judgement interest of 5% began accruing on July 29, 2020, and is set to end when the judgment is executed, at which point a post-judgement interest of 5% would begin. (*Id.* at 126). <br><br> Mr. Kutcher dismissed all claims against Jeff Carlson, in his individual capacity, with prejudice. (*Id.* at 130). |
| *Glasser Award* | Mr. Glasser found the Feldman and Capstone Parties "liable to the[] [plaintiffs in this case] for breaching fiduciary duties, committing professional malpractice, making negligent misrepresentations or omissions, and converting funds." Mr. Glasser issued a damages award "in the total amount of $1,471,949.21, exclusive of attorneys' fees and costs, pre-judgment interest, and post-judgment interest." (Docket Entry No. 72-5 at 404–05). The award equals the combination of $1,250,944 in fees forfeited by the Feldman and Capstone Parties and $221,005.21 of the risk pool premiums converted by the Feldman and Capstone Parties. Mr. Glasser awarded pre- and post-judgment interest at 5%. The pre-judgment interest began accruing on December 7, 2020, and was set to end when the judgment is executed at which point post-judgement interest would begin to accrue. |
| *Jones Award* | Judge Jones found the Feldman and Capstone Parties "jointly, severally, and [solitarily] liable to [the plaintiffs and Class Members] for breaching fiduciary duties, committing professional malpractice, fraud, conversion, making fraudulent and negligent misrepresentations, violating the Texas |

Deceptive Trade Practice Act, and violating RICO." (Docket Entry No. 72-2 at 270). Judge Jones defined the "class members" as:

> All insureds, captives, participants, and owners thereof who participated in the 2018 PoolRe reinsurance risk pool and the 2019 PoolRe reinsurance risk pool.

> Excluded from the class are A.M.Y. Property & Casualty Corp. ("A.M.Y."), Stewart A. Feldman, The Feldman Law Firm, LLP, Capstone Associated Services, Wyoming, Limited Partnership, Capstone Associated Services, Ltd., Capstone Insurance Management, Ltd., Jeff Carlson, and all named insureds and additional named insureds in the 2018 and 2019 direct insurance policies issued by A.M.Y., which include but may not be limited to the following entities also excluded from the class: Feldman/Matz Interests, LLP; Marla B. Matz; Stewart A. Feldman & Associates, L.L.P.; Feldman Hanzen, LLP; RSL Funding, LLC; RSL-3B-IL, Limited Partnership; RSL Special-IV, Limited Partnership; RSL-5B-IL, Limited Partnership' Capstone Insurance Management (Anguilla), Ltd.; POC Lease Holdings, LLC; Extended Holdings, Limited Partnership; RSL 2012-1, LP; RSL-3B-IL Management Corp.; RSL Special-IV Management Corp.; Capstone Holdings Corp.; Extended Holdings Management Corp.; Chestnut Holdings, LLC; Property Express Funding, Ltd.; PEF Management Corp.; RSL 2012-1 Management Corp.; PRQ Qualified Investments, LLC; Capstone Associated Services (Wyoming), LLC; and RSL-5B-IL Management Corp.

(*Id.* at 3).

Judge Jones issued declaratory relief and damages while determining that the Feldman and Capstone Parties "take nothing." (*Id.* at 270–73). Judge Jones also found Stewart Feldman and Jeff Carlson personally liable. (*Id.* at 139–40).

Judge Jones issued an award amount of "$23,224,403 for [lost] profits and loss of opportunity to investment profits", plus

"$221,005.21 for risk pool premiums converted by Feldman and Capstone." (*Id.* at 270–71). Judge Jones awarded treble damages for violations of RCO, the DTPA and the Texas Insurance Code, "making their total award, exclusive of attorneys' fees, pre-judgment interest, and post-judgment interest, $70,336,224.60." (*Id.* at 271).

Judge Jones also awarded attorneys' fees and costs incurred in the arbitration proceedings "in the amount of $18,348,294.60." (*Id.*). Judge Jones also awarded pre- and post-judgment interest accruing at 5%, with pre-judgment accrual beginning on July 29, 2020, and ending on the day before final execution of the award, at which point post-judgment interest would begin. (*Id.*).

Judge Jones based his award on the finding that "Mr. Feldman and Capstone are liable to the Doctors for deprivation of investment opportunities, the looting of premiums owed to the Doctors and Class Members, and for attorney's [sic] fees, cost and expenses in this arbitration." (*Id.* at 180).

The Feldman and Capstone Parties have moved to vacate the Baker Award. (Docket Entry No. 96). The Doctors and Doctor Entities have not sought to confirm that Award. The Feldman and Capstone Parties and Jeff Carlson have moved to vacate the Kutcher Awards. (Docket Entries No. 95, 98). The Doctors and Doctor Entities have not sought to confirm the Kutcher Awards. The Doctors and Doctor Entities have moved to vacate the Glasser Award. (Docket Entry No. 92). Jeff Carlson and the Feldman and Capstone Parties have moved to confirm the Glasser Award. (Docket Entry Nos. 109, 149). The Doctors and Doctor Entities seek to confirm the Jones Award, (Docket Entry No. 72), which the Feldman and Capstone Parties and Jeff Carlson seek to vacate, (Docket Entry Nos. 87, 89).

The motions and responses are addressed below.

## II.   The Motions to Dismiss

### A.   The Legal Standards

The Federal Arbitration Act "'is something of an anomaly' in the realm of federal legislation" because "[i]t bestow[s] no federal jurisdiction but rather requir[es] [for access to a federal forum] an independent jurisdictional basis over the parties' dispute." *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (internal quotation marks omitted) (quoting reference omitted) (alterations in original). Although the Act "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate," "it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n.32 (1983); *accord Oteeva, LP v. X–Concepts LLC*, 253 F. App'x 349, 350 (5th Cir. 2007); *Smith v. Rush Retail Ctrs. Inc.*, 360 F.3d 504, 505–06 (5th Cir. 2004) (*Moses Cone* applies with "equal force" to § 10 of the FAA; citing other circuit courts reaching the same conclusion).

