**In the United States District Court
Southern District of Texas
Houston Division**

| | |
|---|---|
| **Scott Sullivan,** *et al.*, <br> Plaintiffs, <br><br> v. <br><br> **Stewart A. Feldman,** *et al.*, <br> Defendants. | **Civil Action No.** <br><br> **4:20-cv-02236** <br><br> *Consolidated With* <br><br> **4:21-cv-00658** <br> **4:21-cv-00682** |

<u>**Jeff Carlson's Motion to Vacate Jones Phase II Award**</u>

# Table of Contents

Table of Contents ................................................................................................................... ii
Table of Authorities ............................................................................................................. iii
Index of Exhibits .................................................................................................................. iv
Nature and Stage of the Proceeding ..................................................................................... 1
Statement of Issues to be Ruled On ..................................................................................... 1
Notice of Joinder .................................................................................................................. 1
Background ........................................................................................................................... 1
Summary of the Argument ................................................................................................... 5
Discussion ............................................................................................................................. 6
I.  Carlson cannot be bound by the Jones Phase II Award because Carlson never agreed
    to arbitrate ...................................................................................................................... 6
II. Jones exceeded his authority by holding Carlson liable when Plaintiffs had not
    asserted any claims against Carlson .............................................................................. 9
III. Plaintiffs obtained the Jones Phase II Award through corruption, fraud, or undue
     means by pretending to dismiss all claims against Carlson to avoid an injunction in
     the State Court ............................................................................................................. 10
Conclusion .......................................................................................................................... 11

## Table of Authorities

***Case***                                                                 ***Page(s)***

*Bridas S.A.P.I.C. v. Turkmenistan*,
    345 F.3d 347 (5th Cir. 2003) .................................................................................. 7

*DK Joint Venture 1 v. Wyand*,
    649 F.3d 310 (5th Cir. 2011) ............................................................................... 6–7

*E.E.O.C. v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ............................................................................................ 5–6

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ................................................................................................ 1

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) .................................................................................................. 6

*Huckaba v. Ref-Chem, L.P.*,
    892 F.3d 686 (5th Cir. 2018) .................................................................................. 6

*Karaha Bodas Co. v. Negara*,
    364 F.3d 274 (5th Cir. 2004) ................................................................................ 10

*Lawlor v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    No. 19-cv-04145, 2019 WL 6253808 (E.D.N.Y. Nov. 22, 2019) .......................... 8

*PoolRe Ins. v. Organizational Strategies, Inc.*,
    No. 13-cv-01857, 2014 WL 1320188, at *19 (S.D. Tex. Mar. 31, 2014) .............. 8

*PoolRe Ins. v. Organizational Strategies, Inc.*,
    783 F.3d 256 (5th Cir. 2015) .................................................................................. 8


***Rule/Statute***                                                    ***Page(s)***

9 U.S.C. § 10 ................................................................................................................ 6, 9

9 U.S.C. § 11 ................................................................................................................... 8

Tex. Civ. Prac. & Rem. Code § 171.023 ........................................................................ 2

Tex. Civ. Prac. & Rem. Code § 171.087 ........................................................................ 6

Tex. Civ. Prac. & Rem. Code § 171.091 ........................................................................ 9

