UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SCOTT SULLIVAN, et al. | § | CIV. ACT. NO.  4:20-cv-02236 |
| Plaintiffs, | § | |
| | § | CONSOLIDATED WITH 2021-cv-0658 |
| | § | AND 2021-CV-0682 |
| | § | |
| | § | JUDGE LEE H. ROSENTHAL |
| VS. | § | |
| | § | JURY TRIAL REQUESTED |
| STEWART A. FELDMAN, et al. | § | (9 U.S.C. § 4) |
| Defendants. | § | |

THE DOCTORS' (1) OPPOSITION TO THE FELDMAN PARTIES' MOTIONS TO
VACATE JUDGE JONES' PHASE TWO AWARD; AND (2) CROSS-MOTION TO
CONFIRM JUDGE JONES' PHASE TWO AWARD

**Table of Contents**

Table of Contents ........................................................................................................... i

Table of Authorities ..................................................................................................... ii

I.     This Court should confirm Judge Jones' Phase Two Award for the same reasons that the Court confirmed the Phase One Award. .................................................. 1

II.    This Court should defer to Judge Jones' class rulings. ..................................... 3

III.   Judge Jones correctly decided that the Family, Logistics, Prosthesis, Generative, and Counsel Parties were properly part of the class. ....................................... 4

       A.     Judge Jones correctly decided that the Family and Logistics Parties were part of the class. ................................................................................ 5

       B.     Judge Jones correctly decided that the class claims of the Generative, Prosthesis, and Counsel Parties were part of the Class. ......................... 7

IV.   Judge Jones afforded the parties ample due process. ...................................... 9

V.    The Glasser Award has no bearing or effect upon Judge Jones' Phase Two Award. ......................................................................................................... 15

VI.   Jeff Carlson does not present any argument warranting vacatur of the Phase Two Award. ........................................................................................... 16

VII.  Conclusion ................................................................................................. 17

Certificate of Service ................................................................................................. 18

Certificate of Conference .......................................................................................... 18

## Table of Authorities

Page(s)

### Cases

*Ames v. Kippel*
  204 F.3d 1115, 1999 WL 1328072 (5th Cir. 1999) ....................................................3

*Burrow v. Arce*
  997 S.W.2d 229 (Tex. 1999)....................................................................................14

*ERI Consulting Engineers, Inc. v. Swinnea*
  318 S.W.3d 867(Tex. 2010)....................................................................................13

*Executone Info. Sys., Inc. v. Davis*
  26 F.3d 1314 (5th Cir. 1994) .................................................................................2, 3

*Forsythe Int'l S.A. v. Gibbs Oil Co.*
  915 F.2d 1017 (5th Cir. 1990) ...................................................................................2

*Gulf Coast Indus. Workers Union v. Exxon Co.*
  991 F.2d 244 (5th Cir. 1993) .....................................................................................2

*In re Trans Chem. Ltd. & China Nat'l Mach. Import & Exp. Corp.*
  978 F. Supp. 266 (S.D. Tex. 1997) ...........................................................................2

*MSW Inv. Chevron USA, Inc.*
  140 F.3d 1038, 1998 WL 156391 (5th Cir. 1998) ...................................................3, 8

*OJSC Ukrnafta v. Capatsky Petroleum Corp.*
  957 F.3d 487 (5th Cir. 2020)* ....................................................................................9

*Psarianos v. Standard Marine, Ltd.*
  790 F. Supp. 134 (E.D. Tex. 1992), *aff'd*, 12 F.3d 461 (5th Cir. 1994) ..................2

*Solis v. Evans,*
  951 S.W.2d 44 (Tex. App.—Corpus Christi 2008, orig. proceeding) ...................5, 6

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*
  484 U.S. 29 (1987).................................................................................................3, 8

### Statutes and Rules

9 U.S.C. §§ 10, 11, 12..................................................................................................2

Fed. R. Civ. Proc. 10(c) ...............................................................................................2

The Doctors[1] respectfully ask this Court to (1) deny the Feldman Parties'[2] motions to vacate Judge Jones' Phase Two Award;[3] and (2) confirm the Phase Two Award, entering a judgment on all relief awarded therein.

## I.    This Court should confirm Judge Jones' Phase Two Award for the same reasons that the Court confirmed the Phase One Award.

This Court "compel[led] the parties to arbitrate … in the [] arbitration proceedings pending" before a number of arbitrators, including Judge Jones.[4] Judge Jones bifurcated his arbitration into two discrete phases.[5] In the Phase One Award, Judge Jones resolved (1) all claims asserted by the Doctors, in their individual capacities, against the Feldman Parties; and (2) all liability claims asserted by Class Members[6] against the Feldman Parties.[7] The Phase One Award left only the issue of quantifying Class Members' damages for Phase Two.[8]

In the Phase Two Award, Judge Jones quantified the damages of Class Members.[9] With the issuance of the Phase Two Award, Judge Jones' arbitration "concluded in its entirety."[10]

---

[1] The "Doctors" refer collectively to Dr. Scott Sullivan; Dr. Frank DellaCroce; St. Charles Surgical Hospital, LLC; St. Charles Holdings, LLC; Center for Restorative Breast Surgery; LLC, and Sigma Delta Billing, LLC.