Federal jurisdiction in this case is based on diversity of citizenship, which must exist over the course of the litigation. "If the joinder of the absentee would destroy diversity and the court 'in equity and good conscience' cannot proceed without the absentee, the action will have to be dismissed." 7 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1610 (quoting FED. R. CIV. P. 19(b)). In cases that start in state court, like this case, "post-removal joinder of a non-diverse, dispensable party destroys diversity jurisdiction" and requires remand. *Cobb v. Delta Exps., Inc.*, 186 F.3d 675, 677 (5th Cir. 1999).

### i.      Rules 12(b)(1) and 12(h)(3)

Rule 12(b)(1) governs challenges to a federal court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting

reference omitted).  Courts may dismiss for lack of subject matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

The plaintiff has the burden to prove subject matter jurisdiction.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  When a factual challenge to subject matter jurisdiction under Rule 12(b)(1) does not implicate the merits of a plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (citation omitted); *see also Clark*, 798 F.2d at 741.  The court may consider matters outside the pleadings, such as deposition testimony or affidavits, to resolve a factual challenge to subject-matter jurisdiction, without converting the motion to dismiss to one for summary judgment. *Garcia*, 104 F.3d at 1261.

Under Rule 12(h)(3), the court must dismiss an action "[i]f the court determines at any time that it lacks subject-matter jurisdiction." FED. R. CIV. P. 12(h)(3).

### ii.    Rule 12(b)(7)

Rule 12(b)(7) provides for dismissal of an action if a litigant fails to join a party under Rule 19.  Under Rule 19, a defendant may identify a person or entity that is not named in the suit, assert that the absent person or entity's participation is critical, and ask the court to join that person or entity.  If Rule 19(a) requires joinder, the court must join that person or entity if feasible.  If the absent person or entity cannot be joined, the court must decide under Rule 19(b) whether to proceed without that person or dismiss the suit.

Rule 12(b)(7) requires a two-step inquiry.  First, Rule 19(a) is applied to determine whether the absent party is required to be joined.  *See HS Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003).  The court considers whether complete relief can be granted without joining the absent party.  The court considers whether the absent person or entity claims an interest relating to the action and is so situated that, if the action is resolved in their absence, their ability to protect their own interest will be impaired or impeded or existing parties might be subject to a substantial risk of multiple or inconsistent obligations.  FED. R. CIV. P. 19(a)(1).  The issue is whether the court may order "meaningful" relief, defined as relief that would achieve the objective of the lawsuit, without adding the absent party.  *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 979 (9th Cir. 2004).

A plaintiff is not required to name all tortfeasors in a single action.  *See Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."); *see also Nottingham v. Gen. Am. Commc'ns Corp.*, 811 F.2d 873, 880 (5th Cir. 1987).  The Committee Notes to Rule 19(a) state that "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability."  *Temple*, 498 U.S. at 7.  Courts have recognized that "[i]f persons subject to rights of indemnity or contribution were always indispensable parties, there would not be a need for the impleader provisions of Rule 14."  *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503 (7th Cir.1980).

The second category of required parties is parties that claim an "interest relating to the subject of the action."  FED. R. CIV. P. 19(a).  An absent person's interest must be such that joinder is required to protect either the absent person or the existing parties.  The absent person is a required party if that person claims an interest relating to the action and, as a practical matter, that

interest might be impaired or impeded if the case is resolved in the person's absence.  The absent person is also a required party if in his absence, the existing parties would be subject to a substantial risk of multiple or inconsistent obligations.  A "Rule 12(b)(7) motion will not be granted because of a vague possibility that persons who are not parties may have an interest in the action."  5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1359.  The moving party has the burden of showing that an absent party must be joined for just adjudication.  *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 873 (N.D. Ill. 2002).

If there is an absent, required person, the court decides whether that person is indispensable to the action and cannot be joined.  FED. R. CIV. P. 19(a)–(b).  In deciding whether an absent person is indispensable, the court considers: (1) the extent to which a judgment rendered in the absence of that necessary party might be prejudicial to that person or to those already parties; (2) the extent to which the prejudice can be lessened or avoided by shaping the judgment; (3) whether judgment issued in the necessary person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.  FED. R. CIV. P. 19(b).  If the absent person is a required party under Rule 19(a) and no reason prevents joinder, the court must join that person.  If joinder is not feasible, the court must dismiss the action or decide whether to proceed without the absent person.

In ruling on a motion to dismiss for failure to join a necessary and indispensable party, a court must accept the complaint allegations as true.  *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2 (7th Cir. 2001).  The moving defendant has the burden of showing that a party must be joined for just adjudication.  *Ploog*, 209 F. Supp. 2d at 873 ("The proponent of a Rule 12(b)(7) motion to dismiss has the burden of producing evidence which shows the nature of the absent party's interest and that the protection of that interest will be impaired or impeded by the

absence.").  The analysis under Rule 19 is fact specific.  *See Rhone-Poulenc Inc. v. Int'l Ins. Co.*, 71 F.3d 1299, 1301 (7th Cir. 1995) (stating that a Rule 19 determination depends on the circumstances of the case).  Determinations as to whether a party is required under Rule 19(a) and indispensable under Rule 19(b) are not mechanical; instead, "the court must consider the practical potential for prejudice in the context of the particular factual setting presented by the case at bar." *Schlumberger Indus. Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1286 (4th Cir. 1994).

### B.    Analysis

The Feldman and Capstone Parties have moved to dismiss on the basis of Rules 12(b)(1), 12(h)(3), and 12(b)(7).  (Docket Entry No. 86).  More than two years after removing this case to federal court on the basis of diversity jurisdiction, these defendants now argue that PoolRe, which is not a party in this case, is indispensable but cannot be joined without destroying diversity.  In response, the Doctors and Doctor Entities have moved to dismiss with prejudice any claims they might have against PoolRe, which, again, is not and has never been a party to this case.  (Docket Entry No. 90).