**Index of Exhibits**

**Exhibit No. 1:** Carlson Declaration

**Exhibit No. 2:** Agreement

**Exhibit No. 3:** Jones Phase I Award

**Exhibit No. 4:** August 23, 2020 Medley Demand

**Exhibit No. 5:** November 4, 2020 Transcript

**Exhibit No. 6:** State Court Petition

**Exhibit No. 7:** Temporary Restraining Order

**Exhibit No. 8:** State Court Response

**Exhibit No. 9:** November 30, 2020 Transcript

**Exhibit No. 10:** Temporary Injunction

**Exhibit No. 11:** First Motion for Dismissal

**Exhibit No. 12:** December 10, 2020 Medley Demand

**Exhibit No. 13:** Second Motion for Dismissal

**Exhibit No. 14:** Emergency Motion to Vacate

**Exhibit No. 15:** December 19, 2020 Jones Demand

**Exhibit No. 16:** December 23, 2020 Jones Demand

**Exhibit No. 17:** December 24, 2020 Jones Demand

**Exhibit No. 18:** January 6, 2021 Jones Demand

**Exhibit No. 19:** January 7, 2021 Jones Demand

**Exhibit No. 20:** January 15, 2021 Jones Demand

**Exhibit No. 21:** January 16, 2021 Jones Demand

**Exhibit No. 22:** January 20, 2021 Jones Demand

**Exhibit No. 23:** August 23, 2021 Transcript

**Exhibit No. 24:** Joint Answering Document

**Exhibit No. 25:** April 28, 2022 Transcript

**Exhibit No. 26:** Jones Phase II Award

v

**Nature and Stage of the Proceeding**

Arbitrator Judge Charles Jones issued a Phase II arbitration award (the "Jones Phase II Award") against Defendant Jeff Carlson. Carlson now moves to vacate that award.

**Statement of Issues to be Ruled On**

Carlson's asks the Court to vacate and/or modify the Jones Phase II Award under the Federal and Texas Arbitration Acts. The standard of review for these decisions is that findings of fact are accepted unless they are clearly erroneous, while conclusions of law are reviewed *de novo*. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947–48 (1995).

**Notice of Joinder**

Carlson hereby fully joins all arguments set forth in the Feldman and Capstone Parties' Motion to Vacate Judge Jones's "Phase II" Arbitration Award Under the Texas and Federal Arbitration Acts and the memorandum in support thereof. Carlson files this separate Motion to Vacate the Jones Phase II Award to highlight arguments that are unique to him but not to the other Defendants.

**Background**

At the time of the final hearing, Carlson was the President of Capstone Associated Services, Ltd. ("CAS"). Exhibit 1, Carlson Declaration. On December 7, 2015, most of the parties to this lawsuit, including CAS, signed a certain Joint Engagement Letter (the "Agreement"). Exhibit 2, Agreement. But Carlson neither signed nor was a party to the Agreement. *See id.* at 1–2, 11–12. In fact, Carlson was not even employed by CAS at the time it signed the Agreement. Exhibit 1, Carlson Declaration.

Judge Jones has conceded that the arbitration in question was conducted pursuant to the December 7, 2015 Joint Engagement Letter (the "Agreement"). Exhibit 3, Jones Phase I Award at 2. But Carlson is not a party to the Agreement. Instead, the Agreement is solely between the Feldman Law Firm, Capstone Associated Services (Wyoming) Limited partnership, and CAS, on the one hand; and the various Plaintiffs, on the other hand. Exhibit 2, Agreement at 1–2, 11–12.

1

Plaintiffs initiated an arbitration before Judge Lloyd Medley (the "Medley Arbitration") in August 2020. Exhibit 4, August 23, 2020 Medley Demand. Plaintiffs' initial demand asserted claims against, *inter alia*, Carlson and other individual defendants who were also not parties to the Agreement. *Id.* at 3–4. Carlson timely objected that he could not be required to arbitrate because he was not a party to the Agreement. Exhibit 5, November 4, 2020 Transcript at 89:23–90:9.

The Texas Arbitration Act allows a Texas court to stay an arbitration conducted in the absence of an agreement to arbitrate. Tex. Civ. Prac. & Rem. Code § 171.023(a). Citing this statute, Carlson and the other non-signatories respondents filed a petition in a Texas state district court (the "State Court") on November 19, 2020 seeking an order staying the Medley Arbitration. Exhibit 6, State Court Petition at 18–19. The State Court immediately entered a temporary restraining order staying the Medley Arbitration "pending determination of the arbitrability of claims against non-signatories" and setting a temporary-injunction hearing. Exhibit 7, Temporary Restraining Order at 2–3.