[2] The "Feldman Parties" refer collectively to: (1) Stewart Feldman and The Feldman Law Firm, LLP (collectively, "Feldman"); (2) Capstone Associated Services, Ltd.; Capstone Associated Services (Wyoming) Limited Partnership; and Capstone Insurance Management, Ltd. (collectively, "Capstone"); and (3) Jeff Carlson.

[3] *See* Feldman and Capstone's Motion to Vacate Judge Jones' Phase Two Award (Doc. 163); Jeff Carlson's Motion to Vacate Jones Phase II Award (Doc. 164). The "Phase Two Award" refers to the Final Arbitration Award Phase Two issued by Judge Jones on November 1, 2022 (Doc. 141-1).

[4] *See* Memorandum and Order at pp. 3-4 (Doc. 57).

[5] *See* Phase Two Award at p. 1 (Doc. 141-1)

[6] "Class Members" are defined and identified in paragraphs 2 and 3, pages 3 through 9, of Judge Jones' Final Arbitration Award Phase One (Doc. 72-2).

[7] *See* Judge Jones' Phase Two Trial Plan and Scheduling Order at p. 2 (Doc. 103-2).

[8] *See id.*

[9] *See* Phase Two Award at p. 2 (Doc.141-1).

[10] *See id.*

The parties previously briefed and argued numerous issues concerning Judge Jones' jurisdiction, authority, class determinations, and arbitration in connection with the Doctors' motion to confirm, and the Feldman Parties' motions to vacate, the Phase One Award.[11] Rejecting the Feldman Parties' vacatur arguments, this Court issued a memorandum and opinion confirming the Phase One Award.[12] This Court correctly noted that "[j]udicial review of arbitrators' decisions is … 'extraordinarily narrow' and highly deferential" and that "when a party moves to confirm an award within one year of its issuance, 'the court *must* grant such an order unless the award is vacated, modified, or corrected as prescribed in Section 10 and 11'" of the FAA.[13]

This Court properly concluded that the Feldman Parties raised no ground upon which to vacate, modify, or correct the Phase One Award and, thus, confirmed it. The Court rejected the Feldman Parties' arguments under 9 U.S.C. § 10 that Judge Jones had "exceeded his powers" or was "guilty of misconduct," or that the award was "procured through corruption, fraud, or undue means."[14] These are the same grounds that the Feldman Parties again raise to challenge the Phase Two Award. For the same reasons this Court rejected those grounds before and confirmed the Phase One Award, this Court should reject those grounds again and confirm the Phase Two Award.

---

[11] The Doctors adopt all their briefing in support of the motion to confirm, and all their briefing in opposition to the motions to vacate, Judge Jones' Phase One Award. *See* Fed. R. Civ. Proc. 10(c); *see also* Doctors' Motion to Confirm Judge Jones' Phase One Award (Doc. 72); Doctor's Opposition to Jeff Carlson's Motion to Vacate Judge Jones' Phase One Award (Doc. 102); Doctors' Opposition to the Feldman Parties' Motion to Vacate Judge Jones' Phase One Award (Doc. 104).

[12] *See* Memorandum and Opinion at pp. 3, 30-34, 37-39 (Doc. 153). The "Phase One Award" refers to the partial Final Arbitration Award issued by Judge Jones on March 29, 2022 (Doc. 72-2).

[13] Memorandum and Opinion at pp. 19-20 (Doc. 153) (citing *In re Trans Chem. Ltd. & China Nat'l Mach. Import & Exp. Corp.*, 978 F. Supp. 266, 303 (S.D. Tex. 1997); *Forsythe Int'l S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, 1020 (5th Cir. 1990); *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994); *Gulf Coast Indus. Workers Union v. Exxon Co.*, 991 F.2d 244, 248 (5th Cir. 1993); *Psarianos v. Standard Marine, Ltd.*, 790 F. Supp. 134, 135 (E.D. Tex. 1992), *aff'd*, 12 F.3d 461 (5th Cir. 1994)).

[14] *See* 9 U.S.C. § 10.

## II.    This Court should defer to Judge Jones' class rulings.

Feldman and Capstone devote most of their motion to attacking Judge Jones' determinations as to 45 of the 141 Class Members (*i.e.*, the Family, Counsel, Logistics, Prosthesis, and Generative Parties).[15] The Feldman Parties do not specifically challenge Judge Jones' determinations as to the other 96 Class Members, including the Communication, HEC, Lumbar, Prosthesis, River, Stampings, Clear, XtraLight, and McAda Parties.[16]

As to the 45 Class Members specifically challenged, Feldman and Capstone contend that these Class Members allegedly agreed to have their claims decided by other arbitrators or waived the right to class participation.[17] Judge Jones expressly rejected these incorrect arguments in his well-reasoned award.[18] This Court should defer to the arbitrator's determinations, which "may not be reconsidered based on alleged errors of fact or law or misinterpretation of the contract."[19]

---

[15] *See* Feldman and Capstone's Memorandum at pp. 9-20 (Doc. 163-1). The Phase One Award (Doc. 72-2) defines and identifies the "Family Parties" on pages 8 and 9; the "Logistics Parties" on page 9; the "Counsel Parties" on page 5; the "Prosthesis Parties" on page 7; and the "Generative Parties" on page 6.