The court denies both motions.  Dismissal is not appropriate under Rule 12(b)(1) or Rule 12(h)(3) because the court has subject matter jurisdiction.  PoolRe is not a party.  Diversity is complete.  The defendants' reliance on the Supreme Court's recent decision in *Badgerow v. Walters*, 142 S. Ct. 1310 (2022), is misplaced.  The defendant in *Badgerow* removed a Section 10 motion to vacate an arbitration award to federal court on the basis of federal question jurisdiction. *Id.* at 1314–15.  The plaintiff sought remand, which the district court denied on the basis that the underlying employment dispute raised federal-law claims.  *Id.*  Diversity jurisdiction was not at issue; instead, the issue was whether the district court could "look through" the motion to vacate to the "underling substantive controversy" to determine that a federal question existed.  *Id.*

(quoting reference omitted).  The Court held that the district court may not do so.  *Id.*  Although a court may "look through" a Section 4 application to compel arbitration, Sections 9 and 10 "contain none of the statutory language" that the Court found critical to Section 4.  "The federal 'district courts may not exercise jurisdiction absent a statutory basis.'  And the jurisdiction Congress confers may not 'be expanded by judicial decree.'"  *Id.* at 1318 (quoting references omitted).

This case is not like *Badgerow*.  This case did not come to this court on either a Section 9 or Section 10 petition to confirm or vacate an arbitral award.  Rather, the Feldman and Capstone Parties, defendants here, removed a Section 4 petition to compel arbitration.  PoolRe was not a party to that petition, and the plaintiffs have not sought to bring PoolRe into this case.

The defendants argue that because the plaintiffs seek confirmation of the Jones Award, which lists PoolRe as a party to that arbitration, PoolRe is effectively a party to this case.  That argument lacks authority and persuasiveness.  The plaintiffs have not sought to confirm any arbitration award against PoolRe.  The Federal Arbitration Act states that "the court shall have jurisdiction of" an adverse party served with an application to confirm.  9 U.S.C. § 9.  The parties in this case do not include PoolRe.  Diversity is complete, and diversity jurisdiction exists.

As to the Rule 12(b)(7) motion, PoolRe does not appear to be a required party under Rule 19(a).  The Feldman and Capstone Parties cite no support or persuasive reason for the proposition that the Federal Arbitration Act "makes PoolRe a required party to the application to confirm." (Docket Entry No. 86 at 11).  Section 9 of the Act provides: "Notice of the application [to confirm] shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding."  9 U.S.C. § 9.  The Act does not define "adverse party," and there is no cited support indicating that the term refers to all entities referred

to, or involved in, an arbitration.  A more reasonable reading is that an "adverse party" is a party against whom confirmation of an arbitration award is sought.

In any event, the Feldman and Capstone Parties have not shown a sufficient basis to dismiss under Rule 19(b).  The Feldman and Capstone Parties state that PoolRe may be subject to multiple and inconsistent awards, but they do not explain how, given the absence of any effort to enforce an award against PoolRe.  Nor do the Feldman and Capstone Parties show how a risk to PoolRe prejudices the Feldman and Capstone Parties.  The parties are bound by their arbitration Agreement and the results it produced.  The Feldman and Capstone Parties show no basis for their argument that these results prevent this court from acting on the parties' motions to vacate or affirm the various awards in the absence of PoolRe as a party.  The Feldman and Capstone Parties have not met their burden to show that PoolRe is indispensable under Rule 19(b).  *See Ploog*, 209 F. Supp. 2d at 873.

Dismissal under Rules 12(b)(1), 12(h)(3), or 12(b)(7) is not appropriate.  Nor is it appropriate for the court to dismiss claims that have not been raised against PoolRe, which is not a party.  The court cannot "dismiss" claims that have not been raised.  Both the Feldman and Capstone Parties' motion to dismiss, (Docket Entry No. 86), and the Doctors' motion to dismiss, (Docket Entry No. 90), are denied.

## III.    The Motions to Vacate or Confirm

### A.    The Legal Standards

"Congress enacted the FAA to replace judicial indisposition to arbitration . . . ."  *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008).  Judicial review of arbitrators' decisions is, accordingly, "extraordinarily narrow" and highly deferential.  *See In re Trans Chem. Ltd. & China Nat'l Mach. Import & Exp. Corp.*, 978 F. Supp. 266, 303 (S.D. Tex. 1997); *Forsythe Int'l.*

*S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, 1020 (5th Cir. 1990); *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994); *Gulf Coast Indus. Workers Union v. Exxon Co.*, 991 F.2d 244, 248 (5th Cir. 1993); *Psarianos v. Standard Marine, Ltd.*, 790 F. Supp. 134, 135 (E.D. Tex. 1992), *aff'd*, 12 F.3d 461 (5th Cir. 1994).

Under Section 9 of the Federal Arbitration Act, when a party moves to confirm an award within one year of its issuance, "the court *must* grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the Act. 9 U.S.C. § 9 (emphasis added). "Section 10 lists grounds for vacating an award, while § 11 names those for modifying or correcting one." *Hall St. Assocs.*, 552 U.S. at 582. The Supreme Court has emphasized that "[t]here is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Id.* at 587.

The four statutory grounds listed in Section 10 for vacating an award are:

(1) the award was procured by corruption, fraud, or undue means;

(2) there was evident partiality or corruption in the arbitrators, or either of them;

(3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Section 11 provides three additional grounds that establish when a court may modify or correct an award:

(a) there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;

(b) the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or

>   (c) the award is imperfect in matter of form not affecting the merits of the
>   controversy.

*Id.* § 11.

These grounds are exclusive. *Hall St. Assocs.*, 552 U.S. at 583. If one of these grounds is not satisfied, the court must confirm the award. *Id.* Doing so "substantiat[es] a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Id.* at 588. It also prevents "full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process,' and bring arbitration theory to grief in post-arbitration disputes." *Id.* (quoting *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003)) (citation omitted).

"[I]n holding that §§ 10 and 11 provide exclusive regimes for the review provided by the statute," the Supreme Court did not "exclude more searching review based on authority outside the statute as well," such as enforcement under "state statutory or common law, for example, where judicial review of different scope is arguable." *Id.* at 590. That said, a court may set aside an arbitration award "only in very unusual circumstances." *First Options, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

"That the award does not draw its essence from the contract is a statutory ground for vacatur, derived from 9 U.S.C. § 10(a)(4), which permits vacatur when the arbitrator exceeds his powers. The test is 'whether the award, however arrived at, is rationally inferable from the contract.'" *Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C.*, 487 F.3d 255, 259 (5th Cir. 2007) (quoting reference omitted) (footnote omitted). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25.