Prior to the temporary injunction hearing, Plaintiffs argued that Carlson's complaint was "moot" because of "the attached Notice of Partial Dismissal to be filed in the Judge Medley Arbitration immediately upon an Order from this Court and [*sic*] denying the request for temporary injunction." Exhibit 8, State Court Response at 1. At the ensuing temporary injunction hearing, Plaintiffs informed the State Court that they "are going to . . . drop the individual—the individuals as defendants in the arbitration, which I believe then, largely, if not completely, moots" the argument for a stay. Exhibit 9, November 30, 2020 Transcript at 5:7–14. When asked when Plaintiffs planned to dismiss Carlson, they responded "[a]s soon as we are permitted to file it, we'll file it and proceed with the arbitration." *Id.* at 6:6–7. The State Court ultimate granted the temporary injunction "to the extent of staying the Medley Arbitration as to the individual parties only." Exhibit 10, Temporary Injunction. Thus, Plaintiffs had the option to (a) dismiss all claims against Carlson and continue arbitrating against the

other defendants, (b) keep all claims against Carlson while abiding by the stay, or (c) continue arbitrating claims against Carlson and be held in contempt by the State Court for violating its injunction.

True to their word, Plaintiffs filed a Motion for Voluntary Partial Dismissal Without Prejudice on December 7, 2020 in which Plaintiffs "respectfully request[ed] that this [Judge Medley] dismiss without prejudice Claimants' . . . claims asserted against Jeff Carlson . . . ." Exhibit 11, First Motion for Dismissal at 1. Three days later, Plaintiffs amended their arbitration demand before Medley to omit any claims against Carlson or the other nonsignatory individual respondents. Exhibit 12, December 10, 2020 Medley Demand at 3. For the avoidance of doubt, Plaintiffs filed another Motion for Voluntary Dismissal Without Prejudice on December 16, 2020 with Medley "respectfully request[ing] that [Medley] dismiss without prejudice Claimants' claims asserted against Jeff Carlson . . . ." Exhibit 13, Second Motion for Dismissal at 1. Plaintiffs emphasized and readily admit that (1) "Respondents have asserted that the Individual Respondents," including Carlson, "**have not agreed to arbitrate with Claimants**" and thus had requested a stay in the State Court and (2) Plaintiffs were dismissing Carlson "[i]n order to prevent further delay or interference with this arbitration, and to moot an issue between the parties . . . ." *Id.* at 2 (emphasis added). Finally, Plaintiffs later told the State Court that Carlson was no longer a party to the Medley Arbitration. Exhibit 14, Emergency Motion to Vacate at 3 n.5.

Plaintiffs began yet another arbitration (the "Jones Arbitration") before Judge Charles Jones in December 2020. Exhibit 15, December 19, 2020 Jones Demand. The Jones Demand has a section specifically identifying the "Parties" to the arbitration. *Id.* at 1–4. This demand did not list Carlson as a party/respondent. *Id.* at 3–4. Nor does the Jones Demand assert any claims against Carlson. Judge Medley admittedly lost jurisdiction due to a four-month time limit set in the Agreement. Plaintiffs thus purportedly re-filed their Medley claims in the Jones Arbitration. Exhibit 16, December 23, 2020 Jones

3

Demand. The original demand submitted to Judge Jones by Plaintiffs likewise did not list Carlson as a party/respondent or assert any claims against him. *Id.* at 3–4. In fact, none of the subsequent amended demands submitted in the Jones Arbitration listed Carlson as a party/respondent or asserted any claims against him. *See* Exhibit 17, December 24, 2020 Jones Demand at 2–3; Exhibit 18, January 6, 2021 Jones Demand at 2–3; Exhibit 19, January 7, 2021 Jones Demand at 3–4; Exhibit 20, January 15, 2021 Jones Demand at 3–4; Exhibit 21, January 16, 2021 Jones Demand at 3–4; Exhibit 22, January 20, 2021 Jones Demand at 3–4.