[16] The "Communication Parties," "Foundation Parties," "HEC Parties," "Lumbar Parties," "Prosthesis Parties," "River Parties," "Stampings Parties," "Clear Parties," "XtraLight Parties," and "McAda Parties" are defined and identified on pages 4 to 9 of the Phase One Award (Doc. 72-2).

[17] *See* Feldman and Capstone's Memorandum at pp. 9-20 (Doc. 163-1).

[18] *See* Phase Two Award at p. 49-59 (Doc. 141-1); *see also* Order on Feldman Parties' Objections and Response to Completed Questionnaires / Proofs at ¶ 17 (Aug. 18, 2022), attached as Exhibit 1.

[19] *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987); *MSW Inv. Chevron USA, Inc.*, 140 F.3d 1038, 1998 WL 156391, at *1 (5th Cir. 1998); *see also Ames v. Kippel*, 204 F.3d 1115, 1999 WL 1328072, at *2 (5th Cir. 1999); *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994).

This Court already concluded that the parties' arbitration agreements contain a broad delegation clause.[20] The Court explained that the arbitration agreement "placed the determination of issues regarding arbitrability solely within the discretion of the arbitrator" and that "*Judge Jones had the exclusive authority to determine which issues were properly before him*."[21] Judge Jones did precisely that and concluded that the class claims of the Family, Logistics, Prosthesis, Generative, and Counsel Parties were properly before him.[22] Judge Jones rejected the exact same arguments in arbitration that the Feldman Parties are improperly raising again here.[23] This Court should defer to Judge Jones' determinations as to what claims were before him and his resolution of those claims.[24]

## III.    Judge Jones correctly decided that the Family, Logistics, Prosthesis, Generative, and Counsel Parties were properly part of the class.

Even if deference were not owed to Judge Jones's decision, the result is the same because he was correct in rejecting Feldman and Capstone's argument that the Family, Logistics, Prosthesis, Generative, and Counsel Parties were ineligible for class participation.

---

[20] Memorandum and Order at p. 2 (Doc. 65). Judge Jones found that "[a] substantially similar, if not identical, arbitration clause exists between [the Feldman Parties] and each of the Class Members." *See* Phase One Award at p. 2, n. 3 (Doc. 72-2). For record completeness, the Doctors attach these engagement letters between Class Members and the Feldman Parties. *See* Family Parties' Engagement Letter, attached as Exhibit 2; Logistics Parties' Engagement Letter, attached as Exhibit 3; McAda Parties' Engagement Letter, attached as Exhibit 4; Clear Parties' Engagement Letter, attached as Exhibit 5; HEC Parties' Engagement Letter, attached as Exhibit 6; Stampings Parties' Engagement Letter, attached as Exhibit 7; Communication Parties' Engagement Letter, attached as Exhibit 8; Foundation Parties' Engagement Letter, attached as Exhibit 9; Generative Parties' Engagement Letter, attached as Exhibit 10; Lumbar Parties' Engagement Letter, attached as Exhibit 11; Prosthesis Parties' Engagement Letter, attached as Exhibit 12; Counsel Parties' Engagement Letter, attached as Exhibit 13; River Parties' Engagement Letter, attached as Exhibit 14; Illumination Parties' Engagement Letter, attached as Exhibit 15.

[21] *See* Memorandum and Opinion at p. 33 (Doc. 153) (emphasis added).

[22] *See* Phase Two Award at p. 49-59 (Doc. 141-1).

[23] *See id.*; *see also* Order on Feldman Parties' Objections and Response to Completed Questionnaires / Proofs at ¶ 17 (Aug. 18, 2022), attached as Exhibit 1.

[24] *See* Memorandum and Opinion at p. 19 (Doc. 153).

4

A.    **Judge Jones correctly decided that the Family and Logistics Parties were part of the class.**

Feldman and Capstone argue that a May 1, 2020 Settlement Agreement with the Logistics Parties and a March 31, 2020 Settlement Agreement with the Family Parties[25] immunize them from *future* claims arising from the Feldman Parties' fraudulent, criminal acts and conspiracies *post-dating the settlements*. This argument is contrary to Texas law and public policy, as Judge Jones correctly held.[26]

Judge Jones held that the Feldman Parties "knowingly participated in and executed a scheme whereby $3,354,925.37 of funds belonging to … their clients were improperly converted and used."[27] Judge Jones found that the Feldman Parties' first wrongful act of conversion occurred on July 3, 2020.[28] The Feldman Parties continued to make fraudulent wire transfers of their client's funds throughout the rest of 2020 and 2021.[29] The Feldman Parties committed these fraudulent and intentional acts of theft *after* the alleged settlement agreements with the Logistics and Feldman Parties were executed.

Judge Jones correctly held that any contractual provision in settlement agreements pre-dating the Feldman Parties' wrongful conversions could not preclude claims for those wrongful conversions as a matter of Texas law and public policy.[30] Judge Jones relied upon *Solis v. Evans*, where the Texas appellate court "found no authority for the proposition that a party may

---

[25] *See* Feldman Parties' Memorandum at pp. 13-18 (Doc. 163-1) (citing Family Parties' Settlement Agreement (Doc. 163-5); Logistic Parties' Settlement Agreement (Doc. 163-7)).