In deciding whether an arbitrator exceeded his or her authority so as to warrant vacatur under the Act, courts resolve doubts in favor of arbitration. *Executone*, 26 F.3d at 1320–21 (citing *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 (5th Cir. 1993)). As the Fifth Circuit has explained:

> We will not second-guess multiple, implicit findings and conclusions underpinning the award. We do not decide if the award was free from error. We decide only that it is not the kind of extraordinary award that ineluctably leads to the conclusion that the arbitrator was "dispensing his own brand of industrial justice." There are advantages and disadvantages in contracting for private resolution of a dispute announced without explanation of reason. When a party does so and loses, federal courts cannot rewrite the contract and offer review the party contracted away.

*Am. Laser Vision*, 487 F.3d at 260.

In reviewing an award, a court "looks only to the result reached. The single question is whether the award, however arrived at, is rationally inferable from the contract." *Executone*, 26 F.3d at 1325 (quoting *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1219 n.3 (5th Cir. 1990)). An arbitrator's factual findings "are unreviewable" and "must be accepted as true." *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 407, 409 (5th Cir. 2007), *overruled on other grounds by Hall St.*, 552 U.S. at 584–86. "[I]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different than his." *Id.* at 405 (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598–99 (1960)).

Arbitrator misconduct is another statutory basis for vacatur, drawing its authority from 9 U.S.C. § 10(a)(3). Vacatur on this basis is also narrow, and a reviewing court defers to the arbitrator's procedural decisions. "To constitute misconduct requiring vacation of an award, an

22

error in the arbitrators' determination must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing." *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir. 2006) (quoting *El Dorado Sch. Dist. No. 15 v. Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001)).  When an arbitrator's procedural decision is challenged on the basis of misconduct, courts recognize that arbitration differs from litigation, and that difference affects the standard of judicial review:

> Arbitration proceedings are not constrained by formal rules of procedure or evidence. By agreeing to arbitration, a party trades the procedures and opportunities for review of the courtroom for the simplicity, informality, and expedition of arbitration. Arbitrators should be expected to act affirmatively to simplify and expedite the proceedings before them. They need provide only a fundamentally fair hearing. Courts reviewing arbitral awards may not superimpose rigorous procedural limitations upon the conduct of the arbitrators.

*Mantle v. Upper Deck Co.*, 956 F. Supp. 719, 730–31 (N.D. Tex. 1997) (citations omitted).

## B.    Analysis

The Doctors and Doctor Entities seek to confirm the March 29, 2022, arbitration award issued by Judge Charles Jones and to vacate the March 9, 2022, award issued by Arbitrator Mark Glasser.  (Docket Entry Nos. 72, 92).  The Feldman and Capstone Parties seek to vacate the Jones Award; the March 22, 2022, award issued by Judge Caroline Baker; and the March 22, 2022, and April 14, 2022, awards issued by Arbitrator Robert Kutcher.  (Docket Entry Nos. 97, 95, 96).  The Feldman and Capstone Parties seek to confirm the Glasser Award.  (Docket Entry No. 149).  Jeff Carlson seeks to confirm the Glasser Award and to vacate the Kutcher Awards and the Jones Award.  (Docket Entry Nos. 89, 98, 109).  All four arbitrators found that the Feldman and Capstone Parties breached their fiduciary duties, committed professional, malpractice, and converted funds. All four arbitrators found Stewart Feldman and the entities he controlled culpable and liable.  Judge Jones additionally found Jeff Carlson personally "liable for knowingly participating in and facilitating Mr. Feldman's breaches of fiduciary duties."  (Docket Entry No. 72-2 at 184).  In short,

23

every arbitrator found against the Feldman and Capstone Parties.  The variations are the damages amounts.

The court grants the motions to confirm, as the Federal Arbitration Act requires "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the Act.  9 U.S.C. § 9.  The court finds that the grounds for vacatur are not met as to the Jones Award, the Kutcher Awards, the Glasser Award, or the Baker Award.  Each motion to vacate is accordingly denied.

The vacatur motions raise various issues as to each of the four arbitrators, but a common issue is whether each arbitrator had jurisdiction to issue his or her award, given the provision in the arbitration Agreement limiting the time for arbitration to a four-month period.  The court first addresses the jurisdictional issue and then the additional issues raised in the individual motions to vacate.

### i.    Jurisdiction

The Feldman and Capstone Parties argue that the Agreement allows only one arbitrator to be appointed at a time and that a new arbitrator cannot be appointed until four months after the initial arbitration began and then failed to conclude.  The Feldman and Capstone Parties focus on the following language in the Agreement:

> If the first arbitrator or arbitral organization which receives a written demand for arbitration of the dispute from either of us does not complete the arbitration to finality within four months of receiving the written demand, any party then may file another written demand for arbitration of the dispute with another recognized, neutral, arbitrator or arbitral association, with the prior arbitrator or arbitral association then being immediately divested of jurisdiction, and the replacement arbitrator or arbitral association being required to render a final award within four months of the new, written demand being filed with the replacement arbitrator or arbitral organization. The replacement arbitrator shall not be the original arbitrator. Additionally, the parties agree that the dispute resolution process set forth above concerning the first (non-HBA FDC) arbitration demand, shall apply to every subsequent arbitration.

(Docket Entry No. 104-1, at 15).  According to the Feldman and Capstone Parties, the language "first arbitrator," "prior arbitrator," "divested of jurisdiction," and "replacement arbitrator" all support their one-arbitrator-at-a-time theory.  (Docket Entry No. 87-1 at 10).  Under this theory, and the way the Feldman and Capstone Parties apply it, neither Mr. Kutcher nor Judge Jones was properly appointed and Judge Baker could not issue an award because she was divested of jurisdiction at the end of four months from her appointment.  That leaves Mr. Glasser as the only arbitrator whose award the Feldman and Capstone Parties do not seek to vacate.