As the Court is aware, this dispute eventually involved four overlapping arbitrations before four different arbitrators. Exhibit 1, Carlson Declaration. To save time, the four arbitrators presided over a single final hearing. *Id.* Because Carlson was properly a ***voluntary*** party to one of these arbitrations (the so-called "Glasser Arbitration")—not to mention a critical fact witness in all four arbitrations—Carlson necessarily participated in that joint final hearing. *Id.*

As a demonstration as to how Carlson came to be a voluntary party in one arbitration, while only being a witness in another, at the final hearing, one of the arbitrators asked Plaintiffs' counsel whether "you all [are] still maintaining any action against Mr. Carlson personally[.]" Exhibit 23, August 23, 2021 Transcript at 5501:17–23. Plaintiffs' counsel responded that they were still suing Carlson individually, but he "can't tell you off the top of my head right now" in which specific arbitrations those claims were asserted. *Id.* at 5502:6–8. Carlson's counsel specifically indicated that he did not believe Carlson was a party to the Jones Arbitration, and Judge Jones himself noted "I haven't seen his name and I go through it on a regular basis . . . ." *Id.* at 5503:1–3.

Judge Jones issued his final award (the "Jones Phase I Award") on March 29, 2022. Exhibit 3, Jones Phase I Award. In it, Jones inexplicably identified Carlson when he listed the respondents to the proceeding. *Id.* at 18. Following-through on his erroneous belief that Carlson was a respondent, Jones

4

then found Carlson personally liable to Plaintiffs for approximately $88 million. *Id.* at 139–40. Jones likewise improperly included Carlson in his Phase II Award awarding additional class-related damages against Carlson for over $30 million more. Exhibit 26, Jones Phase II Award. Carlson now asks the Court to vacate the Jones Phase II Award.

## Summary of the Argument

An arbitrator exceeds his or her authority by issuing an award against a party that did not agree to arbitrate. Carlson is not a party to the Agreement with Plaintiffs or with any of the class members. Carlson never consented to arbitrate either Plaintiffs' or the class members' claims before Judge Jones. The Court must vacate the Jones Phase II Award.

An arbitrator cannot decide a matter not submitted to him or her. Carlson was not a party to the Agreement, so Carlson sought and obtained an injunction in the State Court barring Plaintiffs from proceeding with any claims against Carlson in the Medley Arbitration. Plaintiffs informed Judge Medley, and promised the State Court, they would dismiss Carlson, and Plaintiffs purportedly complied with that promise by filing a motion to dismiss in the Medley Arbitration and by filing numerous amended demands in the Medley and Jones Arbitration omitting any claims against Carlson. By the time of the final hearing, Plaintiffs had no pending claims against Carlson in the Jones Arbitration and thus could not have submitted the issue of Carlson's possible liability to Jones. The Court should vacate the Jones Phase II Award to remove any purported relief awarded against Carlson because Carlson never consented to arbitrate.

Moreover, a party cannot obtain an enforceable arbitration award through fraud, corruption, or undue means. To the extent Plaintiffs argue that they in fact have always maintained their unpleaded claims against Carlson, Plaintiffs were only able to pursue those claims by lying to the State Court and to Carlson. Therefore, an additional ground exists to have this Court vacate the Jones Phase II Award.