[26] *See* Phase Two Award at pp. 49-59 (Doc. 141-1).

[27] *See* Phase One Award at pp. 133-40, 175, 220, 226-28 (72-2).

[28] *See id.* at p. 133.

[29] *See id.* at pp. 133-37.

[30] *See* Phase Two Award at pp. 50-56 (Doc. 141-1); *see also* Order on Feldman Parties' Objections and Response to Completed Questionnaires / Proofs at ¶ 17 (Aug. 18, 2022), attached as Exhibit 1.

prospectively contractually exculpate itself with respect to intentional torts."[31] Such a contractual provision "would be contrary to public policy."[32] Judge Jones' ruling was legally correct and, regardless, is owed high deference from this Court.

Moreover, the Feldman Parties are wrong in contending that the Family and Logistics Parties' class claims relate to these prior settlement agreements. The Family and Logistics Parties' class claims arise from the attorney-client relationships with the Feldman Parties, as reflected in their respective engagement letters. These engagement letters all contain a "substantially similar, if not identical, arbitration clause" to the arbitration clause in the Doctors' engagement letter, as found by Judge Jones.[33] These engagement letters allow the parties' disputes to be "submitted to a recognized, neutral arbitral association or arbitrator" and state that: (1) "the issue of arbitrability shall … be decided by the arbitrator"; (2) the intent of the parties is "to divest the courts of all powers in disputes involving the parties"; (3) "courts shall have no jurisdiction over legal or equitable (including injunctive) matters;" and (4) the "arbitration decision shall be final and binding in all respects and shall be non-appealable."[34] Considering these broad arbitration clauses, Judge Jones did not exceed his powers in deciding which claims were before him.

---

[31] *See* Phase Two Award at pp. 50-56 (citing Order on Feldman Parties' Objections and Response to Completed Questionnaires / Proofs at ¶ 17 (Aug. 18, 2022), attached as Exhibit 1; *Solis*, 951 S.W.2d 44, 50 (Tex. App.—Corpus Christi 2008, orig. proceeding)).

[32] *See id.*

[33] *See* Phase One Award at p. 2, n. 3 (Doc. 72-2).

[34] *See* Family Parties' Engagement Letter at pp. Bates # Joint-421894 to 95, attached as Exhibit 2; Logistics Parties' Engagement Letter at Bates # Joint-421953 to 54, attached as Exhibit 3.

**B.    Judge Jones correctly decided that the class claims of the Generative, Prosthesis, and Counsel Parties were part of the Class.**

Feldman and Capstone incorrectly argue that Judge Jones exceeded his powers by concluding that the class included claims of the Counsel, Prosthesis and Generative Parties.[35] Again, this was a decision delegated to the arbitrator to make. The engagement letters between each of these Class Members and the Feldman Parties contains an extremely broad arbitration clause that is "substantially similar, if not identical," to the arbitration clause in the Doctors' engagement letter.[36] And under these extremely broad arbitration clauses, "Judge Jones had the exclusive authority to determine which issues were properly before him."[37]

Feldman and Capstone argue otherwise, relying upon December 7, 2020 agreements between (1) the Counsel Parties and non-party PoolRe;[38] (2) the Generative Parties and PoolRe,[39] as well as an alleged agreement with the Prosthesis Parties that Feldman and Capstone failed to attach to their motion.[40] But these agreements do not establish a waiver or bar of the class claims of these Class Members, as Judge Jones correctly concluded.[41]

---

[35] *See* Feldman and Capstone's Memorandum at pp. 18-19 (Doc. 163-1).

[36] *See* Phase One Award at p. 2, n. 3 (Doc. 72-2); Generative Parties' Engagement Letter at Bates # 422309 to 10, attached as Exhibit 10; Prosthesis Parties' Engagement Letter at Bates # 422419 to 20, attached as Exhibit 12; Counsel Parties' Engagement Letter at Bates # 422479 to 80, attached as Exhibit 13.

[37] *See* Memorandum and Opinion at p. 33 (Doc. 153).

[38] *See* Counsel Parties' General, Release, Settlement, and Indemnification Agreement (Doc. 163-8).

[39] *See* Generative Parties' General Release, Settlement, and Indemnification Agreement (Doc. 163-9).

[40] *See* Feldman and Capstone's Memorandum at p. 19 (Doc. 163-1). To the extent that Feldman and Capstone are relying upon the November 4, 2019 agreement involving the Prosthesis Parties, that reliance is misplaced for the same reasons that Judge Jones concluded that the claims of the Family, Logistics, Generative, and Counsel Parties were part of the class. *See* Phase Two Award at pp. 46-59 (Doc. 141-1).

[41] *See* Phase Two Award at pp. 56-59 (Doc. 141-1).

The Feldman Parties are not even defined as "Parties" to these agreements.[42] Instead, each of these agreements are between the captive insurance company affiliated with these Class Members and their respective insured affiliates. In other words, these agreements are by and between the Class Member groups "*internally with and amongst themselves.*"[43] These internal agreements do not purport to offer any benefits or releases to any of the Feldman Parties. It is implausible to suggest that these Class Members waived any rights against their lawyer, Feldman, and captive manager, Capstone, based on Class Members' own, internal agreements that do not list the Feldman Parties as parties.