The court has already rejected the one-arbitrator-at-a-time argument, holding that the parties' arbitration Agreement anticipated and allowed for multiple arbitrations.  In its December 4, 2020, order, this court held:

> The Engagement Letter does not preclude the parties from proceeding with separate arbitrations for disputes involving overlapping but different facts. The Letter does not foreclose multiple "arbitrations," but simply requires that a "dispute" be heard before "a single arbitrator." (Docket Entry No. 7-2 at 15). The AAA Commercial Rules do not require or prohibit consolidation of multiple arbitrations. Instead, the Rules leave issues related to the "consolidation of the claims or counterclaims with another arbitration" in the "discretion of the arbitrator." American Arbitration Association, Commercial Arbitration Rules, Rule P-2, https://www.adr.org/sites/default/files/CommercialRules_Web.pdf. Judge Duval, Judge Baker, and Mr. Kutcher have issued a joint proposal to streamline the issues presented in their three arbitrations. (Docket Entry No. 44-4). They developed a proposal to rule on "issues common to all three arbitrations, including discovery issues, dispositive motions, or evidentiary rulings."  (*Id.*).

(Docket Entry No. 51 at 17).

The four arbitrators who issued the awards in dispute—Judge Baker, Mr. Kutcher, Mr. Glasser, and Judge Jones—all cited to that language from the court.  These arbitrators issued a joint order, stating that the Engagement Letter does contemplate multiple arbitrations.  (Docket Entry No. 72-7 at 2–3).  "There is no question that the cause of multiple arbitrations and the chaos is the arbitration provision of the Engagement Letter entered into by the parties. . . . These multiple

arbitrations are a product of the Engagement Letter. That salient fact cannot be ignored." (*Id.*); *see also* (Docket Entry No. 72-2 at 22 (Jones Award)); (Docket Entry No. 72-16 at 1–2 (Jones Order)); (Docket Entry No. 72-19 at 19 (Dorfman Award)); (Docket Entry No. 72-7 at 3 (Joint Order) ("Judge Dorfman also acknowledged that multiple arbitrations are appropriate when he denied the request to hear the matters alleged in the Duval Arbitration.")). The Feldman and Capstone Parties' one-arbitrator-at-a-time argument is not persuasive.

The Feldman and Capstone Parties' four-month jurisdictional argument is also riddled with problems. In an effort to help their argument on the enforceability of the four-month provision, the Feldman and Capstone Parties included in their briefs a chart that purports to display the timeline for when different arbitrators first had jurisdiction and when they were divested of jurisdiction. Rather than resolving or explaining the problems with this argument, the chart exposes them. The chart the Feldman and Capstone Parties provided sets out the following:

| Arbitrator | Status of Arbitrator | Date Appointed and by Whom | Date Divested of Jurisdiction and by Whom |
|---|---|---|---|
| Judge Baker | Original arbitrator | July 20, 2020, by the Feldman and Capstone Parties | December 7, 2020, by the Feldman and Capstone Parties' appointment of Mr. Glasser |
| Mr. Kutcher | Neither original nor replacement arbitrator | July 29, 2020, by the Doctors | December 7, 2020, by the Feldman and Capstone Parties' appointment of Mr. Glasser |
| Judge Medley | Original arbitrator as to class claims | August 23, 2020, by the Doctors | December 19, 2020, by the Feldman and Capstone Parties' appointment of Mr. Glasser |
| Judge Gill-Jefferson | Original arbitrator as to RICO claims | November 10, 2020, by the Doctors | December 10, 2020, by the Feldman and Capstone |

|  |  |  | Parties' appointment of Mr. Glasser |
|---|---|---|---|
| Mr. Glasser | Replacement arbitrator | December 7, 2020, by the Feldman and Capstone Parties | n/a |
| Judge Jones | Neither original nor replacement arbitrator | December 19, 2020, by the Doctors | n/a |

(Docket Entry No. 87-1 at 12).  The Feldman and Capstone Parties argue that because four months had not elapsed from the appointment of Judge Duval as an arbitrator when Judge Baker and Mr. Kutcher were appointed, their appointments are invalid under the Agreement, and they lacked jurisdiction to arbitrate.  The Feldman and Capstone Parties argue that because Mr. Glasser was validly appointed after four months had elapsed without a ruling from the other arbitrators, a new arbitrator could not be appointed until four months after Mr. Glasser's appointment if he had not issued an award before then.

These arguments and the corresponding chart raise more questions than they answer.  Why do the Feldman and Capstone Parties start the four-month clock with Judge Baker and not Judge Dorfman, who was the first arbitrator appointed?  If Judge Medley was the "original" arbitrator for the class claims, how could he be displaced by Mr. Glasser before Judge Medley's four-month jurisdiction had expired?  If Judge Gill-Jefferson was the "original" arbitrator of the RICO claims, how could she be displaced by Mr. Glasser before her four-month jurisdiction had expired?  How did Mr. Glasser divest Judge Medley and Judge Gill-Jefferson of jurisdiction when their four months had not yet expired?  It appears that the Feldman and Capstone Parties invoke the four-

month jurisdictional provision when it helps their case and distance themselves from it when it does not.  Heads they win, tails you lose.

Besides this calculated and inconsistent construction of the four-month jurisdictional provision, there is an additional reason why the provision cannot serve as a basis for vacatur.  Each of the four arbitrators who issued the now disputed awards declared the four-month provision invalid.  All four arbitrators agreed that the provision was unconscionable, given the complexity of the case, and that compliance would violate the Doctors' due process rights, in part because the Feldman and Capstone Parties deliberately dragged the proceedings out when they appeared to be unfavorable to those Parties.  "The simple fact is the four[-]month period does not allow due process to be ignored. To insist on its strict compliance elevates form over substance and encourages discovery delays to run out the clock and further arbitrations." (Docket Entry No. 72-7 at 4).  The arbitrators also determined "that, not only would proceeding with the hearing be inconsistent with due process, but that given the complexity of the issues and the discovery issues that populate this matter[,] the four[-]month limitation is unconscionable." (*Id.* at 5).