5

**Discussion**

I. **Carlson cannot be bound by the Jones Phase II Award because Carlson never agreed to arbitrate.**

Both the Federal Arbitration Act ("FAA") and Texas Arbitration Act ("TAA") requires a court to vacate if an arbitration exceeds his or her powers such as by adjudicating an arbitration without an agreement to arbitrate. 9 U.S.C. § 10(a)(4); Tex. Civ. Prac. & Rem. Code § 171.087(a)(3)(A), (4). Arbitration is purely a creature of contract. Thus, the Federal Arbitration Act ("FAA") "directs courts to place arbitration agreements on equal footing with other contracts, but it "does not require parties to arbitrate when they have not agreed to do so." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293–94 (2002). This is because "[i]t goes without saying that a contract cannot bind a nonparty." *Id.* at 294. Thus, "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 94 (2002). This is true even when an arbitration agreement allows an arbitrator to determine his or her own jurisdiction. This is because, if the party did not agree to arbitrate in the first place, that party did not agree to defer to the arbitrator's jurisdictional determination. *See DK Joint Venture 1 v. Wyand*, 649 F.3d 310, 317 (5th Cir. 2011).

"Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). The Agreement applies Texas law. Exhibit 2, Agreement at 10. "Texas has no presumption in favor of arbitration when determining whether a valid arbitration agreement exists." *Huckaba*, 892 F.3d at 688. Under Texas law, a non-signatory will only be bound to an agreement to arbitrate "when rules of law or equity would bind them to the contract generally." *In re Labatt Food Serv.*, 279 S.W.3d 640, 643–44 (Tex. 2009). Carlson had no agreement to arbitrate with either Plaintiffs or the class members, and Judge Jones was accordingly powerless to enter any award against Carlson.

6

Carlson expects Plaintiffs to argue that Carlson can be required to arbitrate because the Agreement requires arbitration of a dispute between Plaintiffs and CAS, "including [its] employees, officers, and directors . . . ." Exhibit 2, Agreement at 3. But the Fifth Circuit already rejected this exact argument in *DK Joint Venture 1*, 649 F.3d at 310. In that case, the plaintiffs entered contracts with several companies, and those contracts contained arbitration agreements. *Id.* The plaintiffs then initiated arbitration proceedings against the companies as well as their CEO and CFO, Weyand and Thiessen. *Id.* The plaintiffs argued that, because the arbitration agreements applied to "affiliates" of the companies, it necessarily included Weyand and Theissen. *Id.* at 318. The Fifth Circuit rejected this argument as "the defendant corporations lacked the authority to bind Weyand and Thiessen personally." *Id.* at 319. This was because "under traditional agency principles, unless the agent agrees to be personally bound, the only other way an agent can be bound by the terms of a contract is if she is made a party to the contract by her principal acting on her behalf with actual, implied, or apparent authority." *Id.* Such is not the case here where, as noted above, Carlson was not an employee of CAS when the Agreement was executed in 2015. Exhibit 1, Carlson Declaration.

Carlson further expects Plaintiffs to argue that Carlson can be required to arbitrate because he previously compelled arbitration of a related dispute before a different arbitrator (*i.e.*, Judge Baker before she was divested by Defendants by subsequently submitting the parties' disputes to Glasser). But, again, the Fifth Circuit rejected that same argument in *DK Joint Venture 1*, 649 F.3d at 310. In that case, a different plaintiff sued Weyand, and Weyand successfully compelled arbitration under identical contracts to the ones at issue in *DK Joint Venture 1*. *Id.* at 318. The Fifth Circuit rejected the argument, however, because "it matters whether the party resisting arbitration is a signatory or not." *Id.* Thus, a non-party has the right to enforce an arbitration agreement against a signatory in some contexts while reserving the right to resist arbitration in others. *See id.* Put another way, Plaintiffs

7

signed an arbitration agreement, so it is easier for Carlson to compel them to arbitration than for Plaintiffs to compel a non-signatory such as Carlson to arbitrate.

Finally, Carlson expects Plaintiffs to argue that Carlson can be required to arbitrate under the doctrine of equitable estoppel. But the Fifth Circuit has unambiguously held that equitable estoppel applies only to parties to agreements to arbitrate; it has no application to non-signatories such as Carlson who asserted no affirmative claims in either the Medley or Jones arbitrations. *See Bridas S.A.P.I.C. v. Turkmenistan*, 345 F.3d 347, 360–61 (5th Cir. 2003).