In his well-reasoned Phase Two Award, Judge Jones rejected the exact same arguments concerning the Generative, Prosthesis, and Counsel Parties that the Feldman Parties raise here.[44] In the actual arbitration agreements between these Class Members and the Feldman Parties, the parties bargained for and authorized an arbitrator to make these decisions,[45] and "courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract."[46]

---

[42] *See* Counsel Parties' General, Release, Settlement, and Indemnification Agreement (Doc. 163-8); Generative Parties' General Release, Settlement, and Indemnification Agreement (Doc. 163-9).

[43] *See* Phase Two Award at p. 59 (Doc. 141-1) (emphasis added).

[44] *See id.* at pp. 56-59.

[45] *See* Generative Parties' Engagement Letter at Bates # 422309 to 10, attached as Exhibit 10; Prosthesis Parties' Engagement Letter at Bates # 422419 to 20, attached as Exhibit 12; Counsel Parties' Engagement Letter at Bates # 422479 to 80, attached as Exhibit 13.

[46] *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987); *MSW Inv. Chevron USA, Inc.*, 140 F.3d 1038, 1998 WL 156391, at *1 (5th Cir. 1998).

**IV.     Judge Jones afforded the parties ample due process.**

Judge Jones afforded the Feldman Parties a fundamentally fair hearing consistent with due process and the called-for AAA Commercial Arbitration Rules. Feldman and Capstone's assertions to the contrary are meritless.[47]

Citing *OJSC Ukrnafta v. Carpatsky Petroleum Corp.*, Feldman and Capstone argue that, "[i]n the arbitration context, due process entitles [them] 'to adequate notice, a hearing on the evidence, and an impartial decision.'"[48] But their reliance on *OJSC* is misplaced because *OJSC* interpreted due process under Article V(1)(b) of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, an article that did not govern this proceeding.[49]

More fundamentally, Judge Jones afforded due process to the Feldman Parties. The Feldman Parties had adequate notice of the final hearing. On April 28, 2022, Judge Jones issued the Phase Two Trial Plan and Scheduling Order, which set the final hearing to commence on October, 3, 2022.[50] On June 5, 2022, Judge Jones advised that the final hearing date had to be moved due to a conflict.[51] The Doctors then asked for a September hearing date, while the Feldman Parties asked for the hearing to take place either "October 6 or 7, 2022, or on November 2, 3, or 4, 2022" due to their scheduling conflicts.[52] Notably, Judge Jones sided with the Feldman Parties "in the interest of due process" and set a November 4, 2022 final hearing date.[53] On June 15, 2022, the final hearing date was amended to commence on "October 6, 2022" "*with the consent of all*

---

[47] Feldman and Capstone's Memorandum at pp. 21-25 (Doc. 163-1).

[48] *See id.* at p. 21 (citing *OJSC Ukrnafta v. Capatsky Petroleum Corp.*, 957 F.3d 487, 499 (5th Cir. 2020)).

[49] *See OJSC*, 957 F.3d at 499.

[50] *See* Phase Two Trial Plan and Scheduling Order (Apr. 28, 2022) (Doc. 103-2).

[51] *See* E-mail from Judge Jones (June 5, 2022, 22:15 CST), attached as Exhibit 16.

[52] *See* Amended Phase Two Trial Plan and Scheduling Order (June 13, 2022), attached as Exhibit 17.

[53] *See id.*

*parties*."[54] And the final hearing commenced on October 6, 2022, consistent with the Arbitrator's scheduling order and the parties' agreement.[55]

The Feldman Parties were also provided a full and fair opportunity to present their defenses and objections. The scheduling order provided numerous opportunities for the Feldman Parties to do so.[56] The parties extensively briefed and had numerous hearings before Judge Jones on all the objections raised by the Feldman Parties.[57] And Judge Jones afforded the Feldman Parties twenty hours of deposition, over the Doctors' original proposal for eight hours per side.[58] Judge Jones

---

[54] *See* Second Amended Phase Two Trial Plan and Scheduling Order (June 15, 2022) (emphasis added), attached as Exhibit 18.

[55] *Compare id.*, *with* Transcript of Phase Two Final Hearing, attached as Exhibit 31. While Feldman and Capstone complain that the hearing did not commence until 10:00 pm on October 6, 2022 due to flight cancellations outside the control of any of the parties or the arbitrator, Feldman and Capstone do not explain how that start time prejudiced them or benefitted the Doctors, which is denied. The parties were treated equally. Further, the commencement time for the final hearing is a procedural issue that is delegated to the arbitrator to decide. *Cf.* Memorandum and Opinion at p. 12 (Doc. 51) ("Courts distinguish between questions of arbitrability, which courts decide, and questions of procedure, which arbitrators decide.").

[56] *See* Phase Two Trial Plan and Scheduling Order at pp. 3-4 (Doc. 103-2) (providing deadlines for the Feldman Parties to submit: (1) objections to the form of the Class Member Questionnaire forms and sworn claim; (2) objections to the completed Class Member Questionnaires and sworn claim forms; expert reports; (3) pre-hearing briefs; (4) proposed awards; (5) post-hearing memoranda; (6) a final hearing; and (7) objections to the request for Class Representative compensation and fees and costs).