The arbitrators found that part of the reason the four-month period kept expiring was that the Feldman and Capstone Parties intentionally let the clock run when they did not like the direction the arbitration was heading. (*Id.*).  The arbitrators found that the Feldman and Capstone Parties manipulated the four-month provision to frustrate the arbitrations and abuse the process. "It would be unconscionable to allow Capstone's failure to respond fully to discovery and deprive the Doctors adequate opportunity to prepare by denying the continuance." (*Id.*).  In earlier orders, Judge Duval, Judge Baker, and Mr. Kutcher all expressed due-process concerns over the four-month provision because, when these arbitration proceedings were initiated in 2020, a pandemic was raging, and the City of Houston (where the arbitrations were to occur) had been hit by a deadly

28

hurricane.  (*Id.* at 3); (Docket Entry No. 72-4 at 10).  All the arbitrators reasonably concluded that they could not "render" a "reasoned award" and comply with due process within four months of their appointments.  (Docket Entry No. 72-7 at 4).

The court cannot, and will not, second-guess these determinations.  The Engagement Letter explicitly states that "the arbitrator has *exclusive* authority to resolve *all* disputes and challenges to the formation and enforceability of this arbitration agreement," and that exclusive authority extends to "*all* disputes or challenges to the enforceability of the parties' agreements as a whole." (Docket Entry No. 104-1 at 15 (emphasis added)).  The Engagement Letter also states that the "parties agree that their intent is to divest the courts of *all* powers in disputes involving the parties, except to compel arbitration, and to confirm, vacate or enforce award. The courts shall have *no jurisdiction* over legal or equitable (including injunctive) matters." (*Id.* (emphases added)).  The Feldman and Capstone Parties agreed to these terms.  Now that they have lost in the arbitrations they agreed to, they ask the court to "rewrite the contract and offer review the party contracted away." *Am. Laser Vision*, 487 F.3d at 260.  The court cannot and will not do so.

The law adverse to the Feldman and Capstone Parties is just as clear.  Contract interpretation "is a question for the arbitrator.  It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960).  "Even 'the failure of an arbitrator to correctly apply the law is not a basis for setting aside an arbitrator's award.'" *Am. Laser Vision*, 487 F.3d at 260 (quoting reference omitted).  The only circumstance that may justify relief from an error as to the law is if the court finds that the arbitrator

"appreciate[ed] the existence of a clearly governing principle but decide[ed] to ignore or pay no attention to it," resulting in "significant injustice." *Id.* at 259 (quoting reference omitted).

The arbitrators' holding that the four-month provision is unconscionable and violates due process presents no manifest disregard of the law. Indeed, the court agrees with the arbitrators that the disputes were complicated, that four months was not a reasonable amount of time to resolve the disputes even in the absence of a pandemic and flood, that the global pandemic and localized natural disasters made a lengthier period even more necessary, and that the Feldman and Capstone Parties engaged in unjustifiable, intentional, and willful delay. The arbitrators' jurisdictional findings will not be disturbed.

### ii. The Jones Award

The Feldman and Capstone Parties seek to vacate the Jones Award on seven grounds:

(1) Judge Jones was not properly vested with jurisdiction.

(2) Mr. Glasser resolved the same disputes that were before Judge Jones.

(3) Judge Jones was partial to the Doctors.

(4) Judge Jones decided issues that were conditionally submitted to him, on a specific condition that never materialized. The specific condition was that Mr. Kutcher had been divested of jurisdiction.

(5) Judge Jones sat with three other arbitrators as opposed to being the sole arbitrator.

(6) Judge Jones "conspired" with Mr. Glasser and considered *ex parte* evidence.

(7) Judge Jones exceeded his authority by allowing class claims to proceed.

(Docket Entry No. 87-1 at 7–9). These arguments are echoed in Jeff Carlson's motion to vacate the Jones Award. (Docket Entry No. 89). None is persuasive.

The court has already addressed the arguments identified as items (1), (2), (5), and (6) in this list. Judge Jones determined that he was properly vested with jurisdiction. His reasoning was

extensive.  (*See* Docket Entry No. 72-2 at 19–28).  Judge Jones rejected the Feldman and Capstone Parties' objection that his jurisdiction had lapsed, finding the four-month jurisdictional "provision to be 'unconscionable,' contrary to due process, and legally unenforceable in the context of these proceedings, and specifically, considering [the Feldman and Capstone Parties'] noncompliance with their discovery obligations."  (*Id.* at 24–25).  This court has no basis to reverse or replace Judge Jones's findings or the consistent findings of the other arbitrators that the Feldman and Capstone parties had so abused the four-month provision as to make it unenforceable.

Judge Jones also found that the claims for class arbitration in particular, and the other claims in general, were properly before him because the Doctors and Doctor Entities submitted their claims to him first after Judge Medley determined that his jurisdiction had expired.  (*Id.* at 20).  The Doctors and Doctor Entities initially filed their arbitration demand with Judge Jones on December 19, 2020, and then, promptly after Judge Medley determined that his jurisdiction would end on December 23, 2020, the Doctors and Doctor Entities amended their demands to include claims that had been pending before Judge Medley.  (*Id.* at 19).  Judge Jones was, therefore, "the first to receive an arbitration demand containing the claims previously before Judge Medley upon the expiration of Judge Medley's jurisdiction on December 23, 2020."  (*Id.* at 20).

The Feldman and Capstone Parties argue that Judge Jones's reasoning is flawed and should be set aside because he did not "rely on the critical language in the arbitration clause," but rather on the "irrelevant" case of *In re Houston Specialty Insurance Co.*, 569 S.W.3d 138 (Tex. 2019). (Docket Entry No. 87-1 at 14).  The Feldman and Capstone Parties' argument is not persuasive. Judge Jones properly relied on the language of the Agreement, which gives arbitrators the "sole and exclusive ability to rule on all aspects of the arbitrator's appointment."  (Docket Entry No. 7-2 at 15).  Judge Jones also relied on the AAA rules, which the parties' Agreement specifically

incorporated.  Finally, Judge Jones did not misapply *Houston Specialty*.  In that case, the Texas

Supreme Court held that claims for declarations of nonliability in a legal malpractice case (like the

claims Feldman and the Feldman Entities pursued) "are legally invalid, have 'no basis in law,' and

should [be] dismissed" under Texas law.   569 S.W.3d at 141.   Judge Jones correctly applied

*Houston Specialty* to this case to conclude that the earlier appointment of Mr. Glasser by the

Feldman and Capstone Parties, who did not have valid claims under Texas law, did not divest

Judge Jones of jurisdiction.