In the instant case, Judge Jones himself agrees that the Jones Arbitration was conducted pursuant to the Agreement. Exhibit 3, Jones Phase I Award at 2. But it is not disputable that Carlson was not a party to the Agreement. Exhibit 2, Agreement at 1–2, 11–12. Accordingly, Carlson timely objected to his inclusion in the Medley Arbitration (which later became the Jones Arbitration). Exhibit 5, November 4, 2020 Transcript at 89:23–90:9. Jones further acknowledged on the record that all objections to his jurisdiction had been preserved and did not need to be repeated in the future. Exhibit 25, April 28, 2022 Transcript at 222:25–23:15. Thus, Carlson cannot be bound by the Jones Phase II Award.

When an arbitrator resolves an arbitration involving some signatories who agreed to arbitrate and nonsignatories who did not, the nonsignatories can "taint[] the entire process" by affecting the final award. *PoolRe Ins. v. Organizational Strategies, Inc.*, No. 13-cv-01857, 2014 WL 1320188, at *19 (S.D. Tex. Mar. 31, 2014), *aff'd*, 783 F.3d 256 (5th Cir. 2015). In *PoolRe*, this "taint" occurred because an arbitrator awarded a "lump sum" in damages to signatory and nonsignatory claimants. 783 F.3d at 265–66. That lump sum was not "easily divisible" by a district court seeking piecemeal revision of the award, so the court properly vacated the award in its entirety.

In the instant case, Jones awarded a lump sum against both signatories (*i.e.*, the Feldman Parties and the Capstone Parties) and the nonsignatory Carlson. Thus, there is no neat and clear method through which the Court can excise Carlson from the Jones Phase II Award without disturbing the underpinnings for the Feldman and Capstone Parties' liabilities thereunder. Jones lumped all of the Feldman Parties, the Capstone Parties and Carlson together with the end result being that there is no way to separate out their respective conduct and liabilities. Accordingly, all aspects of the Jones Phase II Award are impermissibly tainted by the unlawful inclusion of Carlson, so—just as in *PoolRe*—the correct remedy for this Court is to vacate the Jones Phase II Award in its entirety.

**II.     Jones exceeded his authority by holding Carlson liable when Plaintiffs had not asserted any claims against Carlson.**

The FAA directs the Court to modify or vacate an arbitration award "[w]here the arbitrators have awarded upon a matter not submitted to them . . . ." 9 U.S.C. § 11(b). *See also* Tex. Civ. Prac. & Rem. Code § 171.091(a)(2). "A matter is considered 'submitted' where it was placed before the arbitrator for adjudication under circumstances which afforded the parties adequate notice." *Lawlor v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 19-cv-04145, 2019 WL 6253808, at *2 (E.D.N.Y. Nov. 22, 2019).

As noted above, Plaintiffs voluntarily dismissed Carlson during the Medley Arbitration to avoid an injunction from the State Court, then Plaintiffs filed numerous demands for arbitration in the Medley and Jones Arbitrations that did not name Carlson as a party, nor did they assert any claims against Carlson. This led Carlson to not even file an answer in the Jones Arbitration. *See* Exhibit 24, Joint Answering Document. At the final hearing, Plaintiffs could not even say whether they were still asserting claims against Carlson in the Jones Arbitration. August 23, 2021 Transcript at 5501:17–5503:1–3. Carlson thus did not understand that he was a respondent or faced any pending claims or potential liability in Jones Arbitration. Exhibit 1, Carlson Declaration.

9

These facts combined to deprive Carlson of any notice that he was, in fact, a purported respondent in the Jones Arbitration.[1] Because the claims against Carlson were not presented in a manner providing Carlson with notice and opportunity to respond or allow him to seek judicial relief as provided under the Texas Arbitration Act, the Jones Phase II Award unquestionably provides relief on matters not submitted to the arbitrator. Thus, under the FAA, the Court should modify or vacate the Jones Phase II Award to omit any purported relief awarded against Carlson. And, as discussed above, Carlsons's inclusion irreparably tainted the entire proceeding. Carlson thus further asks that the Court vacate or modify the Jones Phase II Award to remove all other parties' liabilities shared jointly and severally with Carlson.