[57] *See, e.g.*, Feldman Parties' Objections to Completed Proof of Claim Forms (July 20, 2022), attached as Exhibit 19; Doctors' Reply to the Feldman Parties' Objections to Completed Proof of Claim Forms (July 25, 2022), attached as Exhibit 20; Feldman Parties' Supplemental Objections to Completed Proof of Claim Forms (Aug. 8, 2022), attached as Exhibit 21; Doctors' Reply to Feldman Parties' Supplemental Objections to Completed Proof of Claim Form (Aug. 9, 2022), attached as Exhibit 22; Hearing Transcript (Apr. 28, 2022), attached as Exhibit 23; Hearing Transcript (June 10, 2022), attached as Exhibit 24; Hearing Transcript (Aug. 4, 2022), attached as Exhibit 25; Hearing Transcript (Aug. 19, 2022), attached as Exhibit 6.

[58] *See* Phase Two Trial Plan and Scheduling Order at p. 3 (Doc. 103-2). Notably, despite Judge Jones affording the Feldman Parties twenty hours of deposition, the Feldman Parties failed to use the allotted time to take depositions of Class Members. Judge Jones also granted the Feldman Parties an extension of time to submit an expert report over the Doctors' objections. *See* Order on Motion Seeking Time to Respond to Experts' Reports and Motion to Compel (Sept. 19, 2022), attached as Exhibit 27. Judge Jones also provided the Feldman Parties multiple opportunities to submit briefs on their alleged statute of limitations defense. *See* Order on Objections to Proof of Claim Form and Request for Separate/Additional Questions (May 13, 2022), attached as Exhibit 28.

also afforded the Feldman Parties ample time to present their case at the final hearing.[59] The Feldman Parties' presentation at the final hearing went far longer than the Doctors without curtailment from Judge Jones.[60]

Feldman and Capstone's due process complaint primarily relates to Judge Jones not allowing live witness testimony at the final hearing.[61] But it is for the arbitrator to determine issues of procedural arbitrability like the manner of conducting the final hearing.[62] On August 18, 2020, Judge Jones overruled the Feldman Parties' objections regarding the manner chosen for conducting the final hearing:

> The Feldman Parties and Capstone parties further object because this arbitration proceeding fails to provide a full and fair opportunity to cross examine witnesses. This objection was previously made and overruled by this Arbitrator. The Feldman Parties and Capstone Parties can depose the class and cross examine the members with regard to their claims. To date this Arbitrator is not aware of any such depositions being conducted or scheduled despite repeated urging to do so by this Arbitrator. Therefore, this object[ion] is overruled again.[63]

This Court should not revisit Judge Jones' decision on procedural issues concerning the manner of conducting the final hearing, especially considering the broad discretion granted to the arbitrator to make that procedural determination under the arbitration clauses and the called-for AAA rules.

---

[59] *See generally* Transcript of Phase Two Final Hearing, attached as Exhibit 31.

[60] *See generally id.*

[61] *See* Feldman and Capstone's Memorandum at pp. 21-22 (Doc. 163-1).

[62] *Cf.* Memorandum and Opinion at pp. 12-13 (Doc. 51).

[63] *See* Order on Feldman Parties' Objections and Response to Completed Questionnaires / Proofs at ¶ 2 (Aug. 18, 2022), attached as Exhibit 1. The Feldman Parties did not request a single deposition of any Class Member until the last week to do so under the scheduling order and did so by means of an unreasonable, unilateral notice on 1-2 business days' notice for 14 corporate representatives and 14 individuals from all over the country to appear in person in Houston, Texas. *See* Feldman Parties' Notice of Oral Depositions (Sept. 9, 2023), attached as Exhibit 29. The Doctors objected to this notice. *See* E-mail from David A. Freedman (Sept. 9, 2022), attached as Exhibit 30. Notably, the Feldman Parties did not move to compel the depositions or raise the issue with Judge Jones after the Doctors informed the Feldman Parties that they recognized no obligation to comply with the unreasonable notice.

The AAA Commercial Arbitration Rules do not require live witness testimony. To the contrary, the parties' arbitration agreement, drafted by Feldman and Capstone, provides that that the AAA's Expedited Procedures "shall apply regardless of monetary size of the dispute or the number of parties to the proceeding."[64] These expedited procedures provide that, generally, "the dispute shall be resolved by submission of documents"[65] and that "the hearing shall not exceed one day."[66]

Moreover, AAA Commercial Arbitration Rule R-32 grants the Arbitrator broad discretion to "vary th[e] procedure" for the final hearing "provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case."[67] Here, the parties were treated equally, and each party had a full and fair opportunity to be heard and present their case.

Feldman and Capstone also incorrectly contend that they were deprived of an opportunity to present evidence in defense of Class Members' liability claims.[68] There was a twenty-four-day final hearing on liability claims in Phase One of Judge Jones' arbitration. The Feldman Parties could have presented any evidence they wanted at the Phase One hearing. Judge Jones' Phase One Award "finally and definitely disposed of all liability claims asserted by the Class against the Feldman Parties" and held the Feldman Parties liable to "Class Members for breaching fiduciary duties, committing professional malpractice, fraud, conversion, making fraudulent and negligent

---

[64] *See*, *e.g.*, Doctors' Engagement Letter (Doc. 72-6 at p. 15).