As to item (2), the court determined in its earlier order that multiple arbitrations could

proceed.  To the extent the awards were inconsistent, the issue of which award controls was not a

question for the court, but rather for an arbitrator to decide.  The "arbitrators are authorized to

determine whether and when earlier decisions or awards have preclusive effects." (Docket Entry

No. 51 at 17–18).  "The parties applied their contract to make this mess but agreed that arbitration

would resolve their disputes, no matter how messy. This court will not step in to clean it up and

risk making it worse." (Docket Entry No. 51 at 3).

As to items (5) and (6) on the list of issues raised by the Feldman and Capstone Parties,

this court has also already determined that the parties' arbitration Agreement called for multiple

arbitrators and that the arbitrators could decide how to proceed.  "The fastest, most efficient, and

most timely way to conclude these various arbitrations, despite the parties' best efforts to thwart

those goals and distort the process, is a procedural decision best left to the arbitrators to decide."

(Docket Entry No. 51 at 2–3).  The arbitrators decided that multiple arbitrations could and would

proceed, and they did.

That leaves items (3), (4), and (7).  The third ground for vacatur asserted by the Feldman

and Capstone Parties is that Judge Jones was partial to the Doctors because he had received two

tickets to a football game from someone who happened to be a work colleague of a non-party witness. Thousands of these tickets had apparently been given out for free by one of the universities playing in the game. (Docket Entry No. 72-17 at 8 (Judge Jones Order)). Judge Jones considered the objection to his partiality at length. (*Id.*). The court agrees with Judge Jones that the Feldman and Capstone Parties "fail[] to meet the stern standard for evident partiality" and that the "objection merely raises a trivial, attenuated, and speculative relationship between the Arbitrator," the witness, and the witness's colleague. (*Id.*). Judge Jones did not have a duty to disclose such immaterial information. *See Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 146 (4th Cir. 1993) ("It is well established that a mere appearance of bias is insufficient to demonstrate evident partiality.").

Even if Judge Jones should not have accepted the tickets or should have disclosed that fact to guard against even a remote risk of appearing partial, his failure to do so is not a ground for vacatur, given the attenuated nature of the connection. *See Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 282–83 (5th Cir. 2007) ("[N]ondisclosure alone does not require vacatur of an arbitral award for evident partiality. An arbitrator's failure to disclose must involve a significant compromising connection to the parties.").

The fourth and seventh grounds are similarly without merit. The Agreement placed the determination of issues regarding arbitrability solely within the discretion of the arbitrator. Judge Jones had the exclusive authority to determine which issues were properly before him, including the preclusive effect of earlier arbitrations and whether a class-wide arbitration would proceed. "[T]he Agreement incorporates the AAA rules for arbitration. Those provisions strongly indicate that the parties bargained for the arbitrator to decide class arbitrability." *Sun Coast Res., Inc. v. Conrad*, 956 F.3d 335, 338 (5th Cir. 2020).

Finding no basis to vacate the Jones Award, the court "must" confirm it.  9 U.S.C. § 9.

"There is nothing malleable about 'must grant,' which unequivocally tells courts to grant

confirmation in all cases, except when one of the 'prescribed' exceptions applies."  *Hall St.*

*Assocs.*, 552 U.S. at 587.  The motion to confirm the Jones Award is granted.  The motion to vacate

is denied.

### iii.    The Glasser Award

The Doctors and Doctor Entities seek to vacate the Glasser Award on two grounds:

Arbitrator Glasser (1) exceeded his powers, or so imperfectly exceeded them that a
mutual, final, and definite award upon the subject matter was not made or so
imperfectly exceeded them that a mutual, final, and definite award upon the subject
matter was not made, and (2) demonstrated evident partiality.

(Docket Entry No. 92-1).  As to the first ground, the Doctors and Doctor Entities claim that

Mr. Glasser was improperly appointed because he invalidly divested jurisdiction from Judge

Medley.  The court notes that Judge Medley determined that he no longer had jurisdiction after the

appointment of Mr. Glasser as the arbitrator.  The court has already addressed this jurisdictional

argument and does not find it to be an appropriate basis for vacatur.

The second issue raised by the Doctors and Doctor Entities is that Mr. Glasser obstructed

Judge Jones's rulings on class arbitration by reaching an inconsistent result on the class arbitration

issue.  Mr. Glasser found that the Agreement did not allow for class arbitration; Judge Jones found

that it did.  The mere fact of inconsistency is not a basis to vacate one or both Awards, *see* 9 U.S.C.

§ 10, and the Doctors have not identified another basis for that relief.

Finding no basis to vacate the Glasser Award, the court "must" confirm it.  *Id.* § 9.  The

motion to confirm the Glasser Award is granted.  The motion to vacate is denied.

### iv.    The Baker Award

The court held a hearing on November 18, 2022, on the motions addressed in this memorandum and order.  (Docket Entry No. 143).  At that hearing, the court indicated that the Feldman and Capstone motion to vacate the Baker Award should be denied as not ripe because no party had sought to confirm that Award.  (*Id.*).  The parties had, however, thoroughly briefed the issues and asked the court to resolve them.  Having reviewed the motion and applicable case law further, the court now denies the motion on the merits.

The Feldman and Capstone Parties sought to vacate Judge Baker's award on one ground, that "the arbitrator exceeded her powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  (Docket Entry No. 96).  They argue that "the Baker Award must fall because at the time she issued her award, she was not the designated decisionmaker under the parties' arbitration agreements.  Under those agreements, only one arbitrator shall resolve any one 'dispute' at any one time."  (Docket Entry No. 96-1 at 6 (emphasis omitted)).

The court has already addressed these arguments in the jurisdictional section of this opinion.  The Agreements did allow for more than one arbitrator at a time.  For the reasons stated in the jurisdictional section of this opinion, the motion to vacate the Baker Award is denied.  Judge Baker did not lack jurisdiction to issue her Award.

### v.    The Kutcher Awards

At the November 18, 2022, hearing, the court also indicated that the motion to vacate the Kutcher Awards was not ripe because no party to the arbitration had sought to confirm the award.  (Docket Entry No. 143).  Again, the parties had thoroughly briefed the issues and asked the court to resolve them.  Having reviewed the motion and applicable case law further, the court now denies this motion on the merits.