### III. Plaintiffs obtained the Jones Phase II Award through corruption, fraud, or undue means by pretending to dismiss all claims against Carlson to avoid an injunction in the State Court.

Finally, the FAA allows vacation of an arbitration award "procured by corruption, fraud, or undue means[.]" 9 U.S.C. § 10. As explained above, Carlson used his non-signatory status to obtain a temporary restraining order in the State Court barring Plaintiffs from prosecuting the Medley Arbitration. Exhibit 7, Temporary Restraining Order. Carlson then obtained a temporary injunction "staying the Medley Arbitration as to the individual parties"—*i.e.*, Carlson. Exhibit 10, Temporary Injunction. Plaintiffs were only able to continue pursuing the Medley Arbitration (and, by extension, the Jones Arbitration) because Plaintiffs purported to have dismissed all claims against Carlson. This was later confirmed by Jones at the final hearing when he noted that he had not seen Carlson's name come across his desk in a manner that would indicate that Carlson was a party/respondent in his

---

[1] This lack of notice of any claims against him further deprived Carlson of his due process right to notice and a meaningful opportunity to be heard—and should be vacated accordingly. *See Karaha Bodas Co. v. Negara*, 364 F.3d 274, 299 (5th Cir. 2004) ("A fundamentally fair hearing is one that meets the minimal requirements of fairness—adequate notice, a hearing on the evidence, and an impartial decsion [*sic*] by the arbitrator.").

10

arbitration. Transcript at 5503:1–3 ("I haven't seen his name and I go through it on a regular basis . . . .").

As explained above, Carlson believes Plaintiffs were telling the truth: they promised to dismiss claims against Carlson and then, in fact, dismissed them. But if Plaintiffs now argue that they secretly maintained claims against Carlson all along, then Plaintiffs lied to the State Court and lied to Carlson in order to avoid being held in contempt for violating the State Court's Temporary Injunction.

If Plaintiffs are now willing to tell the Court that they lied in order to obtain an award against Carlson, the Court should not reward those lies by confirming the Jones Phase II Award. To the extent Plaintiffs in fact submitted claims to Judge Jones against Carlson, Plaintiffs deceptively violated the State Court's injunction and thus engaged in corruption, fraud, or undue means. This mandates vacation of the Jones Phase II Award.

**Conclusion**

Carlson did not agree to arbitrate Plaintiffs' or the class members' claims. Carlson raised this argument by seeking an injunction in the State Court, and Plaintiffs mooted that injunction by (1) filing motions to dismiss Carlson from the Medley Arbitration and (2) filing numerous demands in the Medley and Jones Arbitrations that did not list Carlson as a party/respondent or assert any claims against Carlson. Plaintiffs thus recognized from the beginning that Carlson was not bound to arbitrate, yet they now seek to hold Carlson to an arbitration award against him anyway (or, in the alternative, Plaintiffs simply lied about dismissing Carlson so that they could flaunt the State Court's injunction without consequence). The Court should vacate and/or modify the Jones Phase II Award and grant Carlson all other relief to which he is entitled.

Respectfully Submitted,

**Meade Neese & Barr LLP**

*/s/ Andrew K. Meade*
Andrew K. Meade
Texas Bar No. 24032854
Samuel B. Haren
Texas Bar No. 24059899
2118 Smith Street
Houston, Texas 77002
(713) 355-1200
ameade@mnbllp.com
sharen@mnbllp.com

**Attorneys for Jeff Carlson**

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record by electronic service on January 30, 2023.

*/s/ Samuel B. Haren*
Samuel B. Haren