[65] Rule E-6 of the AAA's Expedited Procedures.

[66] Rule E-8 of the AAA's Expedited Procedures.

[67] Rule R-32 of the AAA Commercial Arbitration Rules.

[68] *See* Feldman and Capstone's Memorandum at pp. 22-23 (Doc. 163-1).

misrepresentations, violating the Texas Deceptive Trade Practice Act, and violating RICO."[69] This Court has already issued a memorandum and opinion confirming Judge Jones' Phase One liability determinations,[70] and Judge Jones correctly rejected the Feldman Parties' attempts to re-litigate the Phase One liability findings in Phase Two.[71]

Additionally, the Feldman Parties incorrectly argue that the Doctors failed to prove a causal relationship between the Class Members' damages and the Feldman Parties' tortious conduct.[72] In the Phase One Award, Judge Jones held that the Feldman Parties "obtained improper benefits, subordinating their clients' interests to their own, by taking $3,354,925.37 of their captive clients' premiums to pay for the legal fees and expenses incurred by [the Feldman Parties] in these arbitration proceedings."[73] The $3,354,925.37 wrongfully converted by the Feldman Parties "belong[ed] to the captive clients," which includes the Class Members.[74] And Judge Jones held that the Feldman Parties "breached fiduciary duties to [Class Members]" by converting Class Members' money.[75]

In the Phase Two Award, Judge Jones simply allocated to each Class Member its share of the converted funds.[76] Liability for that conversion had already been determined in the Phase One Award. As found by Judge Jones, the acts of conversion constituted breaches of fiduciary duty, entitling Class Members to the fee forfeiture remedy. Therefore, the damages quantified in the

---

[69] *See* Phase Two Trial Plan and Scheduling Order at p. 2 (Doc. 103-2); Phase One Award at p. 270 (Doc. 72-2) (emphasis in original).

[70] *See* Memorandum and Opinion (Doc. 153).

[71] *See* Phase Two Award at pp. 10-12 (Doc. 141-1).

[72] *See* Feldman and Capstone's Memorandum at pp. 21-25 (Doc. 163-1).

[73] *See* Phase One Award at p. 137 (Doc. 72-7).

[74] *See id.* at 165.

[75] *See id.* at 175.

[76] *See* Phase Two Award at pp. 6-9 (Doc. 141-1).

Phase Two Award result directly from Judge Jones' liability findings in favor of Class Members in the already-confirmed Phase One Award.

Furthermore, the Feldman Parties are wrong to argue that a causal relationship between damages and tortious conduct is necessary for the fee forfeiture remedy to be awarded. In *Burrow v. Arce*, the Texas Supreme Court concluded that "a client need not prove actual damages in order to obtain forfeiture of an attorney's fee for the attorney's breach of fiduciary duty to the client."[77] The "main purpose of forfeiture is not to compensate an injured principal" but rather to "protect relationships of trust by discouraging agents' disloyalty."[78] The Texas Supreme Court reiterated this equitable principle in *ERI Consulting Engineers, Inc. v. Swinnea*, holding that "[t]he remedy of forfeiture is necessary to prevent such abuses of trust, regardless of proof of actual damages."[79] A fiduciary "is not entitled to compensation even for properly performed services" when there has been a "willful and deliberate breach of his contract of service."[80] The fiduciary "is not entitled to be paid when he has not provided the loyalty bargained for and promised."[81]

A causal relationship between the management fees paid by Class Members and the Feldman Parties' tortious misconduct was not required for the fee forfeiture remedy to be awarded or trebled pursuant to RICO, as Judge Jones correctly concluded.[82] And a causal relationship between the Feldman Parties' wrongful acts of conversion and the amounts converted is patently obvious on its face. For the other damages awarded by Judge Jones in the Phase Two Award,

---

[77] *See* 997 S.W.2d 229, 240 (Tex. 1999).

[78] *Id.*

[79] *See* 318 S.W.3d 867, 874 (Tex. 2010).

[80] *See id.* at 873.

[81] *See Burrow*, 997 S.W.2d at 237-38.

[82] *See* Phase Two Award at pp. 12-13 (Doc. 141-1).

thousands of pages of additional proof were submitted at the Phase One and Phase Two hearings.[83]

Judge Jones' merits determinations as to these damages were correct, supported by evidence, due

high deference from the Court, and do not plausibly present grounds for vacatur.

## V.    The Glasser Award has no bearing or effect upon Judge Jones' Phase Two Award.

Feldman and Capstone re-urge their argument that the arbitration award of Mark Glasser,

dated March 9, 2022, allegedly requires vacatur of Judge Jones' Phase Two Award.[84] Judge Jones

repeatedly rejected that argument.[85] This Court also rejected the Feldman Parties' argument that

alleged inconsistencies or conflicts between arbitration awards provide a valid ground for

vacatur.[86] This Court should not reconsider its prior rulings and hold that the Glasser award does

not present any basis to vacate Judge Jones' arbitration awards.

If anything, Mr. Glasser's attempt to vacate Judge Jones' rulings demonstrates that Mr.

Glasser exceeded his powers and that the Glasser award should be vacated, as briefed in the

Doctors' Opposition to the Feldman Parties' motion to clarify (Doc. 165 at pp. 9-10) and the

Doctors' motion to vacate the Glasser award (Doc. 92-1 at pp. 10-12, 15-17).

---

[83] *See generally*, Phase One Award (Doc. 72-7), Transcript of Phase Two Final Hearing, attached as Exhibit 31. A representative of each Class Members signed a Proof of Claim Form, attaching documentary evidence to support their damages claims. These Proof of Claim Forms with their evidentiary support were introduced at the Phase Two Final Hearing, and this support is cited throughout the Phase Two Award. *See*, *e.g.*, Phase Two Award at pp. 9, 16-19, 25-36 (Doc. 141-1).

[84] *See* Feldman and Capstone's Memorandum at pp. 25-26 (Doc. 163-1).

[85] *See*, *e.g.*, Phase One Award at pp. 2, 20-21, 23, 25, 27-28 (Doc. 72-7); Phase Two Award at p. 48 (Doc. 141-1); Order on Feldman Parties' Objections and Response to Completed Questionnaires / Proofs at ¶ 3 (Aug. 18, 2022), attached as Exhibit 1.

[86] *See* Memorandum and Opinion at p. 36 (Doc. 153) (concluding that "inconsistency alone was not a valid ground for vacatur of all or any of the resulting [arbitration awards].").

**VI.    Jeff Carlson does not present any argument warranting vacatur of the Phase Two Award.**

Capstone's President, Jeff Carlson, separately moved to vacate Judge Jones' Phase Two Award.[87] Mr. Carlson argues that: (1) he never agreed to arbitration before Judge Jones;[88] (2) the Doctors, on behalf of the Class, did not assert any claims against him;[89] and (3) the Doctors allegedly pretended to dismiss their claims against Mr. Carlson to avoid an injunction from state court.[90] These are the same arguments that Mr. Carlson previously raised in attempting unsuccessfully to vacate Judge Jones' Phase One Award.[91] The Doctors extensively addressed each of these incorrect arguments in their prior briefing, which is adopted herein.[92] And this Court denied Mr. Carlson's motion to vacate Judge Jones' Phase One Award on these same grounds.[93]

This Court can and should deny Mr. Carlson's motion to vacate the Phase Two Award for the same reasons that it denied Mr. Carlson's motion to vacate the Phase One Award. Further, Mr. Carlson's arguments that he did not know that he was party to the Phase Two proceedings is even more meritless than it was in Phase One, considering that Mr. Carlson was represented by independent counsel throughout Phase Two who appeared and presented argument at the Phase Two final hearing on his behalf.[94]

---

[87] *See* Carlson's Motion (Doc. 164).

[88] *See id.* at pp. 6-9.

[89] *See id.* at pp. 9-10.

[90] *See id.* at pp. 10-11.

[91] *See generally* Mr. Carlson's Motion to Vacate Phase One Award (Doc. 89).

[92] *See generally* Doctors' Opposition to Mr. Carlson's Motion to Vacate Phase One Award (Doc. 102).

[93] *See* Memorandum and Opinion at p. 38 (Doc. 153) ("Jeff Carlson's motion to vacate the March 29, 2022 award of Charles Jones, (Docket Entry No. 8[9]) is DENIED.").

[94] *See generally* Transcript from Phase Two Final Hearing, attached as Exhibit 31.

## VII.    Conclusion

For the foregoing reasons, The Doctors ask this Court to (1) deny the Feldman Parties' motions to vacate Judge Jones' Phase Two Award; and (2) confirm the Phase Two Award, entering a judgment on all relief awarded therein.

Respectfully submitted,

*/s/ James M. Garner*

JAMES M. GARNER (Tex. Bar # 792312/ 13895)
PETER L. HILBERT, JR (Tex. Fed. Bar # 114441)
THOMAS J. MADIGAN, II (Tex. Fed. Bar #3337451)
JEFFREY D. KESSLER (Tex. Fed. Bar # 3567546)
DAVID A. FREEDMAN (Tex. Fed. Bar # 3567550)
**SHER GARNER CAHILL RICHTER**
**KLEIN & HILBERT, L.L.C.**
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
jgarner@shergarner.com

MARK TRACHTENBERG
State Bar No. 24008169
Tex. Federal Bar No. 24584
**HAYNES BOONE, LLP**
1221 McKinney Street, Suite 4000
Houston, Texas 77010
Telephone: (713) 547-2528
Facsimile: (713) 236-5567
mark.trachtenberg@haynesboone.com

**ATTORNEYS FOR PLAINTIFFS**

## **Certificate of Service**

I hereby certify that a copy of the above and foregoing has been served on all known counsel of record through the Court's ECF system on February 20, 2023.

 */s/ James M. Garner*
JAMES M. GARNER


## **Certificate of Conference**

Pursuant to Local Rule 7.1(D), I hereby certify and aver that I have conferred with opposing parties' counsel regarding this motion and that the parties could not agree about the disposition of this motion.

 */s/ David A. Freedman*
DAVID A. FREEDMAN