The Feldman and Capstone Parties seek to vacate the Kutcher Awards on six grounds:

(1) Mr. Kutcher exceeded his powers because his appointment was invalid and contrary to the express terms of the arbitration agreement.

(2) The Kutcher Awards irreconcilably conflicts with the Glasser Award.

(3) The Kutcher Awards decided the rights and liabilities of non-parties to the arbitration, including PoolRe and non-party pool participants.

(4) Mr. Kutcher exceeded his authority when he acted in conjunction with other arbitrators and not as a "single arbitrator," as mandated by the parties' Agreement.

(5) Mr. Kutcher displayed his evident partiality by failing to disclose certain aspects of his professional and personal relationship with the Doctors and their counsel.

(6) Mr. Kutcher exceeded his powers when he ordered the production of files belonging to nonparty clients of The Feldman Law Firm LLP without affording those nonparties due process.

(Docket Entry No. 95-1 at 8 (emphases omitted)).  Jeff Carlson joins in these arguments to vacate the Kutcher Awards.  (Docket Entry No. 98).

The court has already addressed items (1), (2), and (4) in this list of issues.  The first ground for vacatur is identical to the grounds presented in the motions to vacate the Jones Award and Baker Award: "the Kutcher Award[s] must fall because [the Doctors] failed to follow the mandatory arbitrator selection procedures set forth in the parties' arbitration agreement. Under that agreement, only one arbitrator shall resolve any 'dispute' at any one time."  (Docket Entry No. 95-1 at 7 (emphasis omitted)).   Again, the court has already addressed these arguments in the jurisdictional section.  For the reasons stated in that section, this ground to vacate the Kutcher Awards is denied.  Mr. Kutcher did not lack jurisdiction.  Similarly, the court has already determined that the Engagement Letter contemplated multiple arbitrations, and that inconsistency alone was not a valid ground for vacatur of all or any of the resulting Awards.

That leaves items (3), (5), and (6).  As to item (3), the Kutcher Awards did not improperly decide the rights of nonparties because the Awards directed only the defendants in this case to pay

damages.  In any event, the Feldman and Capstone Parties cannot raise a supposed injury to nonparties as a ground for vacatur.

As to item (5), the Feldman and Capstone Parties argue that Mr. Kutcher was partial to the Doctors because he had previously represented the Doctors' law firm.  Mr. Kutcher properly disclosed this information.  The AAA rules are clear that such a disclosure "is not an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence."  AAA R-17(c).  As to item (6), this is a procedural dispute that the arbitrator properly resolved.

The motion to vacate the Kutcher Awards is denied.

## IV.   Conclusion

The court has issued the following orders:

- The Feldman and Capstone Parties' motion to dismiss for lack of jurisdiction. (Docket Entry No. 86), is DENIED.

- The Doctors' motion to dismiss purported claims against PoolRe, (Docket Entry No. 90), is DENIED.

- The Feldman and Capstone Parties' motion to vacate the March 22, 2022, award of Caroline Baker, (Docket Entry No. 96), is DENIED.

- The Feldman and Capstone Parties' motion to vacate the March 22, 2022, and April 14, 2022, awards of Robert Kutcher, (Docket Entry No. 95), is DENIED.

- Jeff Carlson's motion to vacate the March 22, 2022, and April 14, 2022, awards of Robert Kutcher, (Docket Entry No. 98), is DENIED.

- The Doctors' motion to vacate the March 9, 2022, award of Mark Glasser, (Docket Entry No. 92), is DENIED.

- Jeff Carlson's motion to confirm the March 9, 2022, award of Mark Glasser, (Docket Entry No. 92), is GRANTED.

- The Feldman and Capstone Parties' motion to confirm the March 9, 2022, award of Mark Glasser, (Docket Entry No. 149), is GRANTED.

- The Doctors' motion to confirm the March 29, 2022, award of Charles Jones, (Docket Entry No. 72) is GRANTED.

- The Feldman and Capstone Parties' motion to vacate the March 29, 2022, award of Charles Jones, (Docket Entry No. 87), is DENIED.

- Jeff Carlson's motion to vacate the March 29, 2022, award of Charles Jones, (Docket Entry No. 87), is DENIED.

- The Feldman and Capstone Parties' motion for reconsideration, (Docket Entry No. 147), is DENIED as moot.

In accordance with the confirmed awards, the court grants judgment in favor of the Doctors and Class Members and against the Feldman Parties, finding the Feldman Parties jointly and severally liable to the Doctors and Class Members for: breaching fiduciary duties; committing professional malpractice; making fraudulent and negligent misrepresentations, fraud, and conversion; violating the Texas Deceptive Trade Practices Act; and violating RICO. The Feldman Parties take nothing and their claims, affirmative defenses, and all relief they sought is rejected and dismissed, with prejudice.

The Feldman and Capstone Parties are liable to, and must pay, the Doctors and the Doctor Entities a total amount of $70,336,224.60, exclusive of attorneys' fees and costs; pre-judgment interest; and post-judgment interest. Because Judge Jones already awarded attorney's fees and the court has confirmed his Award, the Feldman and Capstone Parties must also pay the Doctors and the Doctor Entities the attorneys' fees and costs the Doctors incurred in the arbitration proceedings, in the amount of $18,348,294.60.

The court imposes prejudgment interest at a rate of 5%, beginning to accrue on July 29, 2020, and ending on March 28, 2022. Consistent with Tex. Fin. Code § 304.003, the court awards the Doctors and the Doctor Entities post-judgment interest at a rate of 5%, beginning on March 29, 2022. Stewart Feldman and those in active concert with him cannot tender to the risk pool or pool participants for payment or reimbursement any portion of: (1) A.M.Y. Property & Casualty

Insurance Corp.'s claims; (2) the legal fees and expenses incurred in the Judge Dorfman arbitration, the arbitration proceedings, other related arbitrations or proceedings in state or federal court, and state bar proceedings; or (3) any damages award issued in the arbitration proceedings addressed in this memorandum and opinion.

Judgment for the Doctors and Doctor Entities will be entered separately.  Counsel for the Doctors and Doctor Entities must submit a proposed order to reflect and implement the relief granted and denied in this Memorandum and Opinion, no later than January 13, 2023.

SIGNED on December 19, